```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------X
ANDREW DELANCEY,                           :
                                           :
                Plaintiff,                 :   Case No.:
                                           :   1:23-cv-10357(AT)
           v.                              :
                                           :   **AMENDED**
                                           :   **COMPLAINT**
JUSTIN WELLS, FOX CORPORATION, and FOX     :
NEWS NETWORK, LLC.                         :
                Defendants.                :   **Jury Trial Demanded**
-------------------------------------------X
```

Plaintiff Andrew Delancey ("Plaintiff") through his lawyers Filippatos PLLC, brings this Complaint against the FOX CORPORATION, FOX NEWS MEDIA (together with the FOX CORPORATION as "Fox," the "Fox Defendants," or the "Network"), and JUSTIN WELLS (collectively "the Defendants"), and hereby alleges as follows:

**PRELIMINARY STATEMENT**

1. By now, most people are familiar with the fact that Fox is a workplace where sexual harassment notoriously runs rampant. Alleged perpetrators of sexual harassment (and in some cases sexual assault) include the former CEO and Chairman of Fox News, Roger Ailes, as well as the Network's most notable former personalities such as, Tucker Carlson, Bill O'Reilly, and Ed Henry.

2. Fox's fostering of a sexual harassment culture is so severe that Fox received the largest civil fine ever ordered by New York City's Commission on Human Rights.[1]

3. In 2017, even Fox's own shareholders sought to hold the Network accountable by suing the then parent company, Twenty-First Century Fox Inc., for the Network's sexual

---

[1] https://www.usatoday.com/story/entertainment/tv/2021/06/29/fox-news-1-million-fine-settlement-sexual-harassment-case/7805330002/ (last visited November 29, 2023).

1

harassment culture and the large golden parachutes that the Network offered to alleged perpetrators.² Ultimately, Twenty-First Century Fox Inc. agreed to pay its shareholders $90 million dollars to settle the case.³

4. With this backdrop in mind, it is not surprising that Fox set the conditions for their then employee, Justin Wells (Tucker Carlson's right-hand man),⁴ to sexually assault and harass his coworker, Plaintiff Andrew Delancey.

5. Appallingly, there is no question that Wells's unlawful conduct was facilitated and fostered by Fox. Wells utilized his status at Fox to prey on Mr. Delancey and, because Fox failed to properly act on a previous sexual harassment complaint against Wells, Fox gave Wells the opportunity to sexually assault and harass Mr. Delancey.

6. Notably, Wells first set his target on Mr. Delancey through a Facebook group that included employees of Fox and its affiliates. Wells told Mr. Delancey that he could help Mr. Delancey learn the ropes at Fox, asserted that he was powerful and knew many higher-ups at the company, and stated that he could help Mr. Delancey's career.

7. Around the time of the assault, Mr. Delancey's own supervisor, Mykel McCarthy, explicitly warned Mr. Delancey not to report any concerns to Fox's Human Resources ("HR") and made him swear not to report any inappropriate conduct that he witnessed during regularly occurring social events with employees.

8. Mr. Delancey has mostly suffered in silence for many years, contemporaneously

---

² https://money.cnn.com/2017/11/21/media/fox-harassment-discrimination-settlement/index.html (last visited November 29, 2023).
³ https://www.reuters.com/article/us-fox-settlement/21st-century-fox-in-90-million-settlement-tied-to-sexual-harassment-scandal-idUSKBN1DK2NI/ (last visited November 29, 2023).
⁴ https://finance.yahoo.com/news/meet-gay-man-fueling-tucker-200513465.html (last visited November 29, 2023); https://www.signorile.com/p/the-powerful-gay-man-behind-tucker (last visited November 29, 2023).

sharing the details of what had happened to him with a select few and, in 2017, publicly sharing that he had been sexually assaulted.

9. After witnessing so many brave victims coming forward to seek justice through the Adult Survivor's Act ("ASA"), Mr. Delancey was inspired to hold Defendant Wells and Fox accountable.

## JURISDICTION AND VENUE

10. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §1332(a) because the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between Plaintiff who is a citizen of Ohio and Defendants who are not.

11. Venue in the Southern District of New York is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Fox's principal place of business is New York City, Defendant Wells resides in the state of New York, and a substantial part of the events or omissions giving rise to the claims herein occurred in this district.

## PARTIES

12. Plaintiff Andrew Delancey currently resides in Ohio and identifies as a gay male.

13. Plaintiff is a former Regional Producer with Fox News Edge, a division of Fox, that serves more than 175 newsrooms, and provides content for Fox television stations across the country. As such, Plaintiff was employed by the Fox Defendants.

**Deleted:** n affiliate service

14. At all relevant times, Defendant Justin Wells resided in New York, New York and was employed by the Fox Defendants. At the time that Wells assaulted Mr. Delancey, Wells was a Field Producer on Greta Van Susteren's "*On the Record*." Wells was later promoted by Fox to Executive Producer of "*On the Record*," and remained with the show until Greta Van Susteren's ouster in 2016. Thereafter, Wells helped launch the now defunct "*Tucker Carlson Tonight*" as Mr.

3

Carlson's Executive Producer. In 2018, Wells was promoted once again by the Network and given the loftier title of Senior Executive Producer and Vice President, until his recent termination from the company.[5] Prior to October 2008, Wells worked for several local owned and operated Fox Television Networks, including as the Producer of the 10 pm News at WNYW New York (Fox 5 NYC), and as a Producer at various local news stations in Florida, including WTVT (Fox 13 Tampa Bay), where Plaintiff had also been previously employed.

15. Defendant Fox Corporation is a corporation formed under Delaware law and headquartered in New York, New York. Fox Corporation is a publicly traded corporation listed on the Nasdaq stock exchange and is the parent company of Defendant Fox News Network LLC, which comprises most of its profits. According to the New York Times, Fox News Network LLC generated $899 million in pretax income in 2020, accounting for 95 percent of Fox Corporation's total pretax profit.[6]

16. Defendant Fox News Network LLC is, upon information and belief, one of the most powerful and far-reaching news organizations in the world. Fox News Network LLC operates, among other things, the Fox News Channel, a 24-hour cable news station reaching about 90 million U.S. homes. Fox News averages over three million viewers during its primetime evening news programs and nearly two million daytime viewers. Fox News Network LLC is a limited liability company organized under the laws of Delaware, with a principal place of business in New York, New York.

---

[5] On or about April 24, 2023, Fox News Corporation fired Mr. Wells along with his boss Tucker Carlson. See https://www.nytimes.com/live/2023/04/24/business/tucker-carlson-fox-news (last visited November 29, 2023).
[6] https://www.nytimes.com/live/2021/05/05/business/stock-market-today (last visited November 29, 2023).

**FACTUAL ALLEGATIONS**

A. **Defendant Wells Uses His Position at Fox News to Meet Potential Victims**

17.     On or about August 3, 2007, Wells contacted Mr. Delancey through Facebook Messenger after identifying him as a member of a Fox employee Facebook group. At that point, the two men had never met, nor did they know each other.

18.     Specifically, at 1:06 AM, Wells wrote to Mr. Delancey that he had noticed him because he was part of the "Fox TV Group" on Facebook and that Mr. Delancey had "caught [his] eye[.]" Wells told Mr. Delancey that he was a producer at Fox 5 NYC and had previously worked at Fox 13 (Tampa Bay), where Mr. Delancey was working at the time.

19.     In a calculated effort to demonstrate that he knew powerful people, Wells asked Mr. Delancey to "say hi to Scott Jones for me if you ever see him around." Mr. Jones was the Assistant News Director of Fox 13.

20.     Mr. Delancey later responded by confirming to Wells that he did in fact know Mr. Jones. Mr. Delancey told Wells, "[i]f I'm ever going to move from Florida, I envision my next step to be New York City or Chicago. So it's nice to have someone I already know in NYC."

21.     In February 2008, Wells again sent Mr. Delancey a message via Facebook persuading him to move to New York stating, "you could room with my friend […] who is killer hot."  Mr. Delancey then sent Wells his resume.

B. **Mr. Delancey Moves to New York City to Accept a Position at Fox Working on the Fox News Edge Team**

22.     In September 2008, Mr. Delancey accepted a position as a Producer on the Fox News Edge team in New York City, beginning his employment with the Fox Defendants. Mr. Delancey was excited about his new role and the opportunity to fulfill his dream of living in New York City.

5

23. Mr. Delancey was interviewed and hired by Mykel McCarthy, Assistant News Director for Fox News Edge, who supervised Mr. Delancey. As a Producer at Fox News Edge, Mr. Delancey was tasked with creating general content for the West Coast regions and coordinating the afternoon and evening news coverage.

24. Within one week of Mr. Delancey's arrival at Fox's headquarters in September 2008, Wells began showering Mr. Delancey with gifts. Wells arranged to have Mr. Delancey presented with a large box of Fox News Edge merchandise – including personally monogrammed pencils and notepads with Mr. Delancey's name. At the time, Mr. McCarthy, Mr. Delancey's direct supervisor, commented that he had worked at Fox for years and never received anything like what Wells had arranged for Mr. Delancey to receive.

25. In his new position, Mr. Delancey was required to respond to Wells's requests for content to be used on the show that Wells worked on, Greta Van Susteren's *"On the Record."* As such, although the two men did not formally work on the same show or team, due to Mr. Delancey's less senior status and nature of Mr. Delancey's role, Mr. Delancey was required to complete tasks at the direction of Wells.

26. Wells was not reserved about reminding Mr. Delancey that he held higher status at the Network and could, in turn, affect Mr. Delancey's career trajectory. Wells told Mr. Delancey that he would help him "learn the ropes" and made it clear that Wells had the ear of Fox's top executives. As a result, Mr. Delancey was under the reasonable impression that he had to stay on Wells's good side to succeed at Fox.

27. Shortly after starting at Fox, Mr. Delancey confided in Wells that he quickly realized that his $45,000/year salary was going to make affording life in New York City a difficult task. Mr. Delancey inquired whether Wells knew of any other higher paying positions. Wells,

through his contacts, arranged for Mr. Delancey to have an interview for a producer position at a local NBC station. Wells also indicated that he would put in a "good word" with others at Fox for Mr. Delancey.

  **C. Defendant Wells Sexually Assaults Mr. Delancey**

  28. Within approximately one month of Mr. Delancey's arrival in New York, Wells invited Mr. Delancey to meet so that they could become more familiar with each other and spend time with other coworkers. Again, Wells stressed his status at Fox as something that could be used to benefit Mr. Delancey's career. Wells suggested that Plaintiff meet him outside his apartment so that they could walk to the nearby Barracuda Lounge.

  29. When Plaintiff arrived outside of Defendant Wells's apartment building, Wells insisted that they both go upstairs to his apartment for a "pregame" cocktail. At the time, Mr. Delancey knew that Wells was in a relationship and did not believe anything untoward would occur. Moreover, because of Wells's representations, Mr. Delancey expected other co-workers to arrive. Regrettably, no one else did.

  30. Upon both men entering Wells's one-room studio apartment, Defendant Wells made Mr. Delancey a mixed drink containing vodka and cranberry juice.

  31. Before Mr. Delancey could finish half of his drink, out of nowhere, Wells aggressively pushed Mr. Delancey onto his bed where he violently forced his tongue into Mr. Delancey's mouth. At the time, Wells had a more muscular build than Mr. Delancey, and easily overpowered him.

  32. Defendant Wells quickly began unbuttoning and trying to rip off Mr. Delancey's jeans as the sexual assault progressed. Simultaneously, Wells aggressively grabbed Mr. Delancey's genitals causing him severe pain.

33. Mr. Delancey was in complete shock. He yelled out, "no!" and mustered up the strength to physically slow down Defendant Wells's physical attack.

34. Hoping to reason with Wells, Mr. Delancey reminded Wells that Wells had a boyfriend and said that they needed to continue with the (supposed) plan to join others at the nearby Barracuda Lounge. Wells reluctantly agreed.

35. Wells insisted that, before they left, Mr. Delancey allow Wells to show him the view from Wells's apartment rooftop. Mr. Delancey saw this as an opportunity to get out of Wells's apartment and quickly led the way out the door. Wells followed closely behind.

36. In the stairwell, Wells again assaulted Mr. Delancey.

37. As Mr. Delancey was walking up the stairs to the rooftop deck, Wells aggressively grabbed Mr. Delancey from behind, catching Mr. Delancey off guard. Wells reached around Mr. Delancey and stuck his hands down the front of Mr. Delancey's pants while again trying to unbutton Mr. Delancey's jeans.

38. Mr. Delancey quickly pulled away and pleaded with Wells to stop.

39. Wells was clearly annoyed by Mr. Delancey's continued refusal to submit to Wells's aggressive sexual assaults. Wells told Mr. Delancey that he no longer wanted to accompany him to the Barracuda Lounge. Relieved that he could get away from Wells, Mr. Delancey hurriedly left.

**D. Mr. Delancey Tells His Coworker About the Assault and is Discouraged from Filing Internal Complaints with Fox's Human Resources**

40. Not long after Wells sexually assaulted him, Mr. Delancey told a senior female co-worker at Fox News Edge about the assault. Mr. Delancey held the title of Regional Producer while this employee was a National Producer. While on an evening shift with this coworker, Mr. Delancey broke down and told her that he was in distress after being sexually assaulted,

specifically mentioning that it was at the hands of a producer who had "heft in the company." Mr. Delancey told her that he was scared to speak up to others.

41. Mr. Delancey later shared with another female co-worker that Wells sexually assaulted him. This coworker told Mr. Delancey that Wells subjected her sexual harassment prior to Wells assaulting Mr. Delancey. Following Wells sexually harassing this female employee, her then-supervisor, Wells's then-supervisor, and Fox's HR were all informed of the harassment. Upon information and belief, Wells admitted to the harassment of this female employee in a letter that was provided to Fox.

42. Beyond failing to take corrective action to address Wells's previous sexual harassment, Fox, through Mr. Delancey's supervisor, Mr. McCarthy, deprived Mr. Delancey of an avenue to seek protection from Mr. Wells or hold Mr. Wells accountable. Indeed, Mr. McCarthy warned Mr. Delancey not to go to Human Resources with any concerns, telling Mr. Delancey that he could not "trust" them.

43. Mr. McCarthy, who was also gay, fostered a workplace environment rife with inappropriate behavior. Mr. McCarthy would frequently invite young gay producers who he supervised, including Mr. Delancey, to bars where he would buy them alcoholic drinks and make inappropriate remarks about other Fox employees. Indeed, Mr. Delancey was invited to partake in the after-work discussions with Mr. McCarthy approximately once per week, sometimes when his shift ended at 1:00 AM in the morning. Mr. McCarthy made these employees, including Mr. Delancey, *swear not to inform upper management* of anything that was said during their discussions. This further led Mr. Delancey to believe that he could not make complaints as he would be violating his supervisor's directives.

44. Upon information and belief, Mr. McCarthy himself had a history of misconduct.

Upon information and belief, Mr. McCarthy had been working as a Producer for Fox, and due to misconduct and/or violation of company policies, was demoted to his position at Fox News Edge, a branch with less prestige. Upon information and belief, Mr. McCarthy was later demoted a second time, due to another incident of misconduct and/or violation of company policies, this time, to a Senior Producer at Fox News Edge.

45. Without an appropriate avenue to complain, Mr. Delancey was forced to interact with Mr. Wells in the workplace at Fox. Mr. Wells consistently contacted Mr. Delancey through company email, phone calls, and internal messaging systems while both parties were in the workplace.

46. Additionally, Mr. Wells continued to exercise significant control over the terms and conditions of Mr. Delancey's role at Fox. As a member of the Fox News Edge team, Mr. Delancey provided assistance to and performed tasks for Mr. Wells's show. Mr. Wells assigned Mr. Delancey work tasks that Mr. Delancey was required to perform. While doing so, Mr. Wells oversaw Mr. Delancey's performance of the tasks.

47. While Mr. Wells was not listed as Mr. Delancey's direct supervisor in Fox's systems, at all times during Mr. Delancey's employment, Mr. Wells had an ability to significantly influence and alter the terms and conditions of Mr. Delancey's employment. By way of example, due to the hierarchical structure at Fox and Mr. Delancey's low placement in the hierarchy, Mr. Wells had the ability to cause the termination of Mr. Delancey's employment. Additionally, Mr. Wells had enough influence to bring about or prevent a promotion of Mr. Delancey.

48. It is undeniable that the recommendations of an employee at Mr. Wells's level concerning the terms and conditions of an employee at Mr. Delancey's level – who performed tasks for Mr. Wells – would be followed.

E. **Wells Harms Mr. Delancey's Career to Punish Him for Refusing His Advances**

49. Prior to sexually assaulting Mr. Delancey, Wells arranged for Mr. Delancey to have an interview for a producer position at a local WNBC station after Mr. Delancey told Mr. Wells that his salary at Fox made it hard for him to get by in New York City. Wells also indicated that he would put in a "good word" with others at Fox for Mr. Delancey.

50. Approximately one week after Wells assaulted Mr. Delancey, Mr. Delancey went on the NBC interview that was arranged by Wells. Upon information and belief, Defendant Wells had informed the interviewer not to hire Mr. Delancey and/or took back his recommendation.

51. Despite being qualified for the position, Mr. Delancey was not offered the role.

52. Shortly after the interview, Wells menacingly warned Plaintiff that he was "not thinking straight" and is "screwing [himself] over[,]" a declaration that Wells would hinder Mr. Delancey's career advancement because Mr. Delancey did not give in to Wells's sexual demands.

53. Without a safe avenue to complain, Mr. Delancey was forced to encounter his harasser in the workplace throughout his time at Fox.

54. Following Wells's threats, Mr. Delancey found his career progression at Fox to be obviously halted, a departure from the promised career advancements and warm welcome that he had received when he arrived at Fox. As a result, Mr. Delancey returned to his position at the local Fox station in Tampa.

F. **Mr. Delancey Publicly Shares that He is a Victim of Sexual Assault and is Informed by His Female Coworker that She Remembers Mr. Delancey Telling Her About the Sexual Assault Shortly After the Sexual Assault Occurred**

55. Almost nine years later, amidst the "Me Too" movement, Mr. Delancey felt compelled to bravely share that he was a victim of sexual assault.

56. On or about October 22, 2017, in solidarity with others speaking up and saying,

"Me Too," Mr. Delancey posted the following message on his personal Facebook:



Andy Delancey
Oct 22, 2017 · Lakeside Green

It's taken me until today to realize that I've had a #metoo.  Ten years ago.  Position of great power in the media landscape of NYC.  He lorded it over me.  Was extremely inappropriate, plying me with drinks, getting way too handsy and telling me I would never get anywhere without him.  Went to a "party" where he conveniently was the only one who showed up.  He threw me in his bed as I struggled to get out.  Took me up to a rooftop deck at his building, put his hands down my pants and tried to put his tongue down my throat.  He called me "special", and got pissed when I didn't just lay there and take it.  In fact, when he knew i was saying no, he kicked me out into the cold.  I was of no use to him.

The people in my orbit trying to look out for me knew it was weird, but their own power was limited.

I've never felt like making a big deal out of this, but I look at all the women who now have a voice.   My abuser still works at his high profile job in a executive producer capacity.  He never talks to me, out of shame or keeping a safe distance.   Either way, the part where I stay silent because I'm ashamed stops now.

 80                                    19 comments

57. Friends reached out to Mr. Delancey to express their support, including two former female Fox coworkers.

58. One of the female Fox coworkers confirmed that Fox, including Fox's Human Resources, was aware that Wells subjected her to sex-based harassment prior to Wells assaulting Mr. Delancey.

12

59. The other female Fox coworker stated that she remembered the evening shift where Mr. Delancey had confided in her about the distress that he was experiencing due to being sexually assaulted by a producer at Fox, telling Mr. Delancey that it "stuck in [her] memory all these years – through the Me Too stuff – as an example of how even smart, capable people can be intimidated into staying silent when they were wronged."

60. On October 23, 2017, at 3:50 AM, after having no contact for several years, Wells, perhaps with a guilty conscience, privately messaged Mr. Delancey. Wells inquired, "Hey. Saw your post. I'm sorry that happened to you. Who was it?" Plaintiff was too shocked to respond.

## CAUSES OF ACTION

**THIS ACTION IS TIMELY UNDER CPLR 214-J (THE ADULT SURVIVORS ACT)**

61. This action is timely because it falls under the Adult Survivors Act and is brought during the one-year period set forth in that section. CPLR 214-j. The claims brought here allege intentional and negligent acts and omissions for physical, psychological, and other injuries suffered because of conduct that constitute sexual offenses as defined by § 130 of the New York Penal Law committed against a person who is eighteen years of age or older. This action was timely commenced in New York State Court prior to the deadline to file claims under the ASA.

62. Specifically, the underlying conduct described herein (collectively, the "**Sex Crimes**") constitutes the following crimes under New York Law: New York Penal Law § 130.55 (sexual abuse in the first degree); § 130.55 (sexual abuse in the third degree); and § 130.52 (forcible touching). Each of the acts constituting sexual conduct was done without Mr. Delancey's express or implied consent.

63. The Adult Survivors Act applies to revive the statute of limitations for each of the causes of action asserted below.

**FIRST CAUSE OF ACTION**
**(Assault)**
*Against Defendant Wells*

64. Mr. Delancey hereby repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

65. As described above, Defendant Wells violently, forcibly and against Mr. Delancey's will and without his consent, frightened and placed him in apprehension of harm when he physically and violently sexually assaulted him on two occasions.

66. Defendant Wells used his body, fingers, hands, tongue and lips to engage in unwanted, harmful physical contact with Plaintiff, including by throwing Plaintiff on Defendant's bed, invasively sticking his tongue in Plaintiff's mouth, grabbing Plaintiff's genitals and attempting to forcibly remove Plaintiff's pants.

67. As a direct and proximate result of Defendant Wells's conduct, Plaintiff has suffered, and continues to suffer, harm for which he is entitled to an award of monetary damages and other relief.

68. This cause of action is timely under the Adult Survivors Act N.Y. C.P.L.R. § 214-j (McKinney 2022), because it arises out of conduct perpetrated against Plaintiff who was eighteen or older at the time of the conduct, that constitutes a sexual offense as defined in Article One Hundred Thirty of the New York Penal Law ("Article 130").

**SECOND CAUSE OF ACTION**
**(Battery)**
*Against Defendant Wells*

69. Mr. Delancey hereby repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

70. As described above, Defendant Wells violently, forcibly and against Mr.

14

Delancey's will and without his consent, subjected him to bodily harm when he physically and violently sexually assaulted him on two occasions.

71. Defendant Wells used his body, fingers, hands, tongue and lips to engage in unwanted, harmful physical contact with Plaintiff, including by throwing Plaintiff on Defendant's bed, invasively sticking his tongue in Plaintiff's mouth, grabbing Plaintiff's genitals and unbuttoning his pants.

72. In performing the Sex Crimes described above, Defendant Wells committed a battery against Plaintiff because he intentionally engaged in unlawful, intentional and offensive touching or application of force to Plaintiff's person.

73. As a direct and proximate result of Defendant Wells's conduct, Plaintiff has suffered, and continues to suffer, harm for which he is entitled to an award of monetary damages and other relief.

74. The conduct of Defendant Wells described above was willful, wanton and malicious.

75. At all relevant times, Defendant Wells acted with conscious disregard of Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury and/or humiliation to Plaintiff, and intended to cause fear, physical injury and/or pain and suffering to Plaintiff.

76. This cause of action is timely under the Adult Survivors Act N.Y. C.P.L.R. § 214-j (McKinney 2022), because it arises out of conduct perpetrated against Plaintiff who was eighteen or older at the time of the conduct, that constitutes a sexual offense as defined in Article One Hundred Thirty of the New York Penal Law ("Article 130").

### THIRD CAUSE OF ACTION
**Sexual Harassment Under the New York State Human Rights Law**

> **Deleted: THIRD CAUSE OF ACTION**
> Negligence
> *Against the Fox Defendants*
>
> Plaintiff hereby repeats, recites and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.
> The Fox Defendants' conduct described herein, including the negligent retention and/or supervision of Defendant Wells, resulted in Wells's commission of the Sex Crimes Against Plaintiff.
> The Fox Defendants knew or reasonably should have known that Justin Wells had a propensity in sexual harassment of coworkers and would use his position with Fox to lure Plaintiff and other similarly situated aspiring employees to his apartment under the guise of advancing their career to sexually harass, batter and/or assault them.
> The Fox Defendants had a duty of care to properly hire, train, retain, supervise and discipline their employees to avoid unreasonable harm to others or to take steps to alleviate harm caused by one's affirmative conduct.
> The Fox Defendants breached their duty of care by way of their own conduct as alleged herein, including, but not limited to, failing to terminate Justin Wells's employment or taking steps to warn or otherwise reduce the risk that Defendant Wells would use his position of power to engage in sexual harassment against employees.
> The burden on the Fox Defendants to take some action to warn or otherwise reduce the risk of Defendant Wells's sexual misconduct was slight, while the harm from Justin Wells's sexual misconduct was grave and caused significant physical and mental harm to Plaintiff.
> The Fox Defendants' negligent and/or affirmative conduct in relation to Justin Wells's propensity to engage in sexual harassment was a substantial factor in causing Plaintiff's harm. Moreover, on the night that he was sexually assaulted by Wells, Plaintiff's meeting with Wells had a nexus to their employment at Fox.
> As a direct and proximate result of the Fox Defendants' negligent and/or affirmative conduct, as alleged hereinabove, Plaintiff has suffered physical injury, severe emotional distress, humiliation, embarrassment, mental and emotional distress and anxiety, and economic harm.
> The conduct described above by the Fox Defendants was willful, wanton and malicious.
> At all relevant times, the Fox Defendants acted with conscious disregard of Plaintiff's rights and feelings and also acted with the knowledge of or with reckless disregard for the fact that their conduct was certain to cause injury and/or humiliation to Plaintiff and other similarly situated employees.
> **FOURTH**

15

*Against the Fox Defendants*

77. Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

78. New York Exec. Law § 297(9) provides an independent, civil cause of action for individuals who are unlawfully discriminated against in the terms, conditions, or privileges of employment because of the individual's sex.

79. An unlawful discriminatory practice occurs when an employer discriminates against an individual in terms, conditions, or privileges of employment because of the individual's sex. N.Y. Exec. Law § 296(1)(a).

80. Wells's numerous Sex Crimes and harassment committed against Mr. Delancey, an employee of Fox, and the subsequent encounters in the workplace constituted an unlawful discriminatory practice that amounts to workplace sexual harassment causing a hostile work environment. Moreover, Wells's subsequent interference with Mr. Delancey's career amounts to quid pro quo harassment.

81. The Fox Defendants had knowledge of Wells's prior misconduct and failed to act. Moreover, the Fox Defendants deprived Mr. Delancey of an avenue to complain and seek corrective action. Therefore, the Fox Defendants can be held liable for Wells's sexual harassment of Mr. Delancey.

82. Defendants' actions and inactions caused Mr. Delancey's physical and emotional harm and entitle him to recover damages in an amount to be assessed by the jury at trial.

83. At all relevant times, the Fox Defendants acted with conscious disregard of Plaintiff's rights and feelings and also acted with the knowledge of or with reckless disregard for the fact that their conduct was certain to cause injury and/or humiliation to Plaintiff and other similarly situated employees.

**FOURTH CAUSE OF ACTION**
**Sexual Harassment Under the New York City Human Rights Law**
*Against the Fox Defendants*

[Deleted: FIFTH]

84. Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

85. New York City Administrative Code § 8-502(a) provides an independent, civil cause of action for an individual who has been harmed by an unlawful discriminatory practice.

86. It is unlawful discriminatory practice for an employer to discriminate against a person in terms, conditions, or privileges of employment because of his gender. N.Y.C. Admin. Code § 8-107(1).

87. Wells's numerous Sex Crimes and harassment committed against Mr. Delancey, an employee of Fox, and the subsequent encounters in the workplace constituted an unlawful discriminatory practice that amounts to workplace sexual harassment causing a hostile work environment. Moreover, Wells's subsequent interference with Mr. Delancey's career amounts to quid pro quo harassment.

88. The Fox Defendants had knowledge of Wells's prior misconduct and failed to act. Moreover, the Fox Defendants deprived Mr. Delancey of an avenue to complain and seek corrective action. Therefore, the Fox Defendants can be held liable for Wells's sexual harassment of Mr. Delancey.

89. Defendants' actions and inactions caused Mr. Delancey's physical and emotional harm and entitle him to recover damages in an amount to be assessed by the jury at trial.

90. At all relevant times, the Fox Defendants acted with conscious disregard of Plaintiff's rights and feelings and also acted with the knowledge of or with reckless disregard for the fact that their conduct was certain to cause injury and/or humiliation to Plaintiff and other similarly situated employees.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the State of New York and the City of New York;

B. An injunction and order permanently restraining Defendants and their partners, officers, owners, agents, successors, employees and/or representatives, and any and all persons acting in concert with them, from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

C. An award of damages against Defendants, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages;

D. An award of damages against Defendants, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his emotional distress;

E. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff, including, but not limited to, loss of income, reputational harm and harm to professional reputation, in an amount to be determined at trial, plus prejudgment interest;

F. An award of punitive damages, and any applicable penalties and/or liquidated damages in an amount to be determined at trial;

G. Prejudgment interest on all amounts due;

H. An award of costs that Plaintiff has incurred in this action, including, but not

limited to, expert witness fees, as well as Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by law; and,

    I.    Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: February 2, 2024
White Plains, New York          Respectfully submitted,

**FILIPPATOS PLLC**

By: *[signature]*
    Alfredo J. Pelicci
    Kimberly A. Catala

199 Main Street, Suite 800
White Plains, NY
Telephone: (914) 984-1111
APelicci@filippatoslaw.com
KCatala@filippatoslaw.com

*Counsel for Plaintiff*