```
                UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF NEW YORK
----------------------------:

ANDREW DELANCEY,              : Docket No.: 23-cv-10357

               Plaintiff,     :

          v.                  :

FOX Corporation, et al.       : New York, New York

                              : July 8, 2025

               Defendants.    :

----------------------------:


                     PROCEEDINGS BEFORE
            THE HONORABLE KATHARINE H. PARKER
              UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:       FILIPPATOS, PLLC
                     BY:  TANVIR H. RAHMAN, ESQ.
                          CHASE GREENBERG, ESQ.
                     199 Main Street, Suite 800
                     White Plains, New York 10601


For Defendant:       PAUL HASTINGS, LLP
(FOX Corporation)    BY:  PAUL C. EVANS, ESQ.
                          KRISSY A. KATZENSTEIN, ESQ.
                     200 Park Avenue
                     New York, New York 10166


For Defendant:       LINER FREEDMAN TAITELMAN &
(Justin Wells)       COOLEY, LLP
                     BY:  JASON SUNSHINE, ESQ.
                     1801 Century Park West, 5th Floor
                     Los Angeles, California 90067


Transcription Service: Marissa Lewandowski
                     Phone:  (631) 813-9335
                     E-mail:marissamignano@gmail.com


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service
```

1          THE COURT:  All right.  Calling case

2     Delancey v. FOX Corporation, 23-Civ-10357.

3          Counsel, can you make your appearances for

4     the record?

5          MR. RAHMAN:  Good afternoon, Your Honor.

6     For plaintiff Mr. Delancey, this is Tanvir Rahman

7     from Filippatos, PLLC.  Also on the line is my

8     colleague, Chase Greenberg.

9          MR. EVANS:  Good afternoon, Your Honor.

10    This is Paul Evans from the law firm of

11    Paul Hastings on behalf of defendant FOX News.  And

12    I'm joined with my colleague, Krissy Katzenstein.

13         MR. SUNSHINE:  Good afternoon, Your Honor.

14    This is Jason Sunshine from the law firm of Liner

15    Freedman Taitelman & Cooley on behalf of defendant

16    Justin Wells.

17         THE COURT:  Okay.  Do we have everybody?

18         MR. EVANS:  Yes, Your Honor.

19         THE COURT:  Okay, great.  Just a few

20    preliminaries because we're on the phone, I ask that

21    you keep your phones on mute unless you're speaking

22    to eliminate background noise.  As you heard, the

23    Court's making a recording of this conference so

24    that you can order a transcript if you would like.

25    And finally, I remind you that the Court's

conference line is open to the press and public on a

listen-only basis.  And that court rules prohibit

others from recording and rebroadcasting court

proceedings, including this one.

Okay.  So this is a case management

conference.  I wanted to get a general update on

discovery, and then we can talk about any briefing

schedules that may be needed.

I'll hear first from plaintiff's counsel,

and then I'll hear from defense counsel.

MR. RAHMAN:  Yes, Your Honor.  This is

Tanvir Rahman.

So the parties completed the depositions of

the plaintiff, Mr. Delancey, Justin Wells, two

third-party witnesses, Mykel MacCarthy and Lindsey

Hare Johnson, and also of FOX HR employee Denise

Collins, who was also a 30(b)(6) witness.

I think we also raised with Your Honor

recently in a letter, the fact that we're awaiting

medical records from Mr. Delancey's therapist.

We're still in the progress of trying to obtain

them.  Subsequent to the depositions, my office

issued a set of interrogatories.  One interrogatory

to FOX News, and three additional document requests

to FOX News as well.  The associates of subpoena to

1    a third party to WNYW FOX 5, where Mr. Wells worked

2    at right before he joined FOX News, which we just

3    issued today.  And we're also awaiting information

4    from Mr. Wells concerning the contact information of

5    a third party, someone who worked at NBC News, who

6    interviewed Mr. Delancey for a position.  And there

7    are also some incomplete discovery responses that

8    were also awaiting a response from Mr. Wells on.

9         And Your Honor, this one issue that came up

10   at a deposition with Mr. McCarthy's deposition, you

11   know, Your Honor, we asked Mr. MacCarthy -- as Your

12   Honor knows, Mr. MacCarthy was Mr. Delancey

13   supervisor at FOX News.  And we alleged that he

14   discouraged Mr. Delancey from reporting his sexual

15   assault to FOX HR and told Mr. Delancey to not trust

16   HR.  So we asked Mr. MacCarthy whether he had any

17   interactions with HR concerning his conduct, and

18   then counselor for FOX News directed him to only

19   respond pursuant to anything happened between

20   January 2007 and December 2010, which we objected to

21   because we don't believe Your Honor's order,

22   limiting written discovery, applies to such

23   questions that his deposition.  And so we're

24   entitled to, to know whether at any point while

25   Mr. MacCarthy was at FOX News prior to 2010, whether

1    he had interactions with HR concerning his conduct

2    just separate from written complaints against him.

3              So that's one issue that we wanted to raise

4    with Your Honor in terms of dispute of deposition.

5    But other than that, I think that's where we are in

6    terms of discovery.

7              THE COURT:  Okay.  So the main thing that's

8    outstanding are the records from your client's

9    therapist that you then will produce; is that

10   correct?

11             MR. RAHMAN:  Yes, that's the one category.

12             THE COURT:  And then you want to

13   potentially move to compel a more complete answer

14   from the witness in the deposition?

15             MR. RAHMAN:  Correct.

16             THE COURT:  Okay.  And anything else that

17   you believe is outstanding?

18             MR. RAHMAN:  As I stated again, we issued a

19   subpoena to WNYW FOX 5, where Mr. --

20             THE COURT:  Right.  Right.  Right.  And

21   then getting some answers --

22             MR. RAHMAN:  Right.

23             THE COURT:  -- more complete answers from

24   Mr. Wells?  Okay.

25             MR. RAHMAN:  Correct.  And we also issued

1    another -- one interrogatory to FOX News and

2    additional document requests, three of those.

3            THE COURT:  Okay.  So let me hear next from

4    FOX News, and then I'll hear from Mr. Wells's

5    counsel.

6            MS. KATZENSTEIN:  Thank you, Your Honor.

7    This is Krissy Katzenstein.

8            I think first we'll start with the issue

9    around Mr. Delancey's therapist.  Mr. Delancey had

10   previously indicated that he had not sought any sort

11   of medical or mental health treatment relating to

12   the allegations in his complaint, and we had

13   confirmed that with plaintiff's counsel in early

14   June.  We learned on June 20th that Mr. Delancey

15   has, in fact, begun to see a therapist and with his

16   deposition scheduled for the 23rd, did not have time

17   to obtain the information relating to the therapist

18   and question him on that.

19           So in our joint filing on June 20th, we had

20   sought a four-week extension of the discovery

21   deadline, which is currently July 10, in order to

22   allow -- for the limited purposes of allowing us to

23   take discovery relating to this therapist and

24   potentially deposing the therapist, as well as

25   reopening Mr. Delancey's deposition for purposes of

1  questioning him around things that we learn as a

2  result of this discovery.

3         That request remains pending before Your

4  Honor.  But it is relevant insofar as to the other

5  issues that Mr. Rahman has highlighted.  They served

6  yesterday written discovery on FOX News seeking

7  interrogatory responses as well as requests for

8  production and have subpoenaed a third party that

9  was also issued yesterday.  As we understand it, all

10 of those would fall outside of the timing for

11 discovery.  Discovery is set to close July 10th, and

12 our request related only to the issue around the

13 therapist and limited discovery relating to that

14 late disclosure.  So from our perspective, the

15 recently-issued subpoena and the written-discovery

16 requests are untimely at this point.  And I can next

17 turn to Mr. MacCarthy, but I will pause there

18 quickly.

19         THE COURT:  Okay.  So let me go back to

20 plaintiff's counsel then.  Why did you wait until

21 now to subpoena a third party and to serve this

22 additional interrogatory and RFP on the eve of

23 discovery closing?

24         MR. RAHMAN:  Your Honor, with respect to

25 the discovery requests and interrogatories, these

```
 1   are -- these are requests that arose from deposition
 2   testimony.  And so --
 3              THE COURT:  I'm sorry.  Can you repeat
 4   that?  You were a little bit -- that was a little
 5   fuzzy in the reception.
 6              MR. RAHMAN:  Sure, Your Honor.
 7              That we -- our position is that those
 8   discovery requests and interrogatories, you know,
 9   are the result of information that was learned
10   during depositions.
11              With respect to the subpoena, Your Honor, I
12   recently took over this case from my colleague who
13   went on a medical leave.  And I don't know why that
14   wasn't issued earlier, frankly, that subpoena.  But
15   that's why I issued it.  I think it's germane to the
16   allegations, and so that's why I issued it, frankly.
17   And again, some information was first learned at
18   depositions, and the subpoena should have been
19   issued earlier, but it wasn't.  So I'm -- me taking
20   over the file, I discovered that, and I issued a
21   subpoena before the discovery deadline.
22              THE COURT:  And it's only one interrogatory
23   and one more RFP?
24              MR. RAHMAN:  Three RFPs and one
25   interrogatory.
```

1          MR. EVANS:  Your Honor, if I --

2          MS. KATZENSTEIN:  Your Honor -- oh, sorry.

3          MR. EVANS:  This is Paul Evans for FOX

4    News.

5          Just to address the topics that were

6    subject of those interrogatories -- interrogatory

7    and document requests, they are all things that have

8    been known to the plaintiff as subjects of discovery

9    since this complaint was filed.  One of the requests

10   for production concerns an allegation that is in the

11   initial complaint that was filed on December 4th of

12   2023, that Mr. Wells had ordered FOX merchandise for

13   Mr. Delancey when he -- when Mr. Delancey first

14   started to work.  That is in the original complaint

15   filed and the amended complaint as well at

16   paragraph -- I believe, paragraph 24.

17         The other two allegations -- two requests

18   for production concern an allegation that there was

19   an employee named Kathleen Wells who plaintiff

20   alleges made a complaint about Mr. Justin Wells, no

21   relation, whenever they were both employed,

22   Ms. Wells by FOX News and Mr. Wells by FOX 5, a FOX

23   television station, which is a separate company.

24   That complaint -- or allegations about that alleged

25   complaint are also in the original complaint filed

1    in this matter back in December of 2023 at

2    paragraph 41.  And that is also Ms. Wells, Kathleen

3    Wells, is also the subject of the interrogatory

4    which seeks her supervisor, which suggests to me

5    that that may be a prelude for and request for even

6    more discovery after that.

7            So I don't think there's anything.  I mean

8    while those topics came up in the depositions, there

9    is certainly nothing new that came from the

10   depositions.  The plaintiffs have known their

11   allegation that Kathleen Wells made a complaint

12   since this case was filed.  They have known that

13   their allegation that Mr. Wells purchased FOX

14   merchandise or ordered FOX merchandise for

15   Mr. Delancey since the case was filed.  Those

16   allegations are in the complaint.  We've been -- you

17   know, we've been having discovery in this case since

18   early 2024.  Discovery's been extended multiple

19   times.

20           It's our position, as Ms. Katzenstein said,

21   that both the subpoena to FOX 5, which covers

22   Mr. Wells and the allegation that Mr. Wells is

23   subject to a complaint there and the discovery

24   requested of FOX News are untimely and should not be

25   permitted.

1    THE COURT: Okay. I thought that FOX had

2    already produced any record of complaints against

3    Justin Wells and that that discovery would have

4    revealed whether Kathleen Wells had filed a

5    complaint against Justin Wells.

6    MR. EVANS: We did, Your Honor. We have no

7    record of a complaint by Kathleen Wells against

8    Justin Wells. The allegation is -- and this is

9    all -- so, Mr. Wells -- Mr. Delancey and Kathleen

10   Wells had a Facebook exchange after Mr. Delancey was

11   employed that based on Mr. Delancey's deposition, is

12   where he learned of this alleged complaint. My

13   understanding is what they're seeking now is

14   information from Ms. Wells' personnel file,

15   information from FOX 5, which was Justin Wells'

16   employer at the time, and information from us about

17   the interview of Mr. Wells. So it's all related to

18   that alleged complaint. We searched for complaints

19   related to Mr. Wells during the period we were

20   ordered to produce. We found none. So this appears

21   to be a request to sort of look for more information

22   related to that.

23   THE COURT: So what I'm hearing is that

24   even if the Court were to permit the RFP and the

25   interrogatory, that you've looked for information

1   and wouldn't be able to produce anything anyway.

2            MR. EVANS:  Certainly with -- well, with

3   regard to --

4            THE COURT:  Except for maybe Kathleen

5   Wells' personnel file, which I'm not sure is --

6            MR. EVANS:  That's right.

7            THE COURT:  -- relevant.

8            MR. EVANS:  We don't have -- we have not

9   searched Ms. Wells' personnel filed what personnel.

10   There was testimony from FOX News' corporate witness

11   that complaints are kept in the HR files that we

12   searched and not kept in personnel files.  So we

13   have no reason to believe it would be there if that

14   file still exists.  And I don't know if it does or

15   doesn't.

16            The other RFP concerns communications

17   between FOX News and the FOX 5 television station,

18   it's not limited to the complaint, it's just all

19   communications that were the subject of Mr. Wells

20   being -- you know, working for FOX television

21   stations and applying for work at FOX News.  Which

22   is entirely new, but my understanding is again

23   around the question of whether or not there was

24   information about a complaint from Kathleen Wells is

25   the purpose of that, as I understand it.

1           THE COURT:  All right.  So I'd like to hear

2    from plaintiff's counsel why you're saying that

3    these RFPs and interrogatory related to

4    Kathleen Wells are the results of information

5    learned during a deposition when it seems that there

6    was reference to this in the -- in the complaint.

7           MR. RAHMAN:  Your Honor, for one, Mr. Wells

8    denied any such complaint at his deposition, which

9    obviously we didn't know he would testify to.  And

10   so that -- so -- and again, it was revealed in the

11   testimony from the 30(b)(6) witness that, you know,

12   they searched for complaints not in personnel files,

13   but just in some set of written folder somewhere

14   that had complaints.  So again, we didn't know the

15   extent of the search of that search until the

16   30(b)(6) depositions.  So again, we're just trying

17   to make -- trying to confirm that all possible areas

18   where such a complaint might be housed or searched.

19           And with respect to the merchandise issue,

20   again, Mr. Wells testify at deposition that he would

21   issue such merchant -- would order such merchandise

22   for other employees besides Mr. Delancey.  We did

23   not know about that until the deposition, nor did we

24   know that he received -- that he received

25   confirmation about such orders.  So we're simply

1    asking to see such confirmation of orders to the

2    extent that he's testifying that he made orders,

3    such orders for many employees besides Mr. Delancey.

4         And then with respect to the communications

5    between FOX News and WNYW, we learned at the

6    deposition of the 30(b)(6) witness that FOX's

7    practice -- FOX News' practiced before hiring an

8    employee who works at a FOX television station is to

9    communicate with the station to determine whether

10   the said individual was in good standing, was the

11   term that they used.  And so clearly there were

12   communications about Mr. Wells since he applied to

13   work at FOX News while working at FOX 5 with WNYW.

14   So again, I didn't know about those communications

15   until that deposition.  So --

16        THE COURT:  But you have Mr. Wells'

17   personnel file; isn't that correct?

18        MR. RAHMAN:  But we're asking for

19   communications between people at FOX 5 and FOX News.

20   The testimony was that again, HR at FOX would

21   communicate with HR at FOX 5 about individuals who

22   are applying to work at FOX News regarding whether

23   or not that individual is in good standing at the

24   station.  So I don't believe -- so that would go

25   beyond his personnel style.  That would be

1   communications, again, between the two entities

2   about Mr. Wells.

3           THE COURT:  Do you even know who the people

4   are at HR who would have communicated?  I mean --

5           MR. RAHMAN:  Yes.

6           THE COURT:  -- this is kind of a very

7   expansive request at this late stage in discovery

8   when you're just -- you're just seeking to find --

9   you're just seeking to find out if there's something

10  in writing where somebody at FOX 5 said whether or

11  not Mr. Wells was in good standing at FOX 5.  Is

12  that correct?

13          MR. RAHMAN:  Well, again, we're alleging

14  that FOX News is aware that Mr. Wells had prior

15  complaints or had been accused of misbehavior

16  similar to what's alleged in this case, particularly

17  sexual harassment, sexual discrimination.  And

18  again, we're alleging that there was a complaint

19  against him while he worked at FOX 5 by Ms. Wells.

20  And that, again, we don't know whether or not that

21  was communicated, that complaint was communicated to

22  anyone at FOX News.  Maybe it wasn't, maybe it was.

23  We just don't have any communications about what was

24  shared between FOX 5 and FOX News at the time

25  Mr. Wells was hiring.

1        And the 30(b)(6) witness, Ms. Collins, did

2    identify, I think she said that she, herself, would

3    have been someone who would have communicated with

4    FOX 5 at that time.  And I don't believe it would be

5    a large number of people who would be in that

6    position.  We're talking about a small subset of

7    people in a small, short time period of when

8    Mr. Wells was interviewing for a job at FOX 5 -- at

9    FOX News.

10        THE COURT:  What was that time period?

11   What was the time period that he was interviewing?

12        MR. RAHMAN:  I believe it was sometime in

13   2007.  Again, I don't think that would be a very

14   long time period.  It's in the testimony.  But

15   again, I don't.  Think that would be more than a few

16   months, if that.

17        MR. EVANS:  Your Honor, if I may, just to

18   answer that last question.  My understanding -- or

19   at least Mr. Wells testified, I believe at his

20   deposition, that he was sort of looking for work at

21   a national network while employed by FOX 5 for

22   several months that included sort of networking with

23   people at FOX News as well as people at other

24   entities like MSNBC and CNN.  He actually had an

25   offer from one of them at one point, he testified.

1    So that period of time is a little longer than just
2    like there was a posting and he applied for it.  It
3    was at least that he was communicating with people
4    about the possibility of looking for a position
5    within FOX News.
6              I don't believe Ms. Collins, who was the
7    30(b)(6) opponent and also testified in her personal
8    capacity, was involved at all in Mr. -- was involved
9    in Mr. Wells' hire.  I asked her that question in
10   advance of this conference.  What I don't know is
11   who was, if there was a person or persons at FOX
12   News back in 2007 or '08 who would have been
13   involved at all.
14             This issue has never come up before.  And
15   as I said before, I mean, they obviously knew
16   Mr. Wells had worked at FOX 5.  They knew that he
17   had become employed at FOX News.  If they wanted
18   discovery around this, they had, you know, almost a
19   year over, well over -- actually over a year to take
20   that discovery rather than submit it, you know,
21   submit it to us two days before discovery closes.
22             THE COURT:  All right.  Having heard from
23   both sides regarding this, I'm of the view that
24   this -- that the RFPs and the interrogatories are
25   served too late, two days before the close of the

1    discovery deadline, and are requesting items that,

2    though arguably within the scope of broad relevance

3    of Rule 26, are things that the plaintiff could have

4    requested earlier.  And at this point they're

5    disproportionate to the needs of the case, given the

6    discovery that's gone on thus far, given the search

7    for records that FOX has already undertaken, and

8    given the production of the personnel files that

9    presumably would reflect if there was a poor -- if

10   there was something showing poor standing at FOX 5,

11   presumably that would be reflected in some personnel

12   record to the extent it still exists.

13           And I note again that this case was brought

14   well after the underlying events in the case, such

15   that it's been previously reported that there's not

16   a lot of documents that were retained over the

17   years.  So I am not sure that having an additional

18   search at this time, given what's already been

19   looked for, is proportional to the needs of the

20   case.  So for these reasons, I think that the

21   additional RFPs and interrogatory on FOX News are

22   inappropriate.

23           That being said, I'm going to allow the

24   subpoena on FOX 5.  I don't know that FOX News has

25   standing to object to it at this point, and I don't

1    think that it will -- I'm going to be extending
2    discovery for the limited purpose requested by FOX.
3    And I think that the subpoena can be served and
4    responded to and that that's not going to otherwise
5    delay the case and resolution of the case because
6    that can be responded to at the same time that FOX
7    is getting some getting the therapist records from
8    Mr. Wells that I assume he wants to rely on in
9    pursuing his claims for emotional distress.
10             So I'm going to extend the discovery
11   schedule for 30 days so that the therapist records
12   can be produced and so that the subpoena on FOX 5
13   can be responded to.  But otherwise the party
14   discovery between the plaintiff and FOX should be
15   completed this week.
16             So let me next hear from Mr. Wells --
17             MR. RAHMAN:  Your Honor -- Your Honor,
18   speaking this is --
19             THE COURT:  Who is speaking?
20             MR. RAHMAN:  This is Tanvir Rahman, counsel
21   for the plaintiff.  On interrogatory, just so you
22   understand what exactly we're requesting.
23             THE COURT:  Yup.
24             MR. RAHMAN:  So we're requesting to
25   identify who Ms. Wells' supervisor was at FOX News

1   for the two years that Mr. Wells -- that Mr. Wells
2   was at WNYW and that those individuals -- and that
3   individual's contact information because Ms. Wells
4   has passed away, right, but she said she wrote to
5   Mr. Delancey that her supervisor was aware of her
6   complaint against Mr. Wells.  And since we can't
7   verify through Ms. Wells whether there was such a
8   complaint, we're really asking to find out who was
9   the supervisor at that time so that we can see if we
10  can speak to that person and that person can verify
11  that the complaint was made.  They may not.  It was
12  many years ago.  I understand that.  But again,
13  there's no way for -- because Ms. Wells has passed
14  away, there's no way -- no way for us to verify that
15  such a complaint was made.  So I think it's a very,
16  very narrow issue just who is a supervisor in those
17  two years and what is that person's company
18  information that FOX has.  Because it's very, again,
19  very germane to our allegations that again, FOX News
20  was aware of Mr. Wells' conduct, you know, prior to
21  when he assaulted our clients.  So I think it's a
22  very narrow interrogatory.
23          THE COURT:  All right.  Having heard that
24  on reconsideration, I agree that the interrogatory
25  requesting simply the name and last known contact

1    information of Kathleen Wells' supervisor is not

2    disproportionate to the needs of the case.  So I'm

3    going to require FOX News to provide that

4    information.

5         MR. EVANS:  Your Honor, this is Paul Evans

6    for FOX News.  I just want to address that if I can.

7         I don't know how easy or hard it will be to

8    find that information, but obviously, if ordered to

9    do so, we'll find out.  My concern is that although

10   they have characterized this as a complaint of

11   sexual harassment by Ms. Wells, all that we have is

12   a Facebook message between Ms. Wells and

13   Mr. Delancey where Ms. Wells describes a dispute

14   that she had with Mr. Wells when Mr. Wells was at

15   FOX 5 and was requesting from Ms. Wells a live shot,

16   and there was a dispute about whether or not they

17   would get that live shot, during which time he

18   allegedly called her a name.  If we're going to take

19   discovery of that dispute at this stage, and there

20   is anything that that individual has to say about

21   this, and I don't know that there will be, but if

22   there is, it's going to lead to a request from us to

23   take additional discovery around the nature of the

24   dispute.  We don't believe it is sexual harassment

25   at all.  We don't believe it was ever characterized

1   that way.  If it happened at all, Mr. Wells didn't

2   recall it.  And so I just wanted to raise that --

3   while that request sounds limited, I think it is a

4   potential prelude to significant discovery if in

5   fact there's anything to be learned from that

6   supervisor.

7           THE COURT:  Well, I note your concern, but

8   I don't -- we'll deal with it if we have to deal

9   with it later and you may or may not get additional

10  discovery.  So I'm going to -- but I'm going to

11  require you to provide that information.

12          Okay.  So now for Mr. Wells, it sounds like

13  there's just this remaining discovery outstanding

14  where plaintiff is seeking supplementation of

15  certain information that Mr. Wells provided.

16  Anything else outstanding from Mr. Wells'

17  perspective or anything you want to say about that?

18          MR. SUNSHINE:  Well, Your Honor, during

19  Mr. Wells' deposition, we agreed to provide a phone

20  number of nonparty, I guess, witness that had not

21  been listed on the disclosures or in the

22  interrogatories, that had indicated that the contact

23  information was unknown and so we intend to

24  supplement those.

25          I think Mr. Rahman is also referring to --

1   it appears that there were -- there was a clerical

2   error on two or three of the RFP responses with sort

3   of a rogue sentence that says, you know, subject to

4   and without waiver of the foregoing, Wells' response

5   as follows, and then nothing following.  So we also

6   intend to correct those.  Although I had not

7   previously agreed to do so, that's -- that's fine

8   and we'll do that shortly.

9        One more outstanding issue is that

10  information gleaned during preparation for these

11  depositions has necessitated a very, very minor

12  amendment of Mr. Wells' answer.  It's just one

13  paragraph having to do with the size of his

14  apartment at the time.

15       And so I guess now is as good a time as

16  any.  Would you -- would you prefer a letter motion?

17  How would you prefer we go about doing that?

18       THE COURT:  So you need to correct

19  something so that it's accurate?

20       MR. SUNSHINE:  Correct.

21       THE COURT:  All right.  So I assume that

22  the other parties are not going to have an issue

23  with you correcting something, but as I -- as I'm

24  hearing, you need to do that in accordance with your

25  obligations to the Court to make sure it's truthful

1  and correct to the Court.

2          MR. SUNSHINE:  Yes, Your Honor.

3          THE COURT:  So does plaintiff have any

4  objection to that correction being made?

5          MR. RAHMAN:  Your Honor, we have no

6  objection, again subject to -- I don't know what

7  exactly will be changed, whether that will require

8  any additional discovery.  I would think not, but we

9  have no objection to correcting the record.

10         THE COURT:  And what about FOX?

11         MR. EVANS:  No, we have no objection, Your

12  Honor.

13         THE COURT:  Okay.  So what I think that

14  Mr. Wells should do is just make the correction in

15  track change, send it to counsel for the other

16  parties so that they can see exactly what they --

17  you know, what the change is, and reconfirm that

18  they have no objection to making that correction,

19  which clearly has to be done if something's

20  inaccurate, and then you can go ahead and file a

21  letter motion with that, you know, asking for it to

22  be permitted to correct the record, and then I can

23  rule on that; okay?

24         MR. SUNSHINE:  Understood, Your Honor.

25         THE COURT:  Okay.  So anything else that,

1    from a discovery standpoint, that any of the parties
2    would like to raise?
3            MR. RAHMAN:  Your Honor, the only issue
4    which I brought up earlier was the question to
5    Mr. MacCarthy at her deposition, concerning his
6    interactions with HR concerning his conduct that was
7    objected to at his deposition.
8            THE COURT:  Okay.  Do you want to do a
9    letter motion?  File that within a week, and then
10   FOX can respond to that.  And you'll have to submit
11   the specific pages of the transcript that you're
12   talking about so that I can take a look at it and
13   then rule.  How does that sound?
14           MR. RAHMAN:  Yes.
15           THE COURT:  All right.  So file a letter
16   motion one week from today together with those pages
17   of the transcript that contain the question, answer,
18   and objection, and then FOX will have a week to
19   respond.  No reply.  Okay?
20           MR. RAHMAN:  Okay.
21           THE COURT:  Anything else?  Have the
22   parties talked about settlement?  Do you want to
23   schedule a settlement conference?  I don't think we
24   have one on the calendar.
25           MR. EVANS:  Your Honor, this is Paul Evans

1   for FOX News.  We talked about potential settlement

2   or a conference a while back with Mr. Pulisi, when

3   he was counsel for plaintiff.  At that time, we

4   determined we didn't think it was likely to be

5   fruitful.  I don't think anything has changed unless

6   the demand from the plaintiffs has changed.

7   THE COURT:  Okay.  So this is what I'm

8   going to ask.  I'm going to ask counsel for

9   plaintiff to reevaluate whether you want to reengage

10  with settlement, whether you want to make any new

11  demand.  And if you -- if the parties -- if you want

12  to do that and you want to provide FOX a different

13  number, and then you -- the parties want to have a

14  settlement conference with me, then just write a

15  letter and I can put something on the calendar to

16  have a settlement conference.

17  MR. RAHMAN:  Okay, Your Honor.

18  THE COURT:  And then I guess the next thing

19  is summary judgment briefing.  Do you all want to

20  set a -- want me to set a schedule for that?  Do you

21  want to talk about a potential briefing schedule and

22  submit a letter request for a briefing schedule?

23  Either is fine.

24  MR. EVANS:  Your Honor, will that motion --

25  will you hear that motion in the first instance?

1    THE COURT:  The motion -- this case has

2    been referred to me for general pretrial, so that

3    particular motion hasn't been referred to me.  I can

4    set the schedule.  But if you want to go ahead and

5    write to Judge Torres about filing that, you can do

6    that as well.

7    MR. EVANS:  I don't have an objection to

8    meeting and conferring on a schedule.  It's just

9    that Judge Torres has a specific procedure for

10   pre-letter motions -- or premotion letters that I

11   think we'll need to follow if it's going to be heard

12   by her.

13   THE COURT:  Right.  Right.

14   MR. EVANS:  Okay.  So we can.  We can --

15   this is Paul Evans.  At least on behalf of FOX News,

16   we're happy to confer with the other parties and

17   come up with a proposed schedule for Judge Torres.

18   THE COURT:  Okay.  Why don't you do that?

19   MR. EVANS:  Thank you.

20   THE COURT:  All right.  Anything else?

21   MR. EVANS:  Not for FOX News, Your Honor.

22   MR. SUNSHINE:  Not for Mr. Wells either.

23   THE COURT:  Okay, then.  Well, then we are

24   adjourned.  Thank you, everyone.  Bye-bye.

25

1                    C E R T I F I C A T E

2

3       I, Marissa Lewandowski, certify that the

4   foregoing transcript of proceedings in the case of

5   Andrew Delancey v. FOX Corporation, et al.,

6   Docket #1:23-cv-10357-AT-KHP, was

7   prepared using digital transcription software and is

8   a true and accurate record of the proceedings.

9

10

11   Signature  *Marissa Lewandowski*
                 _____

12                    Marissa Lewandowski

13

14   Date:      July 10, 2025

15

16

17

18

19

20

21

22

23

24

25