

**F I L I P P A T O S   P L L C**
Employment Law, Litigation & ADR

Tanvir H. Rahman
Admitted in NY & NJ

199 Main Street, Suite 800
White Plains, NY 10601
filippatoslaw.com ◆ bestworkplacelawyers.com

Phone/Fax: 914-984-1111
trahman@filippatoslaw.com

September 26, 2025

**VIA ECF**
Hon. Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

    **Re:**    ***Delancey v. Wells, et al.*, Case No. 1:23-cv-10357-AT-KHP**

Dear Judge Torres:

Pursuant to Section III(C)(iii) of Your Honor's Rules, Plaintiff Andrew Delancey submits this opposition to Defendant Fox News Network, LLC's ("Fox News") pre-motion letter requesting to file a Motion for Summary Judgment. Fox News requests permission to move for summary judgment on Plaintiff's claims of gender discrimination and harassment under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"). As set forth below and in Plaintiff's responses to Fox News's Statement of Material Facts, genuine disputes of material fact permeate the record, and summary judgment is therefore unwarranted**.**

**I.**    **Triable Issues Exist as to Wells's Supervisory Status**

The record demonstrates that Wells functioned as Plaintiff's supervisor in practice, even though his job title did not formally confer such authority; in reality, the practical effect of Wells' role within Fox News was supervisory, giving him the ability to direct Plaintiff's work and influence the trajectory of Plaintiff's employment at Fox News. A supervisor is an employee who is "empowered…to take tangible employment actions against the victim, *i.e.* to effect a significant change in [the victim's] employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *See* ECF No. 54 at 10-11(quoting *Vance v. Ball State Univ.*, 570 U.S. 421, 431 (2013)). Your Honor has already held that Plaintiff sufficiently alleged that Wells was his supervisor, and discovery confirms why this issue must go to a jury. *Id.* at 12.

The record establishes that Wells repeatedly exercised authority over Plaintiff's work. Plaintiff testified that Wells would reach out to him twice a week with assignments. *See* Delancey Dep., at 172:25-173:5. Further, Wells would consistently tell Plaintiff that "he had power within the Company," which Plaintiff understood to mean Wells could affect his job security and advancement. *Id.* at 180:11-15; 183:15-184:3. Fox News' very own structure is what enabled Wells to exert this authority over Plaintiff's work and made his belief reasonable. Plaintiff testified that Fox News Edge was "low on the totem pole," and that "any midlevel producer" – including Wells — at Fox News Channel could have him fired or reassigned because of the obvious differences in stature between the two Fox News units. *Id.* at 185:14-23.

This hierarchy between Fox News Channel and Fox News Edge is what gave Wells' words and conduct tangible weight. By consistently directing Plaintiff's work and presenting himself as someone with influence over Fox News opportunities, Wells positioned himself as a gatekeeper to advancement. Wells arranged Plaintiff's interview with WNBC prior to the assault, and when this post-assault interview ended without an offer, he told Plaintiff that he was "not thinking straight" and "screwing [himself] over." *Id.* at 200:2-201:4. Whether these post-assault, retaliatory remarks show that Wells used his influence to cause tangible employment effects on Plaintiff's career is a question for the jury.

Defendant may dispute the legal significance of these facts, but whether Wells' authority amounted to supervisory status is quintessentially a question for the jury. The combination of (i) regular work assignments, (ii) Wells's very own assertion of "power within the Company," and (iii) the structural reality that Fox News Channel producers could influence the reality of Fox News Edge staff provides ample evidence that Wells functioned as Plaintiff's supervisor within the meaning of the NYSHRL and NYCHRL, creating a quintessential question for the jury.

## II.   <u>Plaintiff's NYSHRL Claims Present Genuine Disputes of Material Fact</u>

This Court has already held that "[w]hen a hostile work environment claim includes evidence of harassment or assault outside the workplace, the question, then, is whether the conduct had a sufficient impact on, and nexus to, the Plaintiff's work environment as to trigger the employer's duty to respond." *See* ECF No. 54 at 7-8 (citing *Parrish v. Sollecito*, 249 F. Supp. 2d 342, 351-53 (S.D.N.Y. 2003)).   Your Honor correctly held that the facts alleged by Plaintiff satisfy this standard, and further discovery has only strengthened Plaintiff's position. *Id.* at 8.

The undisputed facts show that Wells's conduct was intertwined with Plaintiff's employment. Wells continued to assign Plaintiff work before and after the assault and used career opportunities, like arranging Plaintiff's WNBC interview, as leverage over Plaintiff. *See* Delancey Dep., at 172:25-173:5. However, after Plaintiff rejected Wells's sexual advances, Wells threatened Plaintiff by telling him that he was "not thinking straight" and "screwing [himself] over." *Id.* at 200:2-201:4. As this Court has already recognized and discovery has established, the assault "negatively impacted Delancey's 'ability to perform work duties,' caused him 'mortification aroused by encountering Wells on the job on a regular basis,' and placed him in 'constant apprehension[.]'" *See* ECF No. 54 at 9-10 (quoting *Parrish*, 249 F. Supp. 2d at 351-52); *see also* Delancey Dep., at

162:2-9. Defendant's renewed attempt to argue that Plaintiff's assault cannot be imputed to Fox News under such facts is plainly mistaken.

The circumstances of the assault further tie it to Plaintiff's work. Wells invited Plaintiff out under the guise of a professional networking event, telling him that "other people from Fox News" would be there and that it would "benefit him to go." *See* Delancey Dep., at 58:14-23. Plaintiff had no reason to doubt that Wells's invitation was anything other than a genuine networking opportunity. In fact, it was common for his direct supervisor, Mykel MacCarthy, to invite Plaintiff and other "primarily gay" Fox News Edge producers out for drinks at a bar near the office called Rosie's, where Mr. MacCarthy would buy drinks and discuss his "favorites" at Fox News. *Id.* 151:10-14. At Rosie's, Mr. MacCarthy would also talk about other producers' work performance and interpersonal issues (i.e., gossip) occurring in the office. *Id.* 155:19-22. These after-hours social practices, commonly used by Mr. MacCarthy and implicitly encouraged within Fox News' culture, reinforces Plaintiff's reasonable belief that Wells's invitation was work-related. These facts also demonstrate that Fox News knew or should have known of the risks created by such practices and failed to implement safeguards or discipline supervisors, like Mr. MacCarthy, who used them.

Further, Plaintiff did not fail to report Wells to HR because of indifference but because he was affirmatively warned not to report**.** Mr. MacCarthy "specifically told [him] not to go to HR," cautioning that any complaint "would be turned around on [him]" and he would "become the problem." *See* Delancey Dep., at 148:10-149:14. This direct instruction from his supervisor made it entirely reasonable for Plaintiff to refrain from using internal reporting mechanisms and independently supports imputing Wells' conduct to Fox News, which is liable when supervisors discourage reporting and thereby frustrate the very policies meant to prevent harassment.

Moreover, Fox News also knew, or at the very least had ample reason to know, that Wells posed a serious risk of sexual harassment long before he assaulted Plaintiff. In fact, former Fox News employee Kathleen Wells told Plaintiff that Wells called her a "f***ing bitch," revealing an incident of sex-based hostility and harassment toward Fox News employees. *See* Delancey Dep., at 214:22-25. Ms. Wells further told Plaintiff that she reported Wells' behavior to her boss at Fox News, who reached out to Wells's boss at the time. Wells himself admitted, when asked about Ms. Wells, that he could be "tough" on employees and if he did not think an employee was doing a good job, he could be "pretty direct about it." *See* Wells Dep., at 274:19-25. Fox News' professed lack of any record of complaints against Wells does not negate this notice; it reinforces it. Fox News maintained harassment complaints only in paper files kept in a filing cabinet, never digitized, and without a system to preserve such complaints or search for records. *See* Collins Dep., at 65:23–66:24. Further, if an employee emailed a complaint to HR, that complaint would supposedly have been printed out and placed in the paper file. *Id*. Yet Fox News automatically deletes emails after thirteen months, meaning any complaint that was never printed out and manually filed away, or any related correspondence, would be irretrievably lost. *Id.* This recordkeeping system, which combined paper-only files, routine email destruction, and no searchable database, virtually ensured that critical warnings or complaints about Wells would disappear, enabling Defendant to deny knowledge of his misconduct. This combined with MacCarthy's admonitions about how HR "turned" complainants into "the problem" render any convenient professed lack of knowledge highly suspect, and at minimum, a question for a jury.

Taken together, the evidence establishes far more than a triable issue: Wells's assault was work-related, his harassment was enabled by Fox News's culture and lack of oversight, and Fox deliberately maintained a recordkeeping system that concealed warnings of his dangerous propensities. These undisputed facts meet and exceed the legal standard that Wells's conduct altered Plaintiff's employment conditions for the worse. *See* ECF No. 54 at 7 (citing *McKinney v. New York,* No. 19 Civ. 3920, 2022 WL 602970, at *5 (S.D.N.Y Mar. 1, 2022). At a minimum, they create a genuine issue for the jury and foreclose summary judgment.

### III.    Plaintiff's NYCHRL Claims Raise Triable Questions of Fact

Under the NYCHRL, "[a] plaintiff states a claim … if he demonstrated that he experienced 'unwanted gender-based conduct that imposed a different term or condition of employment on him even if the harassing conduct did not arise to the level of being severe and pervasive,' and even if the challenged impact on employment was not 'tangible (like hiring or firing).'" *See* ECF No. 54 at 15 (internal quotations omitted) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F. 3d 102, 108-10, 113 (2d Cir. 2013)).

Under the NYCHRL, and as set forth above, the record easily permits a jury to find supervisory status. Wells repeatedly assigned Plaintiff work (*See* Delancey Dep., at 172:25-173:5), boasted of his "power within the Company" (*id.* at 180:11-15) and explicitly told Plaintiff he could affect his employment (*id.* at 183:15-184:10). He arranged and then undermined Plaintiff's WNBC interview, later warning that Plaintiff was "not thinking straight" and "screwing [himself] over" *Id.* at 200:2-13. These undisputed facts establish the kind of practical authority over daily work and career prospects that satisfies the broader supervisory standard under the NYCHRL.

Fox News cannot show that Plaintiff unreasonably failed to use internal reporting avenues, and this failure-of-proof only heightens its liability under the NYCHRL. Plaintiff testified that Mr. MacCarthy "specifically told [him] not to go to HR" because any complaint "would be turned around on [him]" and he would "become the problem." *See id.* at 147:10-16, 151:8-11. Plaintiff was entitled to rely on that explicit warning, which itself constitutes evidence that Fox's own management discouraged reporting and obstructed its purported anti-harassment policies. The NYCHRL imposes strict liability when a supervisor engages in discriminatory conduct and also when "the employer knew of the employee's discriminatory conduct and acquiesced in it or failed to take immediate and appropriate corrective action." *See Zakrzewska v. New Sch.*, 14 N.Y.3d 469, 479 (2010). The same record that satisfies the NYSHRL's notice requirement—Wells's documented hostility toward other colleagues (Delancey Dep., at 214:22-25), his admissions about being "tough" on employees (Wells Dep., at 274:19-25), and Fox's deliberately deficient complaint-retention system (Collins Dep., at 59:10-60:18, 65:1-14)—independently establishes NYCHRL liability. Together, these facts show both that Plaintiff's decision not to report was reasonable and that Fox News knew or should have known of Wells's misconduct and failed to act, foreclosing any defense based on supposed lack of notice.

For these reasons, Plaintiff respectfully submits that Fox News's anticipated motion lacks merit and should be discouraged (or leave to file such denied). The record is replete with genuine disputes of material fact that are for a jury to resolve.

The Honorable Analise Torres
September 26, 2025
Page 5

Respectfully submitted,

Tanvir H. Rahman, Esq.
Gabrielle Rosen Harvey, Esq.

cc:     All Counsel of Record (*via* ECF)