## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

ANDREW DELANCEY,

                        *Plaintiff,*

       -against-

JUSTIN WELLS, FOX CORPORATION, and FOX NEWS NETWORK, LLC

                       *Defendants*.

Case No. 1:23-CV-10357(AT)

## DEFENDANT FOX NEWS NETWORK, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................ 1

II.    UNDISPUTED FACTS ............................................................................... 3

    A.    The Parties ........................................................................................ 3

    B.    Wells and Delancey Both Join FNN in 2008 ................................... 4

    C.    Delancey Does Not Report The Alleged Assault to FNN and FNN Has No Information That Wells Might Engage in Assault ..................................................... 5

    D.    Wells Was Not Delancey's Supervisor And Had Very Limited Interactions With Delancey At Work Before And After The Alleged Assault ........................ 6

    E.    Delancey Received Two Pay Increases And Was Promoted By FNN After the Alleged Assault Before Voluntarily Resigning in September, 2010 ............... 8

III.    SUMMARY JUDGMENT STANDARD ................................................... 9

IV.    ARGUMENT ............................................................................................. 9

    A.    Delancey's NYSHRL And NYCHRL Sexual Harassment Claims Should Be Dismissed Because Wells's Alleged Assault Cannot Be Imputed To FNN ............................................................................................... 9

        1.    Wells Was Not Delancey's Supervisor ................................... 10

        2.    Delancey's NYSHRL Claim Should Be Dismissed Because FNN Did Not Know About or Condone Wells's Alleged Assault or Any Similar Misconduct Before the Alleged Assault ..................................... 14

        3.    Delancey's NYCHRL Claim Should Be Dismissed Because FNN Did Not Know And Should Not Have Known About Wells's Alleged Assault ................................................................... 15

    B.    Delancey's NYSHRL and NYCHRL Sexual Harassment Claims Should Be Dismissed Because The Alleged Assault Occurred Outside Of The Workplace And Did Not Impact Delancey's Work Environment ....................... 20

    C.    Delancey Cannot Prevail On A Quid Pro Quo Theory Of Harassment .............. 23

        1.    Delancey's Quid Pro Quo Claim Should be Dismissed Because Wells Was Not Delancey's Supervisor ................................... 24

        2.    Delancey's Quid Pro Quo Claim Should be Dismissed Because There is No Evidence That Wells Ever Made Any Promises Or Threats To Alter The Conditions Of Delancey's Employment ............... 24

V.    CONCLUSION ......................................................................................... 26

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alfano v. Costello*,
  294 F.3d 365 (2d Cir. 2002)........................................................................................9

*Augustin v. Yale Club of N.Y. City*,
  No. 03-cv-1924, 2006 WL 2690289 (S.D.N.Y. Sept. 15, 2006), *aff'd*, 274 F.
  App'x 76 (2d Cir. 2008)..............................................................................................9

*Bentley v. AutoZoners, LLC*,
  935 F.3d 76 (2d Cir. 2019)........................................................................................13

*Bernard v. J.P. Morgan Chase Bank N.A.*,
  No. 08-cv-4784, 2010 WL 423102 (S.D.N.Y. Feb. 5, 2010), *aff'd*, 408 F.
  App'x 465 (2d Cir. 2011) ............................................................................................9

*Castillo v Isakov*,
  No. 22-cv-6888, 2023 WL 6664552 (S.D.N.Y. Oct. 12, 2023).........................10, 11

*Clarke v. Pacifica Found.*,
  No. 07-cv-4605, 2011 WL 4356085 (E.D.N.Y. Sept. 16, 2011) ..............................20

*Davis v. Verizon Wireless*,
  389 F. Supp. 2d 458 (W.D.N.Y. Oct. 5, 2005) ........................................................25

*Devlin v. Teachers' Ins. & Annuity Ass'n of Am.*,
  No. 02 Civ. 3228 (JSR), 2003 WL 1738969 (S.D.N.Y. Apr. 2, 2003)..............20, 21

*Doe v. State*,
  89 A.D.3d 787 (N.Y. App. Div. 2011) ...............................................................14, 15

*Duch v. Jakubek*,
  588 F.3d 757 (2d Cir. 2009)......................................................................................19

*Eckhart v. Fox News Network, LLC*,
  No. 20-cv-5593, 2025 WL 786536 (S.D.N.Y. Mar. 12, 2025).................................14

*Fay v. City of Newburgh*,
  No. 21 Civ. 3140 (NSR), 2024 WL 4169552 (S.D.N.Y. Sept. 12, 2024)................24

*Feliciano v. Alpha Sector, Inc.*,
  No. 00 Civ. 9309 (AGS), 2002 WL 1492139 (S.D.N.Y. July 11, 2002).................20

*Figueroa v. Johnson*,
  648 F. App'x 130 (2d Cir. 2016) ..............................................................................24

ii

*Fornah v. Cargo Airport Servs., LLC*,
  No. 12-cv-3638, 2014 WL 25570 (E.D.N.Y. Jan. 2, 2014)......................................................12

*Forrest v. Jewish Guild for the Blind*,
  3 N.Y.3d 295 (2004) ....................................................................................................14, 15

*Friederick v. Passfeed, Inc.*,
  No. 21-CV-2066, 2022 WL 992798 (S.D.N.Y. Mar. 31, 2022)................................................23

*State Div. of Hum. Rts. ex rel. Greene v. St. Elizabeth's Hosp.*,
  66 N.Y.2d 684 (1985) ....................................................................................................14

*Hernandez v. Premium Merch. Funding One, LLC*,
  No. 19-cv-1727, 2020 U.S. Dist. LEXIS 122643 (S.D.N.Y. July 13, 2020).........................24

*Int'l Healthcare Exch., LLC v. Global Healthcare Exch., LLC*,
  470 F. Supp. 2d 345 (S.D.N.Y. 2007)....................................................................................14

*Jackson v. Fed. Express*,
  766 F.3d 189 (2d Cir. 2014)....................................................................................................17

*Karibian v. Columbia Univ.*,
  14 F.3d 773 (2d Cir. 1994.)....................................................................................................24

*King v. Friend of a Farmer, Corp.*,
  No. 97-cv-9264, 2001 WL 849460 (S.D.N.Y. July 26, 2001)................................................25

*Kiseleva v. Greenspan*,
  No. 23-cv-09496, 2025 WL 1434042 (S.D.N.Y. May 19, 2025), *appeal filed
  sub nom. Kiseleva v. Litman*, No. 25-1549 (2d Cir. June 23, 2025)........................................17

*Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*,
  957 F.2d 59 (2d Cir 1992)....................................................................................................24

*Macias v. Barrier Free Living, Inc.*,
  No. 16- cv-1735 (ER), 2018 WL 1603566 (S.D.N.Y. Mar. 28, 2018)......................................9

*McArdle v. Arms Acres, Inc.*,
  No. 03 Civ. 05721 (PGG), 2009 WL 755287 (S.D.N.Y. Mar. 23, 2009)................................20

*Mejia v. City of New York*,
  No. 17-cv-2696, 2020 WL 2837008 (E.D.N.Y. May 30, 2020)........................................10, 16

*Peck v. Cnty. of Onondaga*,
  No. 5:21-cv-651, 2021 WL 3710546 (N.D.N.Y. Aug. 20, 2021)...........................................14

*Quintero v. Angels of the World, Inc.*,
  No. 19-CV-6126 (DG), 2021 WL 4464123 (E.D.N.Y. Sept. 10, 2021), *report
  and recommendation adopted*, 2021 WL 4463488 (E.D.N.Y. Sept. 29, 2021)......................24

*Ruiz v. SEIU Loc.32BJ*,
  No. 19-cv-8810, 2023 U.S. Dist. LEXIS 132992 (S.D.N.Y. Apr. 17, 2023),
  *adopted by sub nom. Cano v. SEIU, Loc. 32BJ*, No. 19 Civ 8810, 2023 U.S.
  Dist. LEXIS 130322 (S.D.N.Y. July 27, 2023) ....................................................................22

*Schiano v. Quality Payroll Sys.*,
  445 F.3d 597 (2d Cir. 2006).......................................................................................................9

*Socorro-Prospero v. M. Booth & Assocs.*,
  No. 23-cv-11319, 2025 U.S. Dist. LEXIS 186012 (S.D.N.Y. Sept. 22, 2025) ......................13

*Travis v. City of Chicago*,
  No. 10-cv-3011, 2014 U.S. Dist. LEXIS 138563 (N.D. Ill. Sept. 30, 2014) .........................12

*Vance v. Ball State Univ.*,
  570 U.S. 421 (2013)......................................................................................................10, 11, 12

*Ward v. Shaddock*,
  No. 14-cv-7660 (KMK), 2016 WL 4371752 (S.D.N.Y. Aug. 11, 2016).........................11, 12

*Weinstock v. Columbia Univ.*,
  224 F.3d 33 (2d Cir. 2000).........................................................................................................9

*Whipple v. Reed Eye Assocs.*,
  524 F. Supp. 3d 76 (W.D.N.Y. 2021) ......................................................................................13

*Williams v. N.Y.C. Dep't of Educ.*,
  No. 1:19-cv-01353, 2021 WL 1178118 (S.D.N.Y. Mar. 29, 2021)........................................16

*Zakrzewska v. New Sch.*,
  14 N.Y.3d 469 (2010) ...........................................................................................................9, 15

**Statutes**

N.Y. Exec. Law § 296(1)(a)...............................................................................................................1

N.Y. Exec. Law § 297(9) ..................................................................................................................1

**Other Authorities**

Fed. R. Civ. P. 56(a) ..........................................................................................................................9

Local Rule 56.1 ..................................................................................................................................2

N.Y.C. Admin. Code § 8-502(a)........................................................................................................1

N.Y.C. Admin. Code § 8-107(13)(b)(1-3)......................................................................15

## I.    INTRODUCTION

Plaintiff Andrew Delancey ("Delancey") a former producer in Fox News Network, LLC's ("FNN") Fox News Edge division ("Edge") between 2008 and 2010, alleges that Defendant Justin Wells ("Wells"), a former producer in a different division within FNN, sexually assaulted him outside of work hours in Wells's apartment in 2008. But Delancey does not just bring his claims against Wells—he also attempts to hold FNN liable for Wells's alleged actions. Specifically, Delancey brings claims against FNN for discrimination on the basis of gender under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 296(1)(a), 297(9), and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-502(a). Ex. 2 at ¶¶64–90. Delancey's September 26, 2025 pre-motion letter to the Court makes clear his intent to rely upon the Court's ruling on FNN's Motion to Dismiss the Amended Complaint. But, as demonstrated below, discovery in this case has revealed that the factual allegations in Delancey's Amended Complaint on which the Court relied in rendering that decision have no support in evidence. Thus, Court should grant summary judgement on both of Delancey's claims against FNN for three reasons.

First, Delancey's claims fail as a matter of law because neither the NYSHRL nor the NYCHRL hold an employer liable for an employee's harassment unless there is evidence from which to impute that harassment to the employer. Such evidence is absent here. One way Delancey could seek to meet this requirement under both statutes is by proving that the harasser was the plaintiff's supervisor. But the record is devoid of any evidence that Wells was Delancey's supervisor. The undisputed facts establish that Wells had no authority to hire, discipline, promote, fire or cause a significant change in the benefits of any employee, including Delancey. Indeed, Delancey admits

that Wells did not have supervisory authority over him. (Pl. Resp. to SOMF at ¶56(a); Ex. 8 at 331:17-19.)[1]

Nor does the factual record support imputing Wells's alleged misconduct to FNN on any other basis under the NYSHRL and NYCHRL. Those statutes provide alternative ways an alleged harasser's conduct can be imputed to his employer where that individual is not a supervisor—by a showing that the employer "condoned" the conduct under the NYSHRL or that it "knew or should have" about the alleged conduct under the NYCHRL. However, the undisputed record evidence here demonstrates that Delancey cannot as a matter of law meet either standard.

It is undisputed that FNN did not know until this lawsuit was filed that Wells allegedly assaulted Delancey. Further, there is no evidence that FNN should have known that Wells may sexually harass or assault another employee such that it could have prevented the alleged assault of Delancey. Although Delancey alleges in his Amended Complaint that FNN had actual knowledge of prior sexual misconduct by Wells and Mykel MacCarthy ("MacCarthy"), the undisputed evidence shows, as Delancey now admits, that FNN had no knowledge of any complaints about Wells or MacCarthy before either started with FNN or at any time during Plaintiff's employment with FNN. The undisputed evidence also shows that no one at FNN

---

[1] In filing this Motion, FNN relies upon its Statement of Material Facts ("SOMF") and Delancey's Response thereto ("Pl. Resp. to SOMF"), which was previously submitted to the Court together with FNN's pre-motion letter pursuant to the Court's Individual Rules. *See* ECF Nos. 115 and 115-1. Local Rule 56.1 states that "[e]ach numbered paragraph in the statement of material facts . . . will be deemed to be admitted for purposes of the motion unless specifically denied and controverted . . .by the opposing party." In his Response to several of the factual statements in the SOMF, Delancey responds only by stating that he "does not dispute that Paragraph [] . . . accurately reflects [a witness'] testimony" and/or "does not dispute that Paragraph [] . . . to the extent this is what Fox News contends." *See, e.g.*, Pl. Resp. to SOMF 56(a); Pl. Resp. to SOMF 98. While these responses are apparently offered by Delancey to avoid directly stating that the applicable facts are admitted, such responses do not constitute "specific den[ials]" and, therefore, the facts related thereto are admitted for purposes of this motion pursuant to Rule 56.1, and FNN cites them as admitted herein.

discouraged Delancey from reporting the assault to FNN's human resources department or to any of the other available reporting channels provided for in FNN's anti-harassment policy. Based on these facts, no reasonable juror could conclude that FNN knew or should have known that Wells had a propensity to engage in the alleged assault at a time when FNN could have acted to prevent it.

Second, FNN is entitled to summary judgment on Delancey's NYSHRL and NYCHRL claims for the independent reason that both laws proscribe only workplace harassment and the undisputed evidence establishes that the alleged assault took place outside the workplace and did not infect Delancey's work environment. Indeed, Delancey admits he never saw Wells in person at the workplace either before or after the assault. Under these undisputed facts, no reasonable juror could find that workplace harassment in violation of the NYSHRL and NYCHRL occurred at all.

Third, there is no evidence to support Delancey's claims under a *quid pro quo* theory of harassment either. Essential to such a claim is that Delancey prove Wells was his supervisor. But, again, there is no evidence that Wells was Delancey's supervisor, because he was not. And even if he were, a *quid pro quo* claim further requires evidence Wells promised or threatened to alter the conditions of Delancey's employment. No juror could find Wells made such a threat or promise based on the undisputed evidence in this case.

Regardless of what did or did not happen between Delancey and Wells in Wells's apartment, no reasonable juror could hear the undisputed record evidence and rule in Delancey's favor on his claims against FNN. FNN is entitled to summary judgement.

## II.   UNDISPUTED FACTS

### A.  The Parties.

Delancey began working for FNN on September 7, 2008 as a Regional Producer in its Edge division.  (Pl. Resp. to SOMF ¶2; Ex. 4; Ex. 5; Ex. 6 at 33:19-25, 133:5-9.)  FNN's Edge division is separate from FNN's national shows.  (Pl. Resp. to SOMF ¶¶36-37; Ex. 18 at 39:10-18, 78:12-79:2-6; Ex. 12 at 23:12-19; Ex. 6 at 22:21-23:2, 133:24-135:16-21.)

Prior to joining FNN, Delancey worked as a producer for Fox Television Stations, LLC ("FTS") at one of its local stations, WTVT in Tampa, Florida.  (Pl. Resp. to SOMF ¶19; Ex. 4; Ex. 6 at 15:19-16:5, 17:9-14; *see also* Ex. 1 at ¶7.)  Wells also worked for FTS prior to joining FNN, working as a producer at FTS' WNYW station in New York City.  (Pl. Resp. to SOMF ¶22; Ex. 8, at 26:25-27:2; Ex. 14 at 10:6-11:2; Ex. 1 at ¶11.)  FTS is a distinct legal entity from FNN and Delancey admits that neither he nor Wells was employed by FNN while working for FTS.  (Pl. Resp. to SOMF ¶¶21-23; Ex. 1 at ¶¶8-9, 11; Ex. 12 at 72:11-24; Ex. 8 at 26:13-27:5, Ex. 14 at 10:6-11:2.)

It was while both men worked for FTS that Delancey and Wells met.  During that time, they were both members of a private Facebook group set up by individuals who worked at FTS and they exchanged direct messages over Facebook Messenger.  (Pl. Resp. to SOMF ¶24; Ex. 15, at WELLS00001; Ex. 6 at 36:16-37:5; Ex. 8 at 77:18-78:6.)  This was not a Facebook group established, sponsored, or maintained by FTS or any other company.  (Pl. Resp. to SOMF ¶24; Ex. 8 at 77:21-78:6.)

**B.  Wells and Delancey Both Join FNN in 2008.**

On July 16, 2008, Wells joined FNN as a junior producer on *On the Record*.  (Pl. Resp. to SOMF ¶29; Ex. 7; Ex. 8 at 27:6-15.)  Two months later, on September 7, 2008, Delancey was hired by FNN as a Regional Producer in Edge.  (Pl. Resp. to SOMF ¶31; Ex. 6 at 133:5-12.)

Wells reached out to Delancey after Delancey began working at FNN. Approximately one month after Delancey started working at Edge, he and Wells planned to go out with other gay colleagues, as well as "[m]aybe other people from other local media outlets," to the Barracuda Lounge, a gay bar in Chelsea. (SOMF ¶63; Ex. 6 at 58:14-61:13-22.) Delancey and Wells arranged to meet for a "pre-game" cocktail at Wells's apartment prior to joining the rest of the group. (SOMF ¶64; Ex. 6 at 58:14-59:1.) It was during that "pre-game" meet-up that Delancey alleges Wells sexually assaulted him. (Pl. Resp. to SOMF ¶67; Ex. 6 at 59:2-60:14; Ex. 2 at ¶¶30-37.)

**C. Delancey Does Not Report the Alleged Assault to FNN and FNN Has No Information That Wells Might Engage in Assault.**

At no point during Delancey's employment with FNN did he report the alleged assault by Wells to anyone in Human Resources or management at FNN. (Pl. Resp. to SOMF ¶¶69-71; Ex. 6 at 161:10-13, 161:19-24.) This despite the fact that FNN maintained strict anti-discrimination, anti-harassment, and anti-retaliation policies and trained its employees, including Wells, and managers on those policies. (SOMF ¶¶4, 6-7, 12-13; Ex. 1, at ¶¶5-6; Ex. 10, at FNN00014-17; Ex. 11, at FNN000070-74; Ex. 12, at 51:16-56:20.) Those policies provided for a variety of reporting avenues between 2008 and 2010 that employees could use if they believed that the policies had been violated. (Pl. Resp. to SOMF ¶8; Ex. 10 at FNN00015; *see also* Ex. 11 at FNN00072.) Delancey was aware that FNN had an anti-harassment policy that forbade sexual harassment and that he could report concerns of sexual harassment to the company. (Pl. Resp. to SOMF ¶5, 8; Ex. 6 at 160:6-13; Ex. 10 at FNN00015; *see also* Ex. 11 at FNN00072.)

At the time FNN hired Wells, it had no knowledge of any claims of sexual harassment against Wells. (Pl. Resp. to SOMF ¶81; Ex. 9 at ¶3.) From the start of Wells's employment with FNN through the end of 2010, not a single claim of sexual harassment, sexual assault, or retaliation was

made against Wells.  (Pl. Resp. to SOMF ¶82; Ex. 20 at Interrogatory No. 11; Ex. 13 at p. 1.)  At

no point during Wells's employment with FNN was Wells disciplined for violating any company

policy, including the anti-discrimination, anti-harassment, and anti-retaliation policies.  (Pl. Resp.

to SOMF ¶83; Ex. 13 at p. 2.)

### D. Wells Was Not Delancey's Supervisor And Had Very Limited Interactions With Delancey At Work Before And After The Alleged Assault.

Delancey and Wells did not work in the same division of FNN.  (Pl. Resp. to SOMF ¶¶2-3;

Ex. 4; Ex. 5; Ex. 6 at 33:19-25, 133:5-12; Ex. 7; Ex. 8 at 27:6-15, 115:15-17; Ex. 9 at ¶4.)  Delancey

worked in Edge.  (Pl. Resp. to SOMF ¶2, Ex. 6, at 133:5-12.)  Edge serves as a news service which

licenses news feeds to local stations owned and operated by FTS, affiliates and other subscribers

for them to use as part of local news broadcasts throughout the United States and abroad.  (Pl.

Resp. to SOMF ¶35; Ex. 17; Ex. 6 at 133:24-134:8; Ex. 18 at 22:21-23:2; Ex. 12, at 23:12-19.)

The primary function of Edge is to provide these services to local Fox stations owned and operated

by FTS, such as WNYW in New York, as well as other owned stations that licensed the content,

referred to as "affiliates."  (Pl. Resp. to SOMF ¶36; Ex. 18 at 39:8-18, 78:9-79:6; Ex. 12, at 23:12-

19.)  Fox News Channel was not an "affiliate."  (Pl. Resp. to SOMF ¶37; Ex. 18 at 78:23-79:6; *see

also* Ex. 6 at 135:22-136-22.)

Wells did not work at Edge at the time of the alleged assault, or ever.  (Pl. Resp. to SOMF at

¶3; Ex. 7; Ex. 8 at 27:6-15, 115:15-17; Ex. 9, at ¶5.)  At that time, Wells was a 25-year-old junior

producer for the FNN program, *On the Record*.  (Pl. Resp. to SOMF ¶29; Ex. 7; Ex. 8 at 23:6-7,

27:6-15; Ex. 16 at FNN000199.)  Wells worked as a utility producer, filling in as needed in the

field or control room.  (Pl. Resp. to SOMF ¶47; Ex. 8 at 29:14-24, 225:23-226:7.)  Wells's title

was "Producer," and he was the most junior of four people working on the show with that title.

(Pl. Resp. to SOMF ¶48; Ex. 8 at 224:5-20, 225:9-15.)  Those four Producers were all subordinate

to the show's Line Producer, Coordinating Producer, and Executive Producer.  (Pl. Resp. to SOMF ¶48; Ex. 8 at 224:5-20.)  Wells did not have any direct reports.  (Pl. Resp. to SOMF ¶50, 56(a); Ex. 8 at 331:17-19.)

As a Regional Producer with Edge, Delancey was responsible for the West Coast Region, working closely with stations from "Denver Westward."  (Pl. Resp. to SOMF ¶45; Ex. 6 at 16:9-18:8.)  He reported to MacCarthy, a Senior Producer for Edge.  (Pl. Resp. to SOMF ¶¶52-53; Ex. 6 at 21:21-24, Ex. 18 at 36:12-25.)  MacCarthy was trained on FNN's anti-discrimination, anti-harassment, and anti-retaliation policy.  (Pl. Resp. to SOMF ¶106, Ex. 18 at 122:2-25.)

Delancey admits Wells was not his direct supervisor and that his colleagues would not have considered Wells to be his supervisor.  (Pl. Resp. to SOMF ¶¶54-55; Ex. 6 at 51:24-52: 4.)  Indeed, Wells did not supervise anyone at the relevant time.  It is undisputed that between 2008 and 2010: (a) Wells had no direct reports and did not have supervisory authority over any FNN employee, including Delancey (Pl. Resp. to SOMF ¶56(a); Ex. 8 at 32:5-24, 331:17-19.); (b) Wells did not have the authority to hire any FNN employee, including Delancey (Pl. Resp. to SOMF ¶56(b); Ex. 8 at 32:5-24, 332:6-9.); (c) Wells did not have the authority to direct the work of any FNN employee, including Delancey (Pl. Resp. to SOMF ¶56(c); Ex. 8 at 32:524, 332:19-333:3); (d) Wells did not have the authority to set the compensation for any FNN employee, including Delancey (Pl. Resp. to SOMF ¶56(d); Ex. 8 at 32:5--24, 333:9-24); (e) Wells did not have the authority to discipline or terminate any FNN employee, including Delancey (Pl. Resp. to SOMF ¶56(e); Ex. 8 at 32:5-24, 334:14-21.); and (f) Wells did not have the authority to promote any FNN employee, including Delancey.  (Pl. Resp. to SOMF ¶56(f); Ex. 8 at 32:5-24, 334:8-13.)

Nor was it Delancey's job to complete tasks or produce content for Wells.  (Pl. Resp. to SOMF ¶43; Ex. 18 at 40:18-24.)  As Delancey admits, "helping Fox News Channel television shows was

not part of his formal job duties." (Pl. Resp. to SOMF ¶43). Employees such as Wells who worked on FNN's national shows were required to follow a companywide process of requesting information for their shows (such as video clips that would be shown during broadcasts) from FNN's Assignment Desk. (Pl. Resp. to SOMF ¶40; Ex. 18 at 41:2-17.) The FNN Assignment Desk was not part of Edge and was a separate and distinct division of FNN. (Pl. Resp. to SOMF ¶41; Ex. 18 at 41:18-21; Ex. 12 at 122:8-123:11.)

Notwithstanding the above, Delancey testified that a "couple of times a week" Wells would contact him over an internal instant messaging system to request content for, *On the Record.* (Pl. Resp. to SOMF ¶111; Ex. 6 at 50:19-25, 173:24-176:18.) Delancey cannot recall a single request that he was asked to work on by Wells or any other FNN producer. *Id.* Regardless, this is the only type of interaction Delancey recalls having with Wells at work. Delancey admits that he never once saw Wells in the workplace, before or following the alleged assault. (Pl. Resp. to SOMF ¶112; Ex. 6 at 180:16-20.)

### E. Delancey Received Two Pay Increases And Was Promoted By FNN After the Alleged Assault Before Voluntarily Resigning in September, 2010.

In July 2009, FNN promoted Delancey to a National Producer position with Edge. (Pl. Resp. to SOMF ¶132; Ex. 26; Ex. 6 at 23:12-24:2.) At that time, he also received a 13.33% pay increase. (Pl. Resp. to SOMF ¶132; Ex. 26; Ex. 6 at 24:3-7.) In July 2010, FNN provided Delancey with an additional 6% pay increase. (Pl. Resp. to SOMF ¶133; Ex. 27; Ex. 6 at 25:16-26:14.) On September 8, 2010, Delancey voluntarily resigned his employment with FNN and accepted a position with WTVT in Tampa, Florida—the same television station he worked with prior to joining FNN. (Pl. Resp. to SOMF ¶¶134-135; Ex. 6 at 33:2-25; Ex. 28.)

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment must be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000).  "[A] plaintiff must provide more than conclusory allegations and show more than some metaphysical doubt as to the material facts" to overcome a motion for summary judgment.  Summary judgment is appropriate in discrimination and retaliation cases, as the "salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to other areas of litigation."  *Macias v. Barrier Free Living, Inc.*, No. 16-cv-1735, 2018 WL 1603566, at *5 (S.D.N.Y. Mar. 28, 2018) (citation omitted).

## IV.    ARGUMENT

### A. Delancey's NYSHRL And NYCHRL Sexual Harassment Claims Should Be Dismissed Because Wells's Alleged Assault Cannot Be Imputed To FNN.

To prevail on a sexual harassment claim under the NYSHRL and NYCHRL, Delancey must prove that a specific basis exists to impute Wells' alleged assault to FNN as an employer.[2]  *See Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002); *Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 609 (2d Cir. 2006) (holding that hostile work environment "claims under the NYSHRL are generally governed by the same standards as federal claims under Title VII"); *Augustin v. Yale Club of N.Y. City*, No. 03-cv-1924, 2006 WL 2690289, at *29 (S.D.N.Y. Sept. 15, 2006) (same), *aff'd*, 274 F. App'x 76 (2d Cir. 2008); *Zakrzewska v. New Sch.*, 14 N.Y.3d 469, 479 (2010); *Bernard v. J.P. Morgan Chase Bank N.A.*, No. 08-cv-4784, 2010 WL 423102, at *10 (S.D.N.Y. Feb. 5, 2010), *aff'd*, 408 F. App'x 465 (2d Cir. 2011).

---

[2]FNN does not dispute for purposes of this motion that an alleged assault could be severe or pervasive or evidence of "less well treatment," under the NYSHRL and NYCHRL.

For the reasons set forth below, there is no evidence from which a reasonable trier of fact could conclude that Wells's conduct can be imputed to FNN under either the NYSHRL or NYCHRL.

        1.  <u>Wells Was Not Delancey's Supervisor</u>

Under both the NYSHRL and NYCHRL, an employer is strictly liable for a supervisor's harassment of his or her subordinate. This Court previously set forth in this case the standard for determining if an individual qualifies as a supervisor under both statutes:

> The Supreme Court has explained that a 'supervisor' . . . is an employee who is 'empowered . . . to take tangible employment actions against the victim, *i.e.*, to effect a significant change in the victim's employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'

ECF 54 at 11-12 (quoting *Vance v. Ball State Univ.*, 570 U.S. 421, 431 (2013) (alterations omitted); *see also Castillo v Isakov*, No. 22-cv-6888, 2023 WL 6664552, at *7 (S.D.N.Y. Oct. 12, 2023) (applying standard for supervisor as set forth in *Vance* to NYCHRL claims); *Mejia v. City of New York*, No. 17-cv-2696, 2020 WL 2837008, at *16 (E.D.N.Y. May 30, 2020) (same). Applying this standard here, the undisputed record evidence establishes that no reasonable juror could find that Wells was Delancey's (or any FNN employee's) supervisor at the time of the alleged assault.

Delancey and Wells did not work in the same division of FNN, with Delancey working in Edge and Wells working on an FNN network show. (Pl. Resp. to SOMF ¶29-31; Ex. 7; Ex. 8 at 27:6-15, 223:6-17; Ex. 6 at 133:5-12.) Delancey reported to MacCarthy, a Senior Producer for Edge. (Pl. Resp. to SOMF ¶52-53; Ex. 6 at 21:21-24; Ex. 18 at 36:12-25.) Delancey admits Wells was not his direct supervisor and that his colleagues would not have considered Wells to be his supervisor. (Pl. Resp. to SOMF ¶¶54-55; Ex. 6 at 51:24-52:4.) Nothing about Wells or his position suggests he had any authority over Delancey. At the time, Wells was simply a 25-year-old junior-level producer for *On the Record*. (Pl. Resp. to SOMF ¶29; Ex. 16; Ex. 8 at 23:6-7.) In fact, he

was the most junior of four people on the show with a Producer title, all of whom were subordinate to the show's Line Producer, Coordinating Producer, and Executive Producer. (Pl. Resp. to SOMF ¶48; Ex. 8 at 224:5-20, 225:9-15.)

Crucially, Delancey admits, "Wells had no direct reports and did not have supervisory authority over any employee at Edge, including [Delancey]." (Pl. Resp. to SOMF ¶56(a); *see also* Ex. 8 at 331:17-19). Delancey further admits, and Wells's testimony confirms, that Wells did not have the authority to hire, discipline, terminate, promote, or set the compensation for him or any FNN employee. (Pl. Resp. to SOMF ¶56(a)-(f); Ex. 8 at 331:17-334:25). FNN Senior Vice President of Human Resources, Denise Collins ("Collins") confirmed these facts. (*Id.* at 124:7-125:10.) Delancey's admissions and the uncontroverted testimonial evidence foreclose any argument that Wells was Delancey's supervisor. As such, Wells's alleged assault of Delancey cannot be imputed to FNN. *See Vance*, 570 U.S. at 431; *Ward v. Shaddock*, No. 14-cv-7660, 2016 WL 4371752, at *9 (S.D.N.Y. Aug. 11, 2016); *Castillo*, 2023 WL 6664552, at *7.

Delancey insists that Wells's conduct can be imputed to FNN because (a) he recalls that Wells would request that Delancey provide *On the Record* with content for use on that show "a couple of times a week"; and (b) he believed Wells had the "indirect" ability to terminate his employment or impact his career. But as a matter of law, neither Delancey's recall about requests nor his contra-factual "beliefs" are sufficient to transform Wells into a supervisor.

First, no reasonable juror could conclude that Delancey's testimony that Wells periodically requested content for *On the Record* from Delancey evidences anything more than a request from one coworker to another. Delancey himself admits in that "helping Fox News Channel television shows was not part of his formal duties," but argues "he often provided such help when he was the only person working on the West Coast team." (Pl. Resp. to SOMF ¶43.) Moreover, even if

Delancey could show Wells directed Delancey's work when Delancey provided such help (which he cannot), this Court has already recognized in its earlier ruling in this case that the standard to establish that an alleged harasser was a supervisor "is not satisfied by a showing that the harasser merely 'ha[d] the ability to direct a co-worker's labor to some ill-defined degree.'" ECF 54 at 11-12 (citations omitted). Rather, "[a] plaintiff must show more than that the harasser had the 'ability to direct [his] tasks' or 'control . . . [his] daily work.'" *Id.*

No reasonable juror could find Delancey can satisfy this standard simply because Wells requested content for *On the Record* "a couple of times a week." *See Ward*, 2016 WL 4371752, at *9-11 (holding plaintiff's alleged harasser was not plaintiff's supervisor even though he was responsible for plaintiff's day-to-day work assignments, because he did not have ability to hire, fire, promote, reassign, or significantly change plaintiff's benefits. *Id.; see also Fornah v. Cargo Airport Servs., LLC*, No. 12-cv-3638, 2014 WL 25570, at *5 (E.D.N.Y. Jan. 2, 2014) ("assigning tasks outside [the] [p]laintiff's job duties" did not make alleged harasser a supervisor); *Travis v. City of Chicago*, No. 10-cv-3011, 2014 U.S. Dist. LEXIS 138563, at *33–34 (N.D. Ill. Sept. 30, 2014) (finding a defendant did not qualify as a supervisor because "[her] control over [the plaintiff] [wa]s limited to distributing daily work assignments . . . and recommending discipline to her superiors".) *Vance*, *Ward* and *Fornah* make clear that Wells was not Delancey's supervisor even if Delancey "helped" Wells by providing content for *On the Record* on occasion.

Nor is Delancey's admitted "speculat[ion]" that Wells had the "indirect[]" ability to terminate his employment or impact his career advancement sufficient to create a triable issue of fact regarding whether Wells was his supervisor. (Pl. Resp. to SOMF ¶58, 61; Ex. 6 at 183:13-16, 185:11-186:20.) Delancey admits that he based this speculation on his belief that Wells was

"powerful" within FNN at the relevant time because of the popularity of *On the Record*,[3] "the way [Wells] carried himself" and that Wells allegedly told Delancey he "had power within the Company." (Pl. Resp. to SOMF ¶59; Ex. 6 at 181:10-22, 184:15-185:2.)

However, even if Delancey believed Wells to be "powerful" based on Wells portraying himself that way—and Delancey admits he did nothing to confirm the accuracy of his belief (Pl. Resp. to SOMF ¶62; Ex. 6 at 187:20-188:14)—"[w]hat plaintiff *believed*, . . . is not the test." *Whipple v. Reed Eye Assocs.*, 524 F. Supp. 3d 76, 93 (W.D.N.Y. 2021) (finding on summary judgment that harasser was not a supervisor even though plaintiff believed (a) the harasser was her supervisor with substantial authority over her, and (b) "while [the harasser] could not independently terminate her employment, he had significant influence with [the owners of the business for which she worked] in that regard"); *see also Socorro-Prospero v. M. Booth & Assocs.*, No. 23-cv-11319 , 2025 U.S. Dist. LEXIS 186012, at *14–15 (S.D.N.Y. Sept. 22, 2025) (granting summary judgment because plaintiff's argument that "his reasonable belief—even if mistaken—that [the alleged harasser] was his supervisor is enough" was "contrary to Second Circuit law.") (citing *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 92 (2d Cir. 2019)). Rather, "to raise a triable issue of fact as to [Wells] being a supervisor, [Delancey] had to adduce admissible evidence showing that [FNN] had authorized [Wells] . . . to take *tangible employment actions* that could *inflict direct economic injury*." *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 92 (2d. Cir. 2019) (emphasis in original). The undisputed factual record and Delancey's own admissions make clear he cannot do so here. Delancey's purported belief was not based in fact.

---

[3] Delancey believes any midlevel producer on an FNN television show could "potentially" have him fired from FNN and therefore should be found to have been his "supervisor." (Pl. Resp. to SOMF ¶60; Ex. 6 at 185:3-6.)

2.  Delancey's NYSHRL Claim Should Be Dismissed Because FNN Did Not Know About or Condone Wells's Alleged Assault or Any Similar Misconduct Before the Alleged Assault.

Under the NYSHRL, FNN cannot be liable for Wells's alleged discriminatory acts unless FNN "became a party to [it] by encouraging, condoning, or approving it." *Eckhart v. Fox News Network, LLC*, No. 20-cv-5593, 2025 WL 786536, at *21 (S.D.N.Y. Mar. 12, 2025) (citing *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 311 (2004)).  Condonation "contemplates a knowing, after-the-fact forgiveness or acceptance of an offense." *State Div. of Hum. Rts. ex rel. Greene v. St. Elizabeth's Hosp.*, 66 N.Y.2d 684, 687 (1985).  That is, condonation "requires 'actual notice.'" *Eckhart*, 2025 WL 786536, at *21 (quoting *Int'l Healthcare Exch., LLC v. Global Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 361 (S.D.N.Y. 2007).  "A plaintiff must therefore do more than show her employer 'should have known' about the misconduct—she must show that it knew about the misconduct and then 'forgave' or 'accepted' it 'after-the-fact.'" *Id.* (alterations omitted).  Thus, "imputing liability to an employer under the NYSHRL is no mean feat." *Peck v. Cnty. of Onondaga*, No. 5:21-cv-651, 2021 WL 3710546, at *14 (N.D.N.Y. Aug. 20, 2021).

No reasonable juror could conclude that FNN condoned Wells's alleged assault. It is undisputed that Delancey did not inform anyone in FNN management, human resources, or the legal department about the alleged assault during his employment with the company, and that no one in those positions had any knowledge of it.  *See Doe*, 89 A.D.3d at 788–89 (finding no evidence that employer should have known where the employee conceded that he did not report the conduct to his supervisor or anyone in management); *see also Eckhart*, 2025 WL 786536, at *21.  As such, FNN could not, as a matter of law, have "condoned" that conduct.

FNN acknowledges that, relying on *Doe v. State*, 89 A.D.3d 787, 788 (N.Y. App. Div. 2011), the Court previously concluded that under the NYSHRL "[i]f an employer fails to exercise

14

reasonable diligence to prevent sexual misconduct of which it should have been aware, it will be held liable under the theory that it 'condon[ed] the improper conduct.'"  ECF No. 54 at p. 10.  This conclusion should not be a basis for denying summary judgment here.  Unlike the authority discussed above, *Doe* did not explicitly examine whether actual knowledge is required under the NYSHRL.  Accordingly, FNN respectfully submits that, as recognized in cases such as *Forrest* and *In re State Div. of Hum. Rts. ex rel. Green,* knowledge is necessary to satisfy the condonation standard and the Court's prior ruling in this case finding misstates the standard under the NYSHRL.  Even if the Court were to disagree, summary judgment still should be granted because, as set forth below in relation to the NYCHRL claim, there is no evidence supporting a finding that FNN should have known that Wells would engage in an assault of a coworker.  (*See, infra*, Section IV.A(3).)

> 3. Delancey's NYCHRL Claim Should Be Dismissed Because FNN Did Not Know And Should Not Have Known About Wells's Alleged Assault.

Summary judgment also should be granted on Delancey's NYCHRL sexual harassment claim because it is undisputed that FNN did not know about Wells's alleged assault of Delancey, and there is no evidence that FNN "should have known" about it yet "failed to exercise reasonable diligence to prevent" it.  N.Y.C. Admin. Code § 8-107(13)(b)(1-3); *Zakrzewska v. New Sch.*, 14 N.Y.3d 469, 479–80 (2010).  The NYCHRL's "should have known" standard is, in effect, a negligence standard that asks whether the employer was negligent in not discovering and preventing the sexual harassment. *See Williams v. N.Y.C. Dep't of Educ.*, No. 1:19-cv-01353, 2021 WL 1178118, at *11 (S.D.N.Y. Mar. 29, 2021).

It is undisputed that FNN did not know of Wells's alleged assault of Delancey.  (*See supra*, Sections IV.A(2).)  The record is also devoid of any evidence that FNN "should have known" about Wells's alleged assault because Delancey did not disclose it to his manager, FNN's human

resources department, or anyone in FNN management or its legal department despite being aware that he could do so. (Pl. Resp. to SOMF ¶¶69-71; Ex. 6 at 161:10-24); *see also Mejia*, 2020 WL 2837008, at *16–17 (granting summary judgment on plaintiff's hostile work environment claim under the NYCHRL because plaintiff did not complain about harassing conduct such that defendants could be liable).

Further, no reasonable juror could conclude that FNN should have known that Wells had a propensity to engage in sexual assault such that it could have prevented the assault of Delancey. In ruling on FNN's early Motion to Dismiss, the Court found that Delancey sufficiently pled that FNN should have known about the heightened risk of sexual misconduct toward Delancey because Delancey made factual allegations in his Amended Complaint that FNN had actual knowledge of prior sexual misconduct by Wells and MacCarthy. ECF No. 54 at p. 10. After discovery, it is clear that there is no factual basis to support the factual allegations on which the Court relied.

To the contrary, Delancey now admits that FNN had no knowledge of any complaints about Wells when it hired him and there were no complaints about Wells from the time Wells was hired through the end of Delancey's employment. (Pl. Resp. to SOMF at ¶¶81-83; Ex. 9 at ¶3; Ex. 20, at Interrogatory No. 11; Ex. 13 at p. 2.) Delancey also admits that that there is no evidence that MacCarthy was the subject of complaints of sexual harassment, sexual assault or retaliation from the start of MacCarthy's employment with FNN through the end of Delancey's employment with FNN.[4] (Pl. Resp. to SOMF at ¶¶97-100; Exhibit 24, at ¶4; Ex. 20, at Interrogatory No. 12; Ex. 13 at p. 1.)

---

[4] While Delancey speculates about "office gossip" and "open secrets" about MacCarthy, he admits he had "no personal knowledge of any complaint against Mr. MacCarthy." (Pl. Resp. to SOMF at ¶101; Ex. 6 at 163:9-12.)

Notwithstanding his admission that FNN had no knowledge of any complaints about Wells when it hired him, Delancey previously argued that statements in a 2017 Facebook message made to Delancey from a person who purports to be former FNN employee Kathleen Wells (no relation to Defendant Wells) constitute evidence that FNN should have known that Wells had a propensity to sexually assault a coworker. That is not the case.

First, the Court should not consider that Facebook message or its contents, described below, in ruling on FNN's Motion for Summary Judgment. "[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." *Jackson v. Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014). The Facebook message is inadmissible, both because it cannot be authenticated and is inadmissible hearsay. Plaintiff cannot cure these defects because: (a) Kathleen Wells, the alleged author, is deceased (Pl. Resp. to SOMF ¶92, Ex. 6 at 210:16-211:1), (b) Delancey concedes he has no personal knowledge of the incident (Pl. Resp. to SOMF ¶89; Ex. 6 at 210:710), and (c) Justin Wells – who can testify at trial – does not recall the incident and affirmatively denies using any derogatory term in any conversation with Kathleen Wells (Pl. Resp. to SOMF at ¶93; Ex. 8 at 337:14-23). *See Kiseleva v. Greenspan*, No. 23-cv-09496, 2025 WL 1434042, at *4–5 (S.D.N.Y. May 19, 2025) (holding that text messages were inappropriate summary judgement evidence because they were introduced for the truth of the author's statements), *appeal filed sub nom. Kiseleva v. Litman*, No. 25-1549 (2d Cir. June 23, 2025).

Moreover, even if the Court were to consider the Facebook message, the circumstances of the alleged incident described therein could not lead a reasonable juror to conclude that FNN was negligent in not knowing that Wells may engage in a sexual assault of a coworker outside of work years later. Although Delancey alleged in the Amended Complaint that Wells subjected a female coworker to sexual harassment prior to Wells allegedly assaulting Mr. Delancey, that is not what

the evidence shows.  To the contrary, the part of the October 2017 Facebook message allegedly

from Kathleen Wells on which Delancey exclusively relies in making this allegation states:

> [Wells] was such a fucking ass to me when he worked at WNYW.  I had a huge
> fight with him and he "called me a 'fucking bitch' etc bc I wouldn't do a live shot
> for him . . . [b]ut my boss made me do it. My boss had a talk with his boss about
> how he treated me . . . and he wrote a letter to me apologizing…"

(Pl. Resp. to SOMF ¶86; Ex. 21 at PLAINTIFF 000053.)  There is no evidence that Kathleen Wells

reported this incident as sexual harassment or that it was considered sexual harassment by anyone.

And the Facebook message goes on to state that when Wells started working at FNN, he was "nice"

to Kathleen Wells, "bending over backwards giving [her] tips and going a mile for [her]."  (Ex. 21

at PLAINTIFF 000053.)  Thus, the only available evidence related to Kathleen Wells's interaction

with Wells on which Delancey bases his claim shows that, at the very most: (a) prior to Wells

working at FNN, FNN learned that Wells called an FNN employee a "fucking bitch" in connection

with a dispute about "live shots" for a newscast, (b) Wells apologized to the employee at that time

for making that comment, and (c) Wells then treated that employee professionally after he started

working with the employee when Wells was hired by FNN years later.  While the initial comment

allegedly made by Wells is undoubtedly unprofessional, that single statement in this context could

hardly be found to put FNN on notice that Wells had a propensity to sexually assault a coworker

outside of work years later.

Finally, Delancey alleged in his complaint that MacCarthy discouraged Delancey from

reporting the alleged assault to FNN Human Resources.  But there is no evidence to support that

allegation.  Delancey did not testify that MacCarthy told him not to report the alleged assault.  (Pl.

Resp. to SOMF ¶72; Ex. 6 at 162:14-22).  Rather, Delancey testified that MacCarthy told him "not

to trust Human Resources" because others had complained about MacCarthy[5] and "[MacCarthy] had been treated unfairly, that their accusations were not right, and that it got turned around on [MacCarthy]." (Pl. Resp. to SOMF ¶74; Ex. 6 at 150:14-24, 160:19-161:9; *see also* Ex. 2 at ¶42.) This actual evidence shows that, at most, MacCarthy cautioned Delancey that human resources had treated MacCarthy harshly after people complained about *MacCarthy's* workplace behavior. Such statements cannot be interpreted as intending to dissuade Delancey from reporting misconduct such as the alleged assault to human resources, management (including MacCarthy himself), or legal at FNN. To the contrary, MacCarthy's supposed statement only demonstrates that Delancey was aware that complaints could be made to human resources and would be investigated.

Indeed, it is undisputed that FNN policy provides that employees can raise complaints of sexual harassment via other avenues if going to human resources was not feasible for any reason. (Pl. Resp. to SOMF ¶¶8-9; Ex. 10 at FNN00015; Ex. 11 at FNN00072.) Delancey testified that he knew as much when he was employed. (SOMF ¶¶10, 74; Ex. 6 at 150:14-24, 160:19-161:9; Ex. 2 at ¶42). Because there were multiple avenues of complaint and Delancey failed to use of any of them, no reasonable juror could conclude that FNN should have known about the alleged assault by Wells despite the alleged comment by MacCarthy. *Duch v. Jakubek*, 588 F.3d 757, 762–63 (2d Cir. 2009) ("[T]he relevant inquiry is not whether a *particular* avenue of complaint was effectively blocked but, rather, whether defendants 'provided *no* reasonable avenue of complaint.'") (citations omitted).

---

[5] Delancey admits these complaints were not about sexual harassment, discrimination or retaliation or retaliation for reporting about sexual harassment or discrimination. (Pl. Resp. to SOMF at ¶¶97-100; Ex. 24, at ¶4; Ex. 20, at Interrogatory No. 12; Ex. 13 at p. 1; Ex. 18 at 33:1536:2.)

**B. Delancey's NYSHRL and NYCHRL Sexual Harassment Claims Should Be Dismissed Because The Alleged Assault Occurred Outside Of The Workplace And Did Not Impact Delancey's Work Environment.**

Delancey's NYSHRL and NYCHRL sexual harassment claims against FNN also fail for the independent reason that there is no evidence linking Wells's alleged assault to his work environment. "As a general rule, 'employers are not responsible . . . for hostile sexual acts resulting from nonwork-related, off-duty interactions between co-employees,' because those actions are not part of the work environment." *Devlin v. Teachers' Ins. & Annuity Ass'n of Am.*, No. 02 Civ. 3228, 2003 WL 1738969, at *2 (S.D.N.Y. Apr. 2, 2003) (defendant "cannot be held liable for what transpired at the off-premises social event"); *see also Feliciano v. Alpha Sector, Inc.*, No. 00 Civ. 9309, 2002 WL 1492139, at *8 (S.D.N.Y. July 11, 2002) (holding that employers are generally not responsible for "hostile sexual acts resulting from nonwork-related, off-duty interactions between co-employees"); *Clarke v. Pacifica Found.*, No. 07-cv-4605, 2011 WL 4356085, at *19 (E.D.N.Y. Sept. 16, 2011) (same).

It is undisputed that the alleged assault by Wells occurred at Wells's apartment building during non-working time and was unrelated to any company-sponsored event. (SOMF ¶¶63-64; Ex. 6 at 58:11-23; Pl. Resp. to SOMF ¶¶65-68; Ex. 6 at 59:2-60:14, 191:20-23; Ex. 2 at ¶¶30-39.) In his Response to FNN's Statement of Material Facts, Delancey attempts to link the assault to FNN by "[avering] that his motivation for attending the night out at Barracuda lounge was to meet and network with other people who worked in television news in New York City, including at [FNN]." (Pl. Resp. to SOMF ¶65.) Accepting that as true, the fact that coworkers, and individuals at other local television media stations in New York City, were going to the night out at the Barracuda Lounge does not convert that personal outing into a work-related activity. *McArdle v. Arms Acres, Inc.*, No. 03 Civ. 05721, 2009 WL 755287, at *15 & n.21 (S.D.N.Y. Mar. 23, 2009) (finding that

inappropriate conduct that allegedly occurred at a co-worker's party was irrelevant to plaintiff's sexual harassment claim because it occurred outside the workplace); *Devlin*, 2003 WL 1738969, at *2 (holding that plaintiff's voluntary attendance at an after-work party to celebrate a co-worker's promotion was not part of her work environment even though she "felt the urgency to go because it was the promotion of a director").  Moreover, the assault didn't happen at the Barracuda Lounge—it happened at Wells's apartment where only Delancey and Wells met, further distancing the incident from FNN.

In ruling on FNN's Motion to Dismiss, the Court held that conduct outside of the workplace can be actionable if it had "the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment" (ECF No. 54 at p. 7) (citation omitted).  But in denying FNN's Motion at that stage, the Court was required to accept as true the factual allegations in Delancey's Complaint.  Now that discovery has concluded the undisputed evidence makes  clear that no reasonable juror could find those allegations to be true.  Specifically:

- **No reasonable juror could conclude that Wells was Delancey's supervisor.**  (*See* Section IV.A(1), *supra*).

- **No reasonable juror could conclude Delancey was "forced to confront" Wells in the workplace after the assault.**  In fact, Delancey testified that he does not recall ever seeing Wells in the workplace.  (Pl. Resp. at SOMF ¶112; Ex. 6 at 180:16-20.)

- **No reasonable juror could conclude that following Delancey's rejection of Wells during the alleged sexual assault, Wells undermined Delancey's efforts to obtain a position with WNBC, a station that is not owned by FNN (or FTS).**  Delancey now admits that this allegation is based purely on his own speculation and no record

evidence.  (Pl. Resp. to SOMF at ¶126; Ex. 2 at ¶50; Ex. 6 at 55:14-19, 54:5-6.).  Such self-serving speculation is not enough to avoid summary judgment.  *See Ruiz v. SEIU Loc.32BJ*, No. 19-cv-8810, 2023 U.S. Dist. LEXIS 132992, at *53 (S.D.N.Y. Apr. 17, 2023), *adopted by sub nom. Cano v. SEIU, Loc. 32BJ*, No. 19 Civ. 8810, 2023 U.S. Dist. LEXIS 130322 (S.D.N.Y. July 27, 2023)(holding plaintiff's claim that his alleged harasser attempted to sabotage him at work was not sufficient overcome summary judgment when plaintiff's allegations were based on speculation).  Indeed, Wells testified that he never spoke to anyone at WNBC between the time he passed along Delancey's resume before the alleged assault and when Wells learned that Delancey did not perform well in his interview, at which point WNBC had already made the decision not to hire Delancey.  (Pl. Resp. to SOMF ¶¶128-129; Ex. 8 at 62:4-17, 335:8-25, 336:2-7.).  Delancey concedes these facts.  (*Id*.)

- **No reasonable juror could conclude that following Delancey's rejection of Wells during the alleged sexual assault, Wells undermined Delancey's efforts to obtain freelance shifts with Fox News Radio.**  As Delancey concedes, Wells forwarded Delancey the job posting for this work and simply suggested Delancey reach out to Fox Radio if interested.  Not only is there no evidence Wells ever spoke to anyone about that work, Delancey admits he does not even recall if he pursued the Fox Radio opportunity at all.  (Pl. Resp. to SOMF at ¶122; Ex. 6 at 190:18-25.)

- **No reasonable juror could conclude that Wells's alleged statements to Delancey that Delancey was "not thinking straight" and was "screwing himself over" serve as evidence that Wells would harm Delancey's career because Delancey did not give in to his sexual demands.**  To the contrary, Delancey admits Wells did not make

those comments in the context of Delancey having rebuffed Wells's sexual advances, but rather during Delancey's discussion with Wells about the feedback Wells heard from the hiring manager at WNBC. (SOMF at ¶130; Ex. 6 at 200:2-12.) Delancey also admits that he "didn't fully understand what [Wells] mean[t] by" those comments. (SOMF at ¶130; Ex. 6 at 200:12-13.), further demonstrating that his allegations that the comments were threats related to the alleged assault have no evidentiary basis and are nothing more than speculation.

- **No reasonable juror could conclude that Delancey was unable to report the alleged assault.** (*See, supra*, Section IV.A(2).)

- **No reasonable juror could conclude that FNN was aware of, promoted, or failed to remedy a culture of sexual assault and harassment or that Fox should have been especially wary of Wells and McCarthy.** (*See, supra*, Section IV.A(2).)

In short, Delancey has failed to adduce evidence from which a reasonable trier of fact could conclude that Wells's sexual assault of Delancey at Wells's apartment had any nexus to or impact on the workplace.

### C.  Delancey Cannot Prevail On A *Quid Pro Quo* Theory Of Harassment.

Delancey's claims of *quid pro quo* harassment under the NYSHRL and NYCHRL[6] also fail. (*See* Ex. 2 at ¶¶80, 87.) "*Quid pro quo* sexual harassment occurs when submission to or rejection of improper or unwelcome sexual conduct by an individual is used as the basis for employment

---

[6] The NYCHRL does not distinguish *quid pro quo* claims from hostile work environment claims, focusing instead on "unequal treatment based on gender." *Friederick v. Passfeed, Inc.*, No. 21-cv-2066, 2022 WL 992798, at *7 (S.D.N.Y. Mar. 31, 2022) (citations omitted). Thus, *quid pro quo* claims are actionable if a plaintiff was treated less well on the basis of their gender. *Id*. As shown above, there is no evidence to support Delancey's claims under the NYCHRL. (*See, supra*, Sections IV.A-B).

decisions affecting such individual." *Quintero v. Angels of the World, Inc.*, No. 19-cv-6126, 2021 WL 4464123, at *9 (E.D.N.Y. Sept. 10, 2021) (citation omitted), *report and recommendation adopted*, 2021 WL 4463488 (E.D.N.Y. Sept. 29, 2021).  To prevail on a claim of *quid pro quo* harassment under the NYSHRL, Delancey must prove that his rejection of Wells's advances was used as the basis for decisions affecting compensation, terms, conditions, or privileges of employment." *Id.*  (quoting *Figueroa v. Johnson*, 648 F. App'x 130, 135 (2d Cir. 2016).  To succeed on a *quid pro quo* harassment claim, the plaintiff must establish that the harasser was a "supervisor."  ECF No. 54 (citing *Karibian v. Columbia Univ.*, 14 F.3d 773, 777-78 (2d Cir. 1994.) Delancey's claim for *quid pro quo* harassment fails for the following two independent reasons.

1.  <u>Delancey's *Quid Pro Quo* Claim Should be Dismissed Because Wells Was Not Delancey's Supervisor.</u>

As discussed above, Wells was not Delancey's supervisor.  For this reason alone, Delancey's *quid pro quo* harassment claim fails.  *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 62 (2d Cir 1992).

2.  <u>Delancey's *Quid Pro Quo* Claim Should be Dismissed Because There is No Evidence That Wells Ever Made Any Promises Or Threats To Alter The Conditions Of Delancey's Employment.</u>

Even if Delancey could show that Wells was his supervisor , there is no evidence that Wells ever made any promises or threats to alter the conditions of Delancey's employment.  Delancey's *quid pro quo* harassment claim fails for this reason.  *Fay v. City of Newburgh*, No. 21 Civ. 3140 (NSR), 2024 WL 4169552, at *9–10 (S.D.N.Y. Sept. 12, 2024); *Hernandez v. Premium Merch. Funding One, LLC*, No. 19-cv-1727, 2020 U.S. Dist. LEXIS 122643, at *39 (S.D.N.Y. July 13, 2020).

It is undisputed that Wells did not make any promises to Delancey of career advancement for attending the night out or for meeting at Wells's apartment beforehand for drinks on the night of

the alleged assault.  (Pl. Resp. to SOMF ¶65; Ex. 6 at 191:20-23.)  Delancey also admits that Wells did not make any promises of any specific career opportunity at FNN to him at any point.  (Pl. Resp. to SOMF ¶65; Ex. 6 at 191:20-23.)

Delancey cannot identify any threats made by Wells to take adverse employment action against Delancey in connection with Delancey's employment at FNN.  There is no evidence that Wells sabotaged Delancey's efforts to obtain other employment (inside or outside of FNN).  *See, supra*, at Section IV.B.  And there is no evidence of any threats by Wells to Delancey related to Delancey's alleged rejection of Wells's sexual advances—the alleged statements by Wells that Delancey was "not thinking straight" and was "screwing himself over" were made in the context of Wells describing the negative feedback he received about Delancey's performance at the WYNY job interview and did not concern the alleged assault in any way.

In fact, it is undisputed that Delancey continued to advance in his career at FNN after the alleged assault, receiving a promotion and two separate pay increases.  (Pl. Resp. to SOMF ¶132; Ex. 26; Ex. 6 at 23:12-24:2, 24:3-7; Pl. Resp. to SOMF ¶133; Ex. 27; Ex. 6 at 25:16-26:14.); *see also King v. Friend of a Farmer, Corp.*, No. 97-cv-9264, 2001 WL 849460, at *3 (S.D.N.Y. July 26, 2001) (granting summary judgment on plaintiff's *quid pro quo* harassment claim because plaintiff's employment status was never actually affected by her supervisor's threats); *Davis v. Verizon Wireless*, 389 F. Supp. 2d 458, 469 (W.D.N.Y. Oct. 5, 2005) (holding claims involving an unfulfilled threat of adverse employment action should not be analyzed as a *quid pro quo* harassment claim).  For these reasons, Delancey's *quid pro quo* sexual harassment claim should be dismissed.

## V.     CONCLUSION

For the foregoing reasons, Defendant FNN respectfully requests that the Court grant its motion

for summary judgment and dismiss all claims asserted by Delancey against FNN with prejudice.

Dated: October 31, 2025                              Respectfully Submitted,

                                                    By:  */s/ Paul C. Evans*

                                                    **PAUL HASTINGS LLP**

                                                    Paul C. Evans
                                                    200 Park Avenue
                                                    New York, NY 10166
                                                    Tel: (212) 318-6009
                                                    Fax: (212) 303-7009
                                                    paulevans@paulhastings.com

                                                    Sara J. Hoult (*admitted pro hac vice*)
                                                    71 S. Wacker Drive, Forty-Fifth Floor
                                                    Chicago, Illinois 60606
                                                    Tel: (312) 499-6037
                                                    Fax: (312) 499-6137
                                                    sarahoult@paulhastings.com

                                                    ***Attorneys for Defendant Fox News Network, LLC***

## **CERTIFICATE OF SERVICE**

I, Paul C. Evans, herby certify that a true and correct copy of Defendant Fox News Network,

LLC's Memorandum of Law in Support of its Motion for Summary Judgment was served via ECF

on October 31, 2025 upon the following:

Tanvir Rahman
Gabrielle L. Rosen Harvey
Filippatos PLLC
199 Main Street, Suite 800
White Plains, NY 10601-3207
Tel: (914) 984-1111
TRahman@filippatoslaw.com

***Attorneys for Plaintiff***


Jason H. Sunshine
Freedman Taitelman + Cooley, LLP
1801 Century Park West, 5th Floor
Los Angeles, California 90067
Telephone: (310) 201-4285

***Attorney for Defendant Wells***


*/s/ Paul Evans*
Paul C. Evans

## **CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMITS**

I, Paul C. Evans, herby certify Defendant Fox News Network, LLC's Memorandum of Law in Support of its Motion for Summary Judgment is 8,724 words (excluding the caption, table of contents, table of authorities, signatures blocks and required certificates) and complies with Section III.D of Judge Analisa Torres's Individual Rules in Civil Practice.

*/s/ Paul Evans*
Paul C. Evans