**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ANDREW DELANCEY,

                *Plaintiff*,

    -against-

JWSTIN WELLS, FOX CORPORATION,
and FOX NEWS NETWORK, LLC

                *Defendants*.

Case No. 1:23-CV-10357(AT)

**PLAINTIFF ANDREW DELANCEY'S RESPONSES TO DEFENDANT FOX NEWS NETWORK, LLC'S STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1**

Pursuant to Local Civil Rule 56.1 of the United States District Court for the Southern District of New York, Plaintiff Andrew Delancey hereby responds to Defendant Fox News Network, LLC ("Fox News") statement of purported material facts as to which there is no genuine dispute to be tried.

**I.      The Parties.**

1.        Defendant Fox News operates the FOX News Channel, FOX Business Network, FOX News Digital, FOX News Audio, FOX News Books, the direct-to-consumer streaming services FOX Nation and FOX News International, and the free ad-supported television service FOX Weather. (September 15, 2025 Declaration of Denise Collins, attached hereto as **Exhibit 1**, at 1 3.)  Fox News is headquartered in New York, New York.  (Amended Complaint, attached hereto as **Exhibit 2**, at 1 16; Fox News Network Answer to the Amended Compliant, attached hereto as **Exhibit 3**, at 1 16.)

**Plaintiff's Response**: Plaintiff does not dispute the factual allegations in Paragraph 1 of Defendant's 56.1 Statement.

2.  Plaintiff Andrew Delancey ("Plaintiff") is a former employee of Fox News who was employed by the company from September 7, 2008 to September 26, 2010. (Plaintiff New Hire Employee Record and Plaintiff Deposition Exhibit 2, attached hereto as **Exhibit 4**; Plaintiff September 8, 2010 Resignation Letter and Plaintiff Deposition Exhibit 7, attached hereto as **Exhibit 5**; Deposition of Andrew Delancey ("Plt. Dep."), attached hereto as **Exhibit 6** at 33:19- 25, 133:5-9.) Plaintiff worked for Fox News Edge. (Ex. 6, Plt. Dep. at 133:5-12.) Plaintiff is a gay man. (Ex. 2, at 1 12.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 2 of Defendant's 56.1 Statement.

3.  Defendant Justin Wells is a former employee of Fox News who was employed by the company from July 16, 2008 to April 2023. (May 29, 2009 Letter and Wells Deposition Exhibit 4, attached hereto as **Exhibit 7**; Deposition of Justin Wells ("Wells Dep."), attached hereto as **Exhibit 8**, at 115:15-17; June 19, 2025 Declaration of D. Collins, attached hereto as **Exhibit 9** at 1 5.) In October 2008, Wells worked for Fox News Channel program *On the Record with Greta van Susteren*. (Ex. 8, Wells Dep. at 27:12-15.) Wells is a gay man. (Ex. 8, Wells Dep. at 154:22- 23.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 3 of Defendant's 56.1 Statement.

## II.    Fox News's Policies Against Discrimination, Harassment and Retaliation.

4.  Between 2008 and 2010, the period relevant to this case, Fox News maintained strict anti-discrimination, anti-harassment, and anti-retaliation policies. (Fox News Employee

Handbook 1 and Collins 30(6)(6) Deposition Exhibit 6, attached hereto as **Exhibit 10**, at FNN00014-17; Fox News Handbook 2 and Collins 30(b)(6) Exhibit 7, attached hereto as **Exhibit 11**, at FNN000070-74; 30(b)(6) Deposition of Denise Collins ("Collins 30(b)(6) Dep., attached hereto as **Exhibit 12**, at 51:16-53:21.)

**Plaintiff's Response**: Plaintiff does not dispute the factual assertions in Paragraph 4 of Defendant's 56.1 statement that Fox News maintained "anti-harassment, and anti-retaliation policies." However, Plaintiff does object that Fox News maintained "strict" policies.

5.       Plaintiff was aware that Fox News had an anti-harassment policy that forbade sexual harassment. (Ex. 6, Plt. Dep., at 160:6-13.)

**Plaintiff's Response**: Plaintiff does not dispute the factual allegations in Paragraph 5 of Defendant's 56.1 Statement, but disputes that he was aware of the actual contents of the policy. *See* Ex. A[1] (Delancey Dep.), at 159:6-11.

6.       With respect to sexual harassment, Fox News' policy provided:

[T]he Company wishes to emphasize the special problems of sexual harassment. Sexual harassment includes unwelcome sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature when:

- Submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment;

- Submission to or rejection of such conduct by an individual is used as a basis employment decisions affecting such individual; or

- Such conduct has the purpose or effect of unreasonably interfering with the affected individual's work performance or creating an intimidating, hostile or offensive work environment.

Sexual harassment is prohibited whether directed toward men or women, and regardless of whether the employee accepts or rejects the advance.

The Company does not wish to interfere with the personal lives of its staff. However, conduct of a sexual nature directed toward Company employees is not

---

[1]       Exhibits referred to herein by letter are appended to the Declaration of Tanvir H. Rahman in Support of Plaintiff's Opposition to Fox News' Motion for Summary Judgment ("Rahman Decl.").

welcome and creates a hostile or abusive work environment can be unlawful sexual harassment, whether committed by supervisory or non-supervisory personnel. Examples of conduct that could constitute sexual harassment include:

- Sexual touching, advances or propositions;

- Verbal abuse, epithets, derogatory statement or slurs;

- Graphic or suggestive comments about an individual's dress or body;

- Sexually degrading works to describe an individual; and

- The display in the workplace of sexually suggestive objects or pictures, including nude photographs.

The Company policy also applies to sexually improper conduct toward the Company's staff of clients, customers or other non-employees. If an employee informs the Company that he or she has been subject to sexual or other harassment in the workplace by a non-employee, that individual will be informed of the Company's policy and appropriate corrective action and preventative steps will be taken.

(Ex. 10 at FNN00014-15; *see also* Ex. 11 at FNN00070-72.)

**Plaintiff's Response**: Plaintiff does not dispute the factual allegations in Paragraph 6 of Defendant's 56.1 Statement, but disputes that he was ever provided the policy. *See* **Ex. A** (Delancey Dep.), at 159:12-15.

7.      Fox News's 2008-2010 policies also strictly prohibited retaliation against anyone making a complaint of discrimination or harassment, providing:

The Company respects the right of each employee who, in good faith, complains about illegal discrimination of any kind, including sexual or other workplace harassment, or who provides information in connection with any such complaint. Retaliation against any employee for engaging in these protected activities is contrary to Company policy and will not be condoned. An employee who believes that he or she has experienced illegal discrimination or retaliation should report that immediately to the Human Resources Department, or if that is problematic, to the Company's Senior Deputy General Counsel, or other appropriate Company representative.

(Ex. 10 at FNN00015; *see also* Ex. 11 at FNN00072.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 7 of Defendant's 56.1 Statement that this is Fox News's Policy, but Plaintiff disputes that he was ever provided the policy. *See id.* Further, Plaintiff disputes that Fox News's policy "strictly" prohibited retaliation.

8.   Fox News also maintained a variety of reporting avenues between 2008 and 2010 that employees could use if they believed that the anti-discrimination, anti-harassment, or anti-retaliation policy had been violated.  (Ex. 10 at FNN00015; *see also* Ex. 11 at FNN00072.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 8 of Defendant's 56.1 Statement. However, Plaintiff avers that he did not "feel like [he] was supported in terms of being able to go to HR if there were any issues." Plaintiff adds that, " Mykel M[a]cCarthy specifically told [Plaintiff] not to go to HR on several occasions." *See* **Ex. A** (Delancey Dep.), at 147:22-148:16.

9.   These reporting avenues included reporting concerns of discrimination, harassment, or retaliation violations to Human Resources, the Legal Department, or any other company representative.  (Ex. 10 at FNN00015; *see also* Ex. 11 at FNN00072.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 9 of Defendant's 56.1 Statement, but Plaintiff avers that "Mykel M[a]cCarthy specifically told [Plaintiff] not to go to HR on several occasions." *See id.*

10.   Plaintiff was aware that he could report concerns of sexual harassment to the Human Resources Department, the Company's Senior Deputy General Counsel, or other appropriate Company Representative.  (Ex. 6, Plt. Dep., at 160:23-161:9.)

**Plaintiff's Response:** Plaintiff disputes the factual allegations in Paragraph 10 of Defendant's 56.1 Statement. Plaintiff avers that, "Mykel M[a]cCarthy specifically told [Plaintiff] not to go to HR on

several occasions." *ld*. Further, Plaintiff was not aware that he could report to the Senior Deputy General Counsel. *ld*. at 161:14-18.

11.     When concerns of discrimination, harassment, or retaliation violations were reported to Fox News, it would conduct a prompt and thorough investigation into the allegations and take remedial action if appropriate. (Ex. 1, at 1 4.)  Typically, Fox News's Human Resources department conducted investigations into complaints. (*ld.*)  In doing so, Fox News's Human Resources professionals would interview the party reporting the complaint to understand the nature of the issues involved, collect all necessary documents to analyze the allegations made, interview witnesses and, if applicable, anyone accused of wrongdoing and undertake any other actions necessary to determine if the complaint was valid. (*ld.*)  Where complaints were validated, Human Resources professionals would work with appropriate business managers to establish the appropriate remedial measures the company would undertake, which could include discipline such as verbal or warnings or termination. (*ld.*)

**Plaintiff's Response:** Plaintiff does not dispute the factual assertions in Paragraph 11 of Defendant's 56.1 Statement that this was Fox News's policy. However, Plaintiff does dispute that Fox News would conduct a "prompt and thorough investigation." There is no evidence that every (or any) complaint was investigated this way.

12.     Fox News also regularly trained its employees on its anti-discrimination, anti-harassment, and anti-retaliation policies. (*ld.* at 1 5.; *see also* Ex. 12, Collins 30(b)(6) Dep. at 53:22-54:11.)

**Plaintiff's Response**: Plaintiff disputes the factual allegations asserted in Paragraph 12 of Defendant's 56.1 Statement. Plaintiff does not recall being trained on Fox News's anti-

discrimination, anti-harassment, and anti-retaliation policies. (*See* **Ex. B,** November 21, 2025, Declaration of Andrew Delancey), at ¶¶ 7-8.

13.     The trainings were mandatory for employees and managers and were conducted in-person by an outside attorney hired by Fox News. (Ex. 1 at 1 6; *see also* Ex. 12, Collins 30(b)(6) Dep. at 54:12-56:20.) Managers and employees would attend the same trainings, which lasted four hours. (Ex. 1 at 1 6; *see also* Ex. 12, Collins 30(b)(6) Dep. at 56:15-17.) Managers would also separately participate in an additional manager-only training, which also lasted four hours. (Ex. 1 at 1 6; *see also* Ex. 12, Collins 30(b)(6) Dep. at 56:15-17.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 13 of Defendant's 56.1 Statement to the extent that "[m]anagers would also separately participate in an additional manager-only training[.]" However, Plaintiff does dispute that he ever participated in "mandatory" trainings. *See* **Ex. B,** November 21, 2025, Declaration of Andrew Delancey), at ¶¶ 7-8.

14.     Plaintiff does not know of anyone who reported a complaint to Fox News during his employment. (Ex. 6, Plt. Dep. at 240:13-19.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 14 of Defendant's 56.1 Statement.

15.     Plaintiff never observed anyone experiencing sexual harassment at Fox News during his employment. (*ld*. at 240:20-24)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 15 of Defendant's 56.1 Statement to the extent that he did not personally observe anyone, other than himself, being sexually harassed at Fox News. *See* **Ex. B** (November 21, 2025, Declaration of Andrew Delancey), at ¶ 29.

16.     Plaintiff never heard of anyone experiencing sexual harassment at Fox News during his employment. (*ld.* at 240:25-241:4)

**<u>Plaintiff's Response:</u>** Plaintiff does not dispute the factual allegations in Paragraph 16 of Defendant's 56.1 Statement to the extent that he did not personally hear of anyone, besides himself, experiencing sexual harassment at Fox News during his employment. *See id*.

17.     Plaintiff never heard about anyone being retaliated against at Fox News during his employment. (*ld*. at 241:5-8.)

**<u>Plaintiff's Response:</u>** Plaintiff does not dispute the factual allegations in Paragraph 17 of Defendant's 56.1 Statement to the extent that he did not personally hear of anyone, besides himself, being retaliated against at Fox News during his employment. *See id.,* at ¶30. Plaintiff avers that "Mykel M[a]cCarthy specifically told  [Plaintiff] not to go to HR" because [HR was] not to be trusted." *See* **Ex. A** (Delancey Dep.), at 147:10-16; 149:3-7.

18.     There is no evidence that there was any complaint of sexual harassment, sexual assault, or retaliation for complaining about sexual harassment, sexual assault, or retaliation made by any employee against Wells before or during Plaintiff's employment with Fox News.  (Ex. 1 at 1 12; Ex. 9, at 1 3; *see also* May 16, 2025 Letter from K. Katzenstein to A. Pelicci and Collins 30(b)(6) Deposition Exhibit 3, attached hereto as **Exhibit 13**.)  There is no evidence that there was any complaint of sexual harassment, sexual assault, or retaliation for complaining about sexual harassment, sexual assault, or retaliation made by employees of Fox News Edge in New York or employees of the Fox News Channel shows in New York who Plaintiff supported during Plaintiff's employment with Fox News.[2]  (Ex. 1, at 1 13; Ex. 13 at p. 1.)

---

[2] Magistrate Judge Parker ruled that the existence of any and all complaints of sexual harassment, sexual assault, or retaliation for complaining sexual harassment, sexual assault, or retaliation made by any employee against Wells for the period of Wells' start of employment through December 31, 2010 may be relevant to this matter and ordered production related thereto. (*See* ECF No. 78.)  Similarly, Magistrate Judge Parker ruled that the existence of any and

**Plaintiff's Response:** Plaintiff disputes the factual allegations in Paragraph 18 of Defendant's 56.1 Statement. Plaintiff avers that Kathleen Wells, who worked on the Assignment Desk at Fox News, told Plaintiff that Wells called her a "fucking bitch," when she did not agree to do a live shot for him. *See* **Ex. A** (Delancey Dep.), at 106:20-108:7; *see also* **Ex. C** (Kathleen Wells' October 23, 2017 Facebook Messages to Andrew Delancey), at CONFIDENTIAL PLAINTIFF 000053-54. Plaintiff acknowledges that Fox News has not produced evidence that there was any complaint of sexual harassment, sexual assault, or retaliation made by employees of Fox News Edge in New York or employees of the Fox News Channel shows in New York.

### III. Plaintiff And Wells Knew Each Other Prior To and Independent From Either Working For Fox News.

19.     Prior to working at Fox News, Plaintiff worked for a local television station in Tampa, Florida, WTVT. (Ex. 4; Ex. 6, Plt. Dep. at 15:20-16:5, 17:9-14; *see also* Ex. 1 at 1 7.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 19 of Defendant's 56.1 Statement.

20.     WTVT is owned and operated by Fox Television Stations, LLC ("Fox Television Stations"). (Ex. 1 at 1 8.) While employed at WTVT, Plaintiff was an employee of Fox Television Stations. (*ld.*; *see also* Ex. 12, Collins 30(b)(6) Dep. at 72:11-24.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 20 of Defendant's 56.1 Statement.

---

all complaints of sexual harassment, sexual assault, or retaliation for complaining about sexual harassment, sexual assault, or retaliation by employees of Fox News Edge in New York or employees of the Fox News Channel shows in New York who Plaintiff supported (e.g., the Greta Van Susteren show) for the period of January 1, 2007 through December 31, 2010 may be relevant to this matter and ordered production related thereto. (*See* ECF No. 78.) There were no such complaints. (Ex. 13 at p. 1.)

21.     Fox Television Stations and Fox News are distinct legal entities.  (Ex. 1 at ¶ 9; Ex. 12, Collins 30(b)(6) Dep. at 72:11-24.)  As such, Plaintiff was not employed by Fox News while he worked at WTVT.  (Ex. 1 at ¶ 8; *see also* Ex. 12, Collins 30(b)(6) Dep. at 72:11-24.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 21 of Defendant's 56.1 Statement.

22.     Immediately prior to working at Fox News, Wells worked for WNYW, a local television station in New York City.  (Ex. 8, Wells Dep. at 26:25-27:2; *See also* Deposition of Denise Collins ("Collins Fact Dep."), attached hereto as **Exhibit 14**, at 10:6-11:2; *see also* Ex. 1 at ¶ 10.)  Like WTVT, WNYW is owned and operated by Fox Television Stations.  (Ex. 14, Collins Fact Dep. at 10:6-11:2; *see also* Ex. 1 at ¶ 11.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 22 of Defendant's 56.1 Statement.

23.     While employed at WNYW, Wells was an employee of Fox Television Stations.  (Ex. 8, Wells Dep. at 26:15; Ex. 12, Collins 30(b)(6) Dep. at 72:11-24; *see also* Ex. 1 at ¶ 11.)  He was not an employee of Fox News at that time.  (Ex. 8, Wells Dep. at 26:15; Ex. 12, Collins 30(b)(6) Dep. at 72:11-24; *see also* Ex. 1 at ¶ 11.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 23 of Defendant's 56.1 Statement.

24.     In 2007, when Plaintiff was working at WTVT and Wells was working at WNYW, Wells and Plaintiff were both members of a private Facebook group set up by individuals who worked for local television stations owned and operated by Fox Television Stations.  (Plaintiff and Wells Facebook Messages and Plaintiff Deposition Exhibit 8, attached hereto as **Exhibit 15**, at WELLS00001; Ex. 6, Plt. Dep. at 36:16-36; Ex. 8, Wells Dep. at 77:18-78:6.)  This was not a

Facebook group established, sponsored, or maintained by Fox Television Station or any other company. (Ex. 8, Wells Dep. at 77:21-78:6.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 24 of Defendant's 56.1 Statement.

25.     Plaintiff first came into contact with Wells in or around August 3, 2007.  On that date, Wells messaged Plaintiff via Facebook after seeing his profile as a result of their joining the Facebook group.  (Ex. 15 at WELLS 00001; *see also* Ex. 6, Plt. Dep. at 36:14-17, 37:6-21; *see also* Ex. 8, Wells Dep. at 76:2-77:20.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 25 of Defendant's 56.1 Statement.

26.     In his Facebook message to Plaintiff, Wells noted that he had previously worked at WTVT in Tampa, Florida, the television station where Plaintiff worked at the time, and asked Plaintiff to say "hello" to certain individuals at the station.  (Ex. 15 at WELLS00001; Ex. 6, Plt. Dep. at 36:14-17, 37:6-21; Ex. 8, Wells Dep. at 26:25-27:2, 76:2-77:20.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 26 of Defendant's 56.1 Statement.

27.     On August 5, 2007, Plaintiff responded to Wells, also via Facebook message.  In Plaintiff's message, he said: "If I'm ever going to move from Florida, I envision my next step to be New York City or Chicago.  So it is nice to have someone I already know in NYC 🔺".    (Ex. 15 at WELLS00002-3.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 27 of Defendant's 56.1 Statement.

28.     Wells and Plaintiff continued to communicate periodically over Facebook between August 2007 and September 2008, while each continued to work at different television stations. (*ld*. at WELLS00003.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 28 of Defendant's 56.1 Statement.

29.     In July 2008, while those Facebook conversations were ongoing, Fox News hired Wells as a Producer for the Fox News Channel program, *On the Record with Greta Van Susteren* ("*On the Record*"). (Ex. 7; Ex. 8, Wells Dep. at 27:12-15.) As an employee of Fox News, Wells worked in Fox News's offices at 1211 Avenue of the Americas, New York, New York. (Ex. 8, Wells Dep. at 44:21-23.) At the time he was hired, Wells was 25 years old. (Wells Employee New Hire Record, attached hereto as **Exhibit 16**, at FNN000199; Ex. 8, Wells Dep. at 23:6-7.) Between 2008 and 2010, Wells' Producer position on *On the Record* was a utility role in which he did not have any direct reports. (*See* Sections V and VI, *supra*.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 29 of Defendant's 56.1 Statement.

30.     Wells remained in that Producer position throughout the period of time Plaintiff worked for Fox News. (Ex. 8, Wells Dep. at 223:11-17.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 30 of Defendant's 56.1 Statement.

31.     Two months after Fox News hired Wells for the Producer role on *On the Record*, Fox News Plaintiff for a Regional Producer position in the company's Fox News Edge department. (Ex. 6, Plt. Dep. at 133:5-12.) As part of the application process for that position, Plaintiff interviewed with Mykel MacCarthy ("MacCarthy") and Matt Cantor. (*ld*. at 133:13-20.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 31 of Defendant's 56.1 Statement.

32.     Wells did not interview Plaintiff for the Regional Producer position at Fox News. (Ex. 8, Wells Dep. at 186:5-18.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 32 of Defendant's 56.1 Statement.

33.     Wells played no role in the decision to hire Plaintiff. (Ex. 8, Wells Dep. at 186:5-18, 332:6-18.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 33 of Defendant's 56.1 Statement insofar as this was what Wells testified to at his deposition.

34.     Fox News hired Plaintiff for the Regional Producer position at Fox News Edge and he started working for the company on September 7, 2008. (Ex. 6, Plt. Dep. at 133:5-12.) Plaintiff also worked in Fox News's offices at 1211 Avenue of the Americas, New York, New York. (*ld.* at 137:8-14.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 34 of Defendant's 56.1 Statement.

**IV.     Plaintiff's Role as a Regional Producer at Fox News Edge.**

35.     Fox News Edge is a division of Fox News. (Excerpts of News Corporation Form 10-K (For Fiscal Year End June 30, 2008), attached hereto as **Exhibit 17**, at CONFIDENTIAL PLAINTIFF 000458.) It serves as a news service which licenses news feeds to local stations owned and operated by Fox Television Stations, affiliates and other subscribers for them to use as part of local news broadcasts throughout the United States and abroad. (*ld.*; Ex. 6, Plt. Dep. at

133:25-134:8; Deposition of M. MacCarthy ("MacCarthy Dep."), attached hereto as **Exhibit 18**, at 22:21-23:2; Ex. 12, Collins 30(b)(6) Dep. at 23:12-19.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 35 of Defendant's 56.1 Statement.

36.     The primary function of Fox News Edge is to provide these services to local Fox stations owned and operated by Fox Television Stations, such as WNYW in New York, KTTV in Los Angeles, and WSVN in Miami, as well as other third-party owned stations that licensed the content, referred to as "affiliates."  (Ex. 18, MacCarthy Dep. at 39:10-18, 78:12-17, 79:2-6; Ex. 12, Collins 30(b)(6) Dep, at 23:12-19.)  Plaintiff himself testified to this characterization.  (*See* Ex. 6, Plt. Dep. at 22:21-23:2; 133:24-3 (testifying affiliate service is the "main purpose" of Fox News Edge), 135:13-15 (testifying Fox News Edge "[p]rimarily" involves affiliate services).)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 36 of Defendant's 56.1 Statement.

37.     Fox News Channel was not an "affiliate." (Ex. 18, MacCarthy Dep. at 78:23-79:6; *see also* Ex. 6, Plt. Dep. at 135: 22:13-21 (testifying Fox News's own national shows were not "affiliates").)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 37 of Defendant's 56.1 Statement.

38.     As part of the services offered to licensees, Fox News Edge identified and uploaded a library of content from all Fox Television Stations onto a video server/storage system called platform called iPump. (Ex. 17 at CONFIDENTIAL PLAINTIFF 000458; Ex. 6, Plt. Dep. at 133:25-134:8; Ex. 18, MacCarthy Dep. at 22:21-23:2; Ex. 12, Collins 30(b)(6) Dep. at 23:12-19.)

iPump was accessible by all Fox News Edge licensees (*i.e.*, Fox Television Stations' local stations and affiliates). (Ex. 8, Wells Dep. at 208:2-20.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 38 of Defendant's 56.1 Statement.

39.     Fox News's national shows were unable to access or upload content to iPump. (*ld.* at 209:2-11.) Instead, Fox News shows accessed content via a platform known as Argo. (Ex. 6, Plt. Dep. at 135:22-136:8.)

**Plaintiff's Response:** Plaintiff does not dispute the factual assertions in Paragraph 39 of Defendant's 56.1 Statement, but clarifies that Plaintiff does not know what Fox News was able to access. *See* **Ex. B** (November 21, 2025, Declaration of Andrew Delancey), at ¶ 20

40.     Employees working on Fox News's national shows were required to follow a companywide process of requesting information for their shows (such as video clips that would be shown during broadcasts) from Fox News's Assignment Desk. (Ex. 18, MacCarthy Dep. at 41:2- 17; *see also* Ex. 8, Wells Dep. at 54:23-46:8.) If content those shows requested was available on iPump, the Fox Assignment Desk would coordinate with Fox News Edge employees to obtain the information for a Fox News national show. (Ex. 8, Wells Dep. at 206:16-207:25.) That information would then be uploaded to a separate system accessible by the Fox News national shows. (*ld*).

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 40 of Defendant's 56.1 Statement.

41. The Fox News Assignment Desk was not part of Fox News Edge and was a separate and distinct division of Fox News. (Ex. 18, MacCarthy Dep. at 41:18-21; Ex. 12, Collins 30(b)(6) Dep. at 122:18-123:11.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 41 of Defendant's 56.1 Statement. Plaintiff avers that Fox News Edge and Fox News Channel shared the same video content and frequently worked together in practice. *See* **Ex. A** (Delancey Dep.), at 135:13-136:8.

42. Fox News national shows were directed to obtain information from the Assignment Desk assignment desk because the assignment desk was the news gathering hub for Fox News Network, LLC. (Ex. 12, Collins 30(b)(6) Dep. at 122:16-123:11.) This allowed the Assignment Desk to have an understanding of what Fox News shows and other platforms were airing certain content, helping to avoid undesirable duplication across shows/platforms and serving as a gatekeeper to ensure Fox News Network, LLC had the right to use all content aired. (*ld.*)

**Plaintiff's Response:** Plaintiff disputes the factual allegations in Paragraph 42 of Defendant's 56.1 Statement. Fox News national shows did not always obtain information from the Assignment Desk; at times, Plaintiff was contacted directly for information that was needed. *See* **Ex.** A (Delancey Dep.), at 136:9-22; **Ex. B** (November 21, 2025, Declaration of Andrew Delancey), at ¶ 16.

43. Regional Producers at Fox News Edge were not responsible for completing tasks or producing content at the request of Producers for Fox News Channel television shows. (Ex. 18, MacCarthy Dep. at 40:18-24.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 43 of Defendant's 56.1 Statement. Plaintiff avers that although helping Fox News Channel television shows was not part of his formal duties, he often provided such help when he was the only person working on the West Coast team. *See id.*; *see also* **Ex. B** (November 21, 2025, Dec. of Andrew Delancey), at ¶ 15.

44. Producers of Fox News Channel television shows did not assign work to or oversee work of Fox News Edge Regional Producers. (Ex. 18, MacCarthy Dep. at 40:18-41:10, 145:8-14; Ex. 12, Collins 30(b)(6) Dep. at 35:21-36:16.)

**Plaintiff's Response:** Plaintiff disputes the factual allegations in Paragraph 44 of Defendant's 56.1 Statement. Plaintiff was assigned work directly from Fox News Channel producers, particularly when he was the only person on duty for the West Coast team. *See* **Ex A.** (Delancey Dep.), at 136:9-21; *see also* **Ex. B** (November 21, 2025, Declaration of Andrew Delancey), at ¶ 16.

45. As a Regional Producer within Fox News Edge, Plaintiff was responsible for the West Coast region, covering "Denver westward." (Ex. 6, Plt. Dep., at 16:9-10, 17:24-18:9.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 45 of Defendant's 56.1 Statement.

46. His job duties were to (i) gather content to upload and/or package on iPump so they were accessible to Fox Televisions Stations' local stations and other licensees of Fox News Edge; (ii) contacting West Coast Region stations individually to determine what stories stations within that region were working on; (iii) corresponding with affiliate stations in the West Coast Region to update them on the stories that other affiliates were running; and (iii) gathering information when requested from affiliate stations within the West Coast Region. (Ex. 6, Plt. Dep. at 17:21- 19:9; Ex. 18, MacCarthy Dep. at 39:19-40:6.)

**Plaintiff's Response**: Plaintiff does not dispute the factual allegations in Paragraph 46 of Defendant's 56.1 Statement. Plaintiff avers that his job duties also included gathering content for any station nationwide that requested material from a West Coast affiliate and, when asked, gathering content for Fox News Channel shows. *See* **Ex. A** (Delancey Dep.), at 136:9-18; *see also* **Ex. B** (November 21, 2025, Declaration of Andrew Delancey), at ¶ 13.

## V.     Wells' Responsibilities as a Producer on *On The Record*.

47.     Wells' role as a Producer on *On The Record* was a utility producer role, filling in gaps where needed.  (Ex. 8, Wells Dep. at 29:14-24.)  That meant that Wells could be in the field or working in the control room.  (*ld.* at 225:24-226:7.)  However, Wells was not running shows in the control or editorial room as a Producer.  (*ld.*)

**Plaintiff's Response:** Plaintiff does not dispute that Paragraph 47 of Defendant's Rule 56.1 Statement accurately reflects Wells's testimony.

48.     Wells was one of approximately four individuals with the title of Producer on *On The Record.*  (*ld.* 224:5-20.)  Among the approximately four Producers, the others were "above" him in that he was a utility producer.  (*ld.* 225:9-15.)  And within the chain-of-command, above the Producers were a Line Producer, a Coordinator Producer and an Executive Producer. (*ld.* 224:5-20.)

**Plaintiff's Response:** Plaintiff does not dispute that Paragraph 48 of Defendant's Rule 56.1 Statement accurately reflects Wells's testimony.

49.     Wells' primary objective was to work on special projects to get ratings up.  (*ld*. at 226:12-15.)

**Plaintiff's Response:** Plaintiff does not dispute that Paragraph 49 of Defendant's Rule 56.1 Statement accurately reflects Wells's testimony.

50.     Wells did not have any direct reports.  (*ld*. at 140:12-17, 172:2-12.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 50 of Defendant's 56.1 Statement. However, the deposition citations Defendant relies on do not support the assertion that Justin Wells had no direct reports.

51.    Wells does not recall interacting with any Fox News Edge employee while employed as a Producer on *On The Record*. (*Id.* at 48:16-22.)

**Plaintiff's Response:** Plaintiff does not dispute that Paragraph 51 of Defendant's Rule 56.1 Statement accurately reflects Wells's testimony on the day of his deposition.

## VI.    Wells Was Not Plaintiff's Supervisor.

52.    When Plaintiff was hired by Fox News, MacCarthy, a Senior Producer for Fox News Edge, was Plaintiff's direct supervisor. (Ex. 6, Plt. Dep. at 21:21:24.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 52 of Defendant's 56.1 Statement.

53.    Plaintiff reported directly to MacCarthy. (Ex. 6, Plt. Dep. at 21:21-24; Ex. 18, MacCarthy Dep. at 36:12-25.)

**Plaintiff's Response**: Plaintiff does not dispute the factual allegations in Paragraph 53 of Defendant's 56.1 Statement.

54.    Wells was not Plaintiff's direct supervisor. (Ex. 6, Plt. Dep. at 51:24-25.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 54 of Defendant's 56.1 Statement.

55.    Plaintiff's colleagues would not have considered Wells to be his supervisor. (*Id.* at 52:1-4.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 55 of Defendant's 56.1 Statement.

56.    Between 2008 and 2010:

  a)    Wells had no direct reports and did not have supervisory authority over any employee at Fox News Edge, including Plaintiff. (Ex. 8, Wells Dep. at 331:17-19.)

b)     Wells did not have the authority to hire any employees of Fox News Edge, including Plaintiff.  (*ld*. at 332:6-9.)

c)     Wells did not have the authority to direct the work of any employee of Fox News Edge, including Plaintiff.  (*ld*. at 332:19-333:3.)

d)     Wells did not have the authority to set the compensation for any employee of Fox News Edge, including Plaintiff.  (*ld*. at 333:9-24.)

e)     Wells did not have the authority to discipline or terminate any employee of Fox News Edge, including Plaintiff.  (*ld.* at 334:14-21.)

f)     Wells did not have the authority to promote any employee of Fox News Edge, including Plaintiff.  (*ld*. at 334:8-13.)

**Plaintiff's Response**:

a)     Plaintiff does not dispute that Paragraph 56(a) of Defendant's Rule 56.1 Statement accurately reflects Wells's testimony.

b)     Plaintiff does not dispute that Paragraph 56(b) of Defendant's Rule 56.1 Statement accurately reflects Wells's testimony.

c)     Plaintiff disputes the factual allegations in Paragraph 56(c) of Defendant's 56.1 Statement. Fox News Channel producers, including Wells, made direct requests for work to him. *See* **Ex.** A (Delancey Dep.), at 136:14-18; *see also* **Ex. B** (November 21, 2025, Declaration of Andrew Delancey), at ¶ 16.

d)     Plaintiff does not dispute the factual allegations in Paragraph 56(d) of Defendant's 56.1 Statement.

e)     Plaintiff does not dispute the factual allegations in Paragraph 56(e) of Defendant's 56.1 Statement.

f)      Plaintiff does not dispute the factual allegations in Paragraph 56(f) of Defendant's 56.1 Statement.

57.      Plaintiff admits that Wells did not have the power to terminate his employment. (Ex. 6, Plt. Dep. at 183:13-16.)

**Plaintiff's Response:** Plaintiff disputes the factual allegations in Paragraph 57 of Defendant's 56.1 Statement. Plaintiff testified that he believed that Wells had the "indirect" power, i.e., influence, to terminate Plaintiff's employment. (*See* **Ex. A** (Delancey Dep.)at 183:7-185:7) (*see also* **Ex. B** (November 21, 2025, Declaration of Andrew Delancey) at ¶ 12. Plaintiff avers that Wells told him on multiple occasions that he had "power within the Company," which led Plaintiff to believe Wells could influence his job status. *See* **Ex. A** (Delancey Dep.), at 182:4-183:4; *see also* **Ex. B** (November 21, 2025, Declaration of Andrew Delancey), at ¶ 12.

58.      However, Plaintiff speculates that Wells had the ability to do so "indirectly" because he believed Wells was "powerful." (*ld.*)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 58 of Defendant's 56.1 Statement.

59.      Plaintiff believed that Wells was "powerful" based solely on the status of *On the Record* as a successful show and "what [Wells] would tell [Plaintiff]. The way [Wells] would carry himself. It was just of the way [Wells] would carry himself." (*ld.* at 181:10-22; 184:15- 185:2.)

**Plaintiff's Response:** Plaintiff disputes the factual allegations in Paragraph 59 of Defendant's 56.1 Statement insofar as these are not the "sole" reasons why Plaintiff believed Wells had power and influence at Fox News. On multiple occasions, Wells told Plaintiff that "he had power within the Company[,]" which reinforced Plaintiff's belief that Wells possessed influence.

*See* **Ex. A** (Delancey Dep.), at 180:4-24. Wells would also reach out to Plaintiff two times a week during his employment at Fox News for work purposes. *ld*. at 173:1-5. When Plaintiff rejected Wells' unwanted sexual advances, he told Plaintiff that he was "making a mistake." *ld*. at 182:6-9.

60.      It was not only Wells that Plaintiff believed had such "indirect" power.  Plaintiff testified he believed ***any*** midlevel producer on a Fox News television show could "potentially" have him fired from Fox News. (*ld.* at 185:3-6.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 60 of Defendant's 56.1 Statement.

61.      Plaintiff similarly believed Wells could impact his advancement at Fox and/or reassign him to a new role based solely on alleged statements from Wells suggesting he had "power" at Fox News and what he viewed as Fox News Edge being "low on the totem pole." (*ld.* at 185:11-186:20).  Once again, Plaintiff believed any midlevel producer at Fox News could "potentially" exercise such authority over these terms of his employment. (*ld.*)

**Plaintiff's Response:** Plaintiff disputes the factual allegations in Paragraph 61 of Defendant's 56.1 Statement insofar as these were not the "sole" reasons why he believed Wells could impact his advancement. Plaintiff testified that he believed the "power dynamics between Fox News and Fox Edge" could also influence his employment. *See* **Ex. A** (Delancey Dep.), at 185:14-18. Plaintiff also believed that Wells could assign Plaintiff to a new role if Wells did not think he was performing well, since Plaintiff performed assignments from Wells. *ld*. at 185:18-186:4.

62.      Plaintiff did not do anything to investigate his speculation that Wells was powerful within Fox News. (*ld.* at 187:20-188:14).  He did not ask McCarthy if this was true, nor did he ask any of his co-workers. (*ld.*)  "It did not occur to [him] to do so." (*ld.*)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 62 of Defendant's 56.1 Statement. Plaintiff adds, however, that he would not have known how to "investigate" Wells's power within the Company. *See* **Ex. A** (Delancey Dep.), at 187:25-188:4.

**VII.   Wells' Alleged Assault of Plaintiff.**

63.      Approximately one month after Plaintiff started working at Fox News Edge, he arranged to meet Wells and other gay colleagues, as well as gay individuals who worked at local television stations unaffiliated with Fox News, at the Barracuda Lounge, a gay bar in Chelsea. (Ex. 6, Plt. Dep. at 58:14-23.)

**Plaintiff's Response:** Plaintiff disputes the factual allegations in Paragraph 63 of Defendant's 56.1 Statement. Wells invited Plaintiff to go out to Barracuda, a bar in Chelsea, New York, and told Plaintiff that "other people from Fox News" would be there and that it would be "good for him to get to know them[.]" *See* **Ex**. A (Delancey Dep.), at58:10-23.

64.      Plaintiff and Wells decided to meet at Wells's apartment for "pre-game cocktail" before joining the rest of their group. (*ld*. at 58:22:23.)

**Plaintiff's Response:** Plaintiff disputes the factual allegations in Paragraph 64 of Defendant's 56.1 Statement. Plaintiff met Wells outside of Wells's Chelsea apartment, which is when Wells invited Plaintiff inside for a "pre-game cocktail" and told Plaintiff that other people were on their way. *See* **Ex.** A (Delancey Dep.), at 58:14-59:1.

65.      Wells did not make any promises to Plaintiff of career advancement for attending the night out at Barracuda lounge or for meeting at Wells' apartment beforehand for drinks. (*ld*. at 191:20-23.)  Wells did not make any promises of any specific career opportunity at Fox News to Plaintiff at any point. (*ld*.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 65 of Defendant's 56.1 Statement. Plaintiff avers that his motivation for attending the night out at Barracuda lounge was to meet and network with other people who worked in television news in New York City, including Fox News. *See* **Ex. B (**November 21, 2025, Declaration of Andrew Delancey), at 24.

66.       After arriving at Wells' apartment building, Plaintiff and Wells went up to Wells' apartment and had a drink. (Ex. 6, Plt. Dep. at 59:2-4.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 66 of Defendant's 56.1 Statement.

67.       Plaintiff alleges that once in Wells' apartment, Wells made unwanted physical advances toward him. (*Id*. at 59:4-60:14; Ex. 2 at ¶ 30-37.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 67 of Defendant's 56.1 Statement. Plaintiff avers that once inside, Wells "threw [him] onto his bed[,]" "put his tongue down [Plaintiff's] throat[,]" and "started unbuttoning [Plaintiff's] jeans and trying to [] take [his] pants off." Plaintiff tried to stop Wells and agreed to go up to Wells's rooftop. As Plaintiff and Wells were going up the stairs, Wells "grab[ed] [Plaintiff] again and trie[d] to [] pull down [Plaintiff's] pants and trie[d] to make out with [Plaintiff][.]" *See* **Ex.** A (Delancey Dep.), at 58:13-60:14.

68.       Plaintiff refused Wells' advances and left Wells' apartment. (Ex. 6, Plt. Dep. at 59:4-16; Ex. 2 at ¶ 38-39.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 68 of Defendant's 56.1 Statement. Plaintiff adds that after Wells tried to unbutton Plaintiff's pants, Plaintiff told Wells to stop. Wells then invited Plaintiff to his rooftop, and in the stairwell

Wells "grabbed [Plaintiff's] front crotch area and started to [] aggressively take down [his] pants." After these assaults, Plaintiff left Wells's apartment building. *See* **Ex. A** (Delancey Dep.), at 64:22-67:13.

69.     Plaintiff did not report the alleged assault to his manager. (Ex. 6, Plt. Dep. at 161:19-21.)

**Plaintiff's Response**: Plaintiff does not dispute the factual allegations in Paragraph 69 of Defendant's 56.1 Statement.

70.     Plaintiff did not report the alleged assault to any member of management. (*ld*. at 161:22-24.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 70 of Defendant's 56.1 Statement.

71.     Plaintiff did not report the alleged assault to human resources. (*ld.* at 161:10-13.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 71 of Defendant's 56.1 Statement. Plaintiff avers that he was dissuaded from reporting to Human Resources because Mr. MacCarthy told him that if he went to Human Resources, "it would be turned around on [him] [and] that [he] would become the problem." *See* **Ex.** A (Delancey Dep.), at 151:8-11.

72.     Mr. MacCarthy did not tell Plaintiff not to report the alleged assault to Human Resources. (*ld*. at 162:14-22.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 72 of Defendant's 56.1 Statement to the extent that Mr. MacCarthy did not specifically tell Plaintiff not to report the assault to Human Resources. However, Mr. MacCarthy did tell Plaintiff on numerous occasions not to report problems to Human Resources. *See* **Ex. A** (Delancey Dep.), at 148:10-16.

73.     Plaintiff's understanding that he and other Fox News employees could make complaints to the Fox News Human Resources Department was reinforced by his alleged conversation with MacCarthy.  (*Id*. at 150:3-151:6.)  In fact, Plaintiff claims that MacCarthy told him that other employees had made complaints about MacCarthy.  (*Id*. at 150:3-7.)

**Plaintiff's Response**: Plaintiff does not dispute the factual allegations in Paragraph 73 of Defendant's 56.1 Statement to the extent that he knew Fox News employees could make complaints to Human Resources. However, Plaintiff disputes that this understanding was "reinforced by his alleged conversation with MacCarthy." To the contrary, Plaintiff's conversation with MacCarthy convinced him not to go to Human Resources, because Mr. MacCarthy said "there was no point in doing so." *See* **Ex. A** (Delancey Dep.), at 150:14-151:18.

74.     Although Plaintiff testified that MacCarthy told him not to trust Human Resources because others had complained about MacCarthy and "[MacCarthy] had been treated unfairly, that their accusations were not right, and that it got turned around on [MacCarthy]," he admits he knew that he could complain via other avenues if going to Human Resources was not feasible for any reason.  (*Id*. at 150:18-24, 160:23-161:8; *see also* Ex. 2 at 1 42.)

**Plaintiff's Response**: Plaintiff disputes the allegations in Paragraph 74 of Defendant's 56.1 Statement insofar as Plaintiff did not know *at the time* that there were other avenues to reporting. *See* **Ex. B** November 21, 2025, Declaration of Andrew Delancey), at ¶ 21.

75.     At some point during the winter of 2008, Plaintiff told Lindsey Hare Johnson, a coworker, that he had an encounter with a producer who made him feel uncomfortable. (Deposition of Lindsey Hare Johnson ("Hare Johnson Dep."), attached hereto as **Exhibit 19**, at 26:16-27:12; *see also* Ex. 2, at 1 41.)

**Plaintiff's Response**: Plaintiff disputes the factual allegations in Paragraph 75 of Defendant's 56.1 Statement. Plaintiff testified that he told Ms. Hare Johnson about the assault the very next day. *See* **Ex. A** (Delancey Dep.), at 222:6-11. Ms. Hare Johnson testified that it "was cold out" when Plaintiff told her about the assault, not that it was "winter". *See* **Ex. D (**Hare Johnson Dep.), 26:8-11.

76.     At this time, Plaintiff did not tell Hare Johnson that Wells was the producer who allegedly made him feel uncomfortable. (*Id*. at 27:18-20.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 76 of Defendant's 56.1 Statement.

77. Hare Johnson was not Plaintiff's supervisor. (Ex. 6, Plt. Dep. at 221:9-11.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 77 of Defendant's 56.1 Statement.

78.     Hare Johnson was not a management level employee. (*Id*. at 221:12-14; Ex. 19, Hare Johnson Dep. at 17:6-9.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 78 of Defendant's 56.1 Statement. Plaintiff avers that Ms. Hare Johnson had a higher title than he did- she was a National Producer, while Plaintiff was a Regional Producer. *See* **Ex. A** (Delancey Dep.), at 87:2-10.

79.     Hare Johnson did not have the ability to terminate or promote employees in her role as a national producer. (Ex. 19, Hare Johnson Dep. at 17:13-16.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 79 of Defendant's 56.1 Statement but avers that Ms. Hare Johnson testified that she might have been "asked for input" on whether somebody would be promoted. *See* **Ex. D** (Hare Johnson Dep.), 17:20-22.

80.     Hare Johnson was the only Fox News employee who Plaintiff told about the alleged assault. (Ex. 6, Plt. Dep. at 235:21-25.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 80 of Defendant's 56.1 Statement.

## VIII.  There Is No Evidence That Fox News Was Aware Of Any History Of Discrimination Or Harassment By Wells or MacCarthy Prior To The Allege Assault.

81.     At the time Fox News hired Wells, it had no knowledge of any claims of sexual assault or sexual harassment against Wells. (Ex. 9 at 1 3.).

**Plaintiff's Response:** Plaintiff does not dispute that Paragraph 81 of Defendant's Rule 56.1 Statement accurately reflects Fox News's contention.

82.     From the start of Wells' employment with Fox News through the end of 2010, there were no claims of sexual harassment, sexual assault or retaliation made against Wells.  (Fox News's Supplemental Responses to Plaintiff's First Set of Interrogatories and Collins Fact Witness Deposition Exhibit 12, attached hereto as **Exhibit 20**, at Interrogatory No. 11; Ex. 13 at p. 1.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 82 of Defendant's 56.1 Statement insofar as Defendant has not produced any written evidence of such claims.

83.     At no point during Wells' employment with Fox News was Wells disciplined for violating any company policy, including the anti-discrimination, anti-harassment, and anti-retaliation policies. (Ex. 13 at p. 2.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 83 of Defendant's Rule 56.1 Statement insofar as this is the contention made by Fox News's outside counsel.

84.     Plaintiff produced what he claims is a Facebook message he believes to be from former Fox News employee, Kathleen Wells, to him that his complaint suggests constitutes

evidence of prior sexual harassment by Justin Wells. (Plaintiff Text Messages With Kathleen Wells and Plaintiff Deposition Exhibit 16, attached hereto as **Exhibit 21**; *see also* Ex. 2 at 1 58.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 84 of Defendant's 56.1 Statement.

85.     In the Facebook message produced by Plaintiff, dated October 23, 2017, someone purporting to be Kathleen Wells, who was a former employee on the Fox News assignment desk, wrote to Plaintiff that she had a fight with Wells when Wells was an employee at a local Fox- owned affiliate station, WNYW, in or around 2006. (Ex. 21 at CONFIDENTIAL PLAINTIFF 000053; Ex. 8, Wells Dep. at 25:6-10.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 85 of Defendant's 56.1 Statement.

86.     In the Facebook message produced by Plaintiff, the person purporting to be Kathleen Wells states, "I had a huge fight with [Wells] and [Wells] called me a 'fucking bitch' etc because I wouldn't do a live shot for him.") (Ex. 21, at CONFIDENTIAL PLAINTIFF 000053- 54.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 86 of Defendant's 56.1 Statement.

87.     In response, Plaintiff wrote back to the person purporting to be Katleen Wells and provided information about his alleged interactions with Wells and the alleged assault and stated, "It's not fox's fault really". (*ld*. at PLAINTIFF CONFIDENTIAL 000057; Ex. 6, Plt. Dep. at 231:16-232:10.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 87 of Defendant's 56.1 Statement. Plaintiff avers that Kathleen Wells responded, "well, it is kind of

Fox's fault for creating such an environment where he felt so free to do something like this." *See* **Ex. A** (Delancey Dep.), at 231:7-14.

88.     Plaintiff never spoke with Kathleen Wells, whether over telephone, by video conference or in-person, about the alleged incident between her and Wells. (Ex. 6, Plt. Dep. at 210:2-6; Ex. 21.) Plaintiff's only information about the alleged incident between Wells and Kathleen Wells is from the Facebook message conversation he produced. (Ex. 6, Plt. Dep. at 210:7-10.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 88 of Defendant's 56.1 Statement. Plaintiff avers that the Facebook account from which these messages were sent, which is still visible on Facebook, had numerous interactions with Fox News employees and even made posts referring to Fox News. *See* **Ex. B** (November 21, 2025, Declaration of Andrew Delancey), at ¶ 27; *see also* **Ex. E** (Screenshots of Kathleen Wells' Facebook Account), at Plaintiff Confidential 000660- 62.

89.     Plaintiff has no personal knowledge of any alleged dispute between Wells and Kathleen Wells. (*ld*.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 89 of Defendant's 56.1 Statement.

90.     The alleged incident referenced in the Facebook message conversation Plaintiff produced took place in 2006, when Wells was not employed by Fox News. (*ld.*; Ex. 8, Wells Dep. at 25:7-11, 337:14-23.)

**Plaintiff's Response:** Plaintiff disputes the factual allegations in Paragraph 90 of Defendant's 56.1 Statement insofar as the cited evidence does not establish that the incident happened in 2006. Plaintiff avers that Ms. Wells told Plaintiff that after Defendant Wells called her a "fucking bitch," she told her manager at Fox News, who made Defendant Wells write her an apology letter. *See* **Ex. C** (Kathleen

Wells' October 23, 2017, Facebook Messages to Andrew Delancey), at CONFIDENTIAL PLAINTIFF 000053-54.

91.        No witness, including Plaintiff, has testified that the Facebook messages he received in the Facebook conversation he produced was actually sent by Kathleen Wells. (*See generally* Ex. 6, Plt. Dep.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 91 of Defendant's 56.1 Statement. Plaintiff avers that Kathleen Wells is deceased. *See* **Ex. A** (Delancey Dep.), 210:16-18. Further, Plaintiff avers that the Facebook account from which these messages were sent, which is still visible on Facebook, had many interactions with Fox News employees and even made posts referring to Fox. *See* **Ex. B** (November 21, 2025, Declaration of Andrew Delancey), at ¶28; *see* also **Ex. E (**Screenshots of Kathleen Wells' Facebook Account), at Plaintiff Confidential 000660- 000662.

92.        Kathleen Wells is dead and has never been subject to cross examination about whether she sent the Facebook message conversation Plaintiff produced and/or about the alleged incident between her and Wells described in the Facebook conversation. (Ex. 6, Plt. Dep. at 210:16-211:1.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 92 of Defendant's 56.1 Statement.

93.        Wells does not recall any specific altercation with Kathleen Wells and affirmatively denies that he ever used any derogatory term in any conversation with Kathleen Wells. (Ex. 8, Wells Dep. at 337:14-23.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 93 of Defendant's 56.1 Statement insofar as this is what Wells testified to at his deposition. Plaintiff

avers that Wells testified that he "pushed the envelope" while he was at WNYW. *See* **Ex. F** (Wells Dep.), at 338:7-12.

94.     Plaintiff subpoenaed WNYW and it has no records related to any complaint by Kathleen Wells against Wells or any information about the alleged incident between Kathleen Wells and Wells described in the Facebook conversation Plaintiff produced.  (Notice of Plaintiff Subpoena to WNYW, attached hereto as **Exhibit 22**; WNYW Response to Plaintiff Subpoena, attached hereto as **Exhibit 23**.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 94 of Defendant's 56.1 Statement.

95.     Discovery from Fox News establishes that it likewise has no record of any complaint by Kathleen Wells or any information about the alleged incident between Kathleen Wells and Wells described in the Facebook conversation Plaintiff produced.  (Ex. 1, at 1 12; Ex. 13 at p. 1.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 95 of Defendant's 56.1 Statement insofar as Fox News has not produced any written record of any complaint by Ms. Wells against Defendant Wells or the incident described in Ms. Wells's messages.

96.     Wells received training from Fox News on the company's anti-discrimination, anti-harassment, and anti-retaliation policies at some point between 2008 and 2010.  (Ex. 8, Wells Dep. at 326:13-327:5.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 96 of Defendant's 56.1 Statement.

97.     There is no evidence that there were any claims of sexual assault or sexual harassment against MacCarthy from the time he was hired at Fox News in 1997 through the end

of Plaintiff's employment. (July 22, 2025 Declaration of Mykel MacCarthy, attached hereto as **Exhibit 24**, at 1 4.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 97 of Defendant's 56.1 Statement insofar as Fox News has not produced any such evidence in this case. Plaintiff avers that it was an "open secret" among Plaintiff's colleagues that Mr. MacCarthy "had inappropriate conversations with employees and he had inappropriate interactions[.]" *See* **Ex. A** (Delancey Dep.), at 162:23-8. Plaintiff further avers that Fox News stores all complaints of sexual harassment or sexual assault in a physical filing cabinet (i.e., non-electronic database) and has a 13-month email retention policy. *See* **Ex. G (**Collins Fact Dep.), at 58:19-67:14.

98. From the start of MacCarthy's employment with Fox News through the end of Plaintiff's employment, there were no claims of sexual harassment, sexual assault or retaliation made against MacCarthy. (Ex. 20, at Interrogatory No. 12; Ex. 13 at p. 1.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 98 of Defendant's Rule 56.1 Statement to the extent this is what Fox News contends. Plaintiff avers that it was an "open secret" among Plaintiff's colleagues that Mr. MacCarthy "had inappropriate conversations with employees and he had inappropriate interactions[.]" *See* **Ex. A** (Delancey Dep.), 162:23-8.

99. From the start of MacCarthy's employment with Fox News through the end of 2010, there were no claims that MacCarthy failed to report claims of sexual assault or sexual harassment, or retaliation against anyone for complaining about the sexual assault or sexual harassment. (Ex. 13 at p. 1.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 99 of Defendant's Rule 56.1 Statement insofar as this is what Fox News's outside counsel contends.

100.      At no point during MacCarthy's employment with Fox News was MacCarthy disciplined for violating any company policy, including the anti-discrimination, anti-harassment, and ant[i]-retaliation policies.  (*ld*. at p. 2.)  Nor was Mr. MacCarthy ever demoted while he was employed by Fox News.  (Ex. 18, MacCarthy Dep. at 33:15-25, 35:19-36:2.)

**Plaintiff's Response:**  Plaintiff does not dispute the factual allegations in Paragraph 100 of Defendant's Rule 56.1 Statement insofar as this is what Fox News and Mr. MacCarthy contend.

101.      Plaintiff has no personal knowledge of any complaint against Mr. MacCarthy.  (Ex. 6, Plt. Dep. at 163:9-12.)

**Plaintiff's Response:**  Plaintiff does not dispute the factual allegations in Paragraph 101 of Defendant's 56.1 Statement.

102.      Plaintiff has no personal knowledge of any inappropriate interactions between Mr. MacCarthy and other employees of Fox News.  (*ld*. at 163:13-21.

**Plaintiff's Response:**  Plaintiff disputes the factual allegations in Paragraph 102 of Defendant's 56.1 Statement. Plaintiff witnessed Mr. MacCarthy speak with Fox News employees about how other employees were performing, office gossip concerning interpersonal relationships, and the attractiveness of other employees. *See* **Ex. A** (Delancey Dep.), at 154:25-156:25.

103.      Plaintiff has no personal knowledge that MacCarthy was disciplined by Fox News.  (*ld*. at 165:19-22.)

**Plaintiff's Response:**  Plaintiff does not dispute the factual allegations in Paragraph 103 of Defendant's 56.1 Statement.

104.      Plaintiff has no personal knowledge that MacCarthy was demoted by Fox News.  (*ld.* at 165:1-14.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 104 of Defendant's 56.1 Statement insofar as Plaintiff does not know how Fox News coded any of Mr. MacCarthy's role changes. Plaintiff avers that MacCarthy moved from a role at Fox News to a role at Fox Edge, which was the type of move that was considered a demotion at the Company. *See* **Ex. A** (Delancey Dep.), at 164:2-23.)

105.    Plaintiff has no personal knowledge regarding the circumstances surrounding the end of MacCarthy's employment with Fox News. (*ld.* at 165:23-166:1.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 105 of Defendant's 56.1 Statement.

106.    MacCarthy received training from Fox News on the company's anti-discrimination, anti-harassment, and anti-retaliation policies. (Ex. 18, MacCarthy Dep. at 122:2-25.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 106 of Defendant's 56.1 Statement.

## IX.    Plaintiff Did Not Witness Anyone Experiencing Discrimination or Harassment at Fox News.

107.    Plaintiff does not know of anyone who reported a complaint to Fox News during his employment. (Ex. 6, Plt. Dep. at 240:13-19.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 107 of Defendant's 56.1 Statement.

108.    Plaintiff never observed anyone experiencing sexual harassment at Fox News during his employment. (*ld.* at 240:20-24)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 108 of Defendant's 56.1 Statement to the extent that Plaintiff never observed anyone, besides himself, experience sexual harassment at Fox News during his employment. *See* **Ex. B** (November 21, 2025, Declaration of Andrew Delancey), at ¶ 28.___

109.     Plaintiff never heard of anyone experiencing sexual harassment at Fox News during his employment. (*Id.* at 240:25-241:4)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 109 of Defendant's 56.1 Statement to the extent that Plaintiff never heard of anyone, besides himself, experiencing sexual harassment at Fox News during his employment. *See* **Ex. B** (November 21, 2025, Declaration of Andrew Delancey), at ¶ 29.___

110.     Plaintiff never heard about anyone being retaliated against at Fox News during his employment. (*Id*. at 241:5-8.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 110 of Defendant's 56.1 Statement to the extent that Plaintiff never heard of anyone, besides himself,   being retaliated against at Fox News during his employment. *See* **Ex. B** (November 21, 2025, Declaration of Andrew Delancey), at ¶ 29.

## X.     Wells and Plaintiff Had Only Limited Workplace Interactions Before and After The Alleged Assault.

111.     Despite testifying that a "couple of times a week" Wells would contact him to request, "[i]f there was a piece of video that he wanted, if there was a package from a local affiliate that Greta planned to use or that they wanted, my job would be to reach out to them and reach out to the station and get whatever they needed," Plaintiff cannot recall a single request that he was work on by Wells or any other Fox News producer. (Ex. 6, Plt. Dep. at 173:24-176:18.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 111 of Defendant's 56.1 Statement to the extent that Plaintiff does not remember a specific assignment from Wells over 15 years later. However, Plaintiff would get dozens of assignments a day, many from Wells. *See* **Ex. A** (Delancey Dep.), at 174:8-11.

112.     During the two-year period that Plaintiff worked for Fox News, he does not recall ever seeing Wells in the workplace. (*Id.* at 180:16-20 (Q. You never actually physically saw Justin

in the same building at 1211; did you? A. Not that I recall. We were on completely separate floors.).)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 112 of Defendant's 56.1 Statement.

113.    During his entire employment with Fox News Edge, Plaintiff worked in the Concourse 1 level of Fox News's New York offices.  (*ld*. at 137:12-21; Ex. 8, Wells Dep. at 44:17- 20; Ex. 18, MacCarthy Dep. at 32:9-17.)  The Concourse 1 level of the building was the first of three concourse levels below ground, and the closest to the ground floor.  (Ex. 8, Wells Dep. at 329:8-19.) Also located on Concourse 1 were portions of the newsroom, some of the daytime shows and the assignment desk.  (Ex. 8, Wells Dep. at 319:20- 330:2-3; *see also* Ex. 18, MacCarthy Dep. at 34:17- 35:9.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 113 of Defendant's 56.1 Statement.

114.    During that time, Wells primarily worked on the 18th floor of Fox News's New York offices.  (Ex. 8, Wells Dep. at 44:21-23.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 114 of Defendant's 56.1 Statement.

115.    As a Regional Producer, Plaintiff worked from 4:00 p.m. to 1:00 p.m. Wednesday through Sunday.  (Ex. 6, Plt. Dep. at 137:1-7.)

**Plaintiff's Response:** Plaintiff disputes the factual allegations in Paragraph 115 of Defendant's 56.1 Statement insofar as Plaintiff worked from 4:00 p.m. to *1:00 a.m. See* **Ex.** A (Delancey Dep.), 137:1- 2.

116.     From 2008 to 2010, Wells worked seven days per week and was often traveling. (Ex. 8, Wells Dep. at 327:6-24.)  When Wells was not traveling, he would typically be in the office Monday through Friday.  (*ld.* at 327:25-328:9.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 116 of Defendant's 56.1 Statement.

117.     When Plaintiff was promoted to a national producer, his schedule changed.  (Ex. 6, Plt. Dep. at 139:22-25.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 117 of Defendant's 56.1 Statement.

118.     Some days Plaintiff worked the day shift from 8:00 or 9:00 a.m. to 5:00 p.m., while on other days Plaintiff worked the evening shift from 2:00 p.m. to 10:00 p.m.  (*ld.* at 140:1-8.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 118 of Defendant's 56.1 Statement.

## XI.     There Is No Evidence Wells Undermined Plaintiff's Effort to Obtain a Job at WNBC or Fox Radio

119.     Shortly after starting in his role as a Regional Producer with Fox News Edge, Plaintiff decided that it would be difficult for him to live in New York City at the salary that role paid. (Ex. 6, Plt. Dep. at 52:20-53:4.)  As a result, Plaintiff asked Wells for help in locating another job that paid more.  (*ld.* at 53:5-13.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 119 of Defendant's 56.1 Statement.

120. On September 22, 2008, Wells forwarded Plaintiff a job posting for a freelance newscaster position with Fox News Radio, stating "they might have some freelance shifts you can pick up?" (September 22-25, 2008 Emails and Plaintiff Deposition Exhibit 22, attached hereto as **Exhibit 25** at FNN000175-176.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 120 of Defendant's 56.1 Statement.

121. Plaintiff replied asking, "How would I even go about pursing it?" (Ex. 25, at FNN000175.) To which Wells replied and gave Plaintiff the following advice, "Casual conversation with some of the people who head up fox news radio Then before they proceed a folo [sic] up conversation w/ mykel or someone down at edge to tell them . you have interest in this…and it wont interfere with your current duties." (*ld*.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 121 of Defendant's 56.1 Statement.

122. Plaintiff does not recall if he pursued the opportunity with Fox News Radio. (Ex. 6, Plt. Dep. at 190:18-25.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 122 of Defendant's 56.1 Statement.

123. In or around October 2008, Wells forwarded Plaintiff's resume to the hiring manager for a role at WNBC, a station with no relationship to Fox News or Fox Television stations. WNBC then decided to interview Plaintiff for the position. (Ex. 6, Plt. Dep. at 53:15-17, 54:11- 12; Ex. 8, Wells Dep. at 55:11-13, 58:24-59:6.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 123 of Defendant's 56.1 Statement.

124.     After the alleged assault, Plaintiff attended the interview for the producer position at WNBC. (Ex. 6, Plt. Dep. at 53:21-54:6.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 124 of Defendant's 56.1 Statement.

125.     Plaintiff was not selected for the producer position at WNBC. (*ld.* at 55:14-19.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 125 of Defendant's 56.1 Statement.

126.     Although Plaintiff alleges that his interview for the WNBC position must have gone poorly because Wells had a second conversation with the hiring manager for the WNBC producer position during which he told the hiring manager not to hire Plaintiff, he does not have any personal knowledge that this is the case, and admits this allegation is purely based on his speculation. (Ex. 2 at 1 50; Ex. 6, Plt. Dep. at 55:14-19.)  He admits "[i]t was not a great interview." (Ex. 6, Plt. Dep. at 54:5-6.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 126 of Defendant's 56.1 Statement to the extent that Plaintiff's interview did not go well. However, Plaintiff testified that he does not believe he performed poorly in that interview. *See* **Ex. A** (Delancey Dep.), 56:3-7.

127.     No one, including Wells or anyone at WNBC, ever told Plaintiff that Wells spoke with the person at WNBC after the alleged assault and before Plaintiff was interviewed. (Ex. 6, Plt. Dep. at 197:9-16.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 127 of Defendant's 56.1 Statement.

128.     Wells never spoke to anyone at WNBC, including the hiring manager for the producer role that Plaintiff interviewed for, between the time he passed along Plaintiff's resume and learning that Plaintiff did not perform well in the interview. (*ld.* at 335:8-25.)

**Plaintiff's Response:** Plaintiff does not dispute that Paragraph 128 of Defendant's Rule 56.1 Statement accurately reflects Wells's testimony.

129.     After Plaintiff 's interview, Wells was informed by the WNBC hiring manager that Plaintiff had performed poorly during the interview for the producer position at WNBC. (Ex. 8, Wells Dep. at 62:4-17.) At the time of that conversation, WNBC had already made the decision that Plaintiff would not receive the producer role. (*ld.* at 336:2-7.)

**Plaintiff's Response:** Plaintiff does not dispute that Paragraph 129 of Defendant's Rule 56.1 Statement accurately reflects Wells's testimony.

130.     Plaintiff alleges that after the alleged assault, he and Wells discussed the feedback that Wells received from WNBC about Plaintiff's poor job interview and Wells told Plaintiff he was "not thinking straight" and was "screwing himself over" in connection with that interview. (Ex. 6, Plt. Dep. at 200:2-12.) Plaintiff admits that he "didn't fully understand what [Wells] mean[t] by that." (*ld.* at 200:12-13.) Plaintiff's belief that the comment related to the alleged assault is based on solely his own speculation. (*ld.* at 200:6-201:4.)

**Plaintiff's Response:** Plaintiff disputes the factual allegations in Paragraph 130 of Defendant's 56.1 Statement insofar as "his own speculation" was not the "sole" reason he believed that Wells's comments related to his sexual assault of Plaintiff. The comments in question also were made around mid-October 2008, "shortly after the assault" and "shortly after the interview at WNBC" *(see* **Ex. A** (Delancey Dep.), at 199:10-22), i.e., the timing and sequence of events also led Plaintiff to believe that the comments related to the sexual assault.

131.     In fact, Plaintiff has not identified a single comment that Wells made to him in which Wells stated that Plaintiff's failure to give in to Wells's alleged sexual demands would harm Plaintiff's career.  (Ex. 6, Plt. Dep. at 201:12-15.)

**Plaintiff's Response:** Plaintiff disputes the factual allegations in Paragraph 131 of Defendant's 56.1 Statement. Plaintiff understood Wells's comments to him that he was "not thinking straight" and "screwing [himself] over" to refer how his rejection of Wells's sexual advances was causing Plaintiff to "screw[] [him]self over," i.e., harm his career.  *See* **Ex. A** (Delancey Dep.), 199:10-200:17.

**XII.     Plaintiff Received Two Pay Increases And Was Promoted By Fox News After the Alleged Assault.**

132.     In July 2009, Fox News promoted Plaintiff to a National Producer position with Fox News Edge.  (Plaintiff July 1, 2009 Performance Evaluation and Plaintiff Deposition Exhibit 3, attached hereto as **Exhibit 26**; Ex. 6, Plt. Dep. at 23:12-24:2.)  At that time, he also received a 13.33% pay increase, from $44,000/year to $50,000.  (Ex. 26; Ex. 6, Plt. Dep. at 24:3-7.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 132 of Defendant's 56.1 Statement.

133.     In July 2010, Fox News provided Plaintiff with a 6% pay increase, raising his salary to $53,000/year.  (Plaintiff July 1, 2010 Performance Evaluation and Plaintiff Deposition Exhibit 4, attached hereto as **Exhibit 27**; Ex. 6, Plt. Dep. at 27:16-26:14.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 133 of Defendant's 56.1 Statement.

**XIII.     Plaintiff Voluntarily Resigned From Fox News To Return to WTVT.**

134.     On September 8, 2010, Plaintiff resigned his employment with Fox News, having accepted a position with WTVT in Tampa, Florida; the same television station he worked with prior to joining Fox News.  (Ex. 5; Ex. 6, Plt. Dep., at 33:2-25.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 134 of Defendant's 56.1 Statement.

135.     In his letter of resignation to Fox News, Plaintiff wrote, "Thank you for a great 2 years of employment at FOX." (Ex. 5; Ex. 6, Plt. Dep., at 33:19-25.) In his September 2010 written exit interview with Fox News, when asked the reason for his decision to resign, Plaintiff wrote: "Voluntary. Moving back to Tampa, Florida. Got a job at WTVT. Lived there previously. Warm weather. Friends are there." (Plaintiff Exit Interview and Plaintiff Deposition Exhibit 6, attached hereto as **Exhibit 28**; Ex. 6, Plt. Dep., at 32:2-7.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 135 of Defendant's 56.1 Statement.

## XIV.  Plaintiff Continued To Communicate With Wells After The Alleged Assault, Including After He left Fox News.

136.     On October 30, 2008, Wells emailed Plaintiff inquiring about which days he worked and asking, "how are things." Plaintiff replied: "Things are well - I'm homesick for both my friends and my job in Tampa, but I like it here. My normal days off are Mondays and Tuesdays, but I had some days off last week.so I also had Thursday and Friday off. What's new with you?" (October 30-November 1, 2008 Email Chain and Plaintiff Deposition Exhibit 23, attached hereto as **Exhibit 29**, at FNN000188.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 136 of Defendant's 56.1 Statement.

137.     The conversation continued with Plaintiff and Wells discussing their activities the prior evening. Plaintiff noted: "I am struggling to recover after going out last night." He then told Wells "[he] was drunk out of my mind though. didn't get home until 5 AM." (*Id*. at FNN000187- 188.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 137 of Defendant's 56.1 Statement.

138.    In July 2009, Plaintiff and Wells again exchanged emails with Plaintiff telling Wells: "I'm getting off West PM in a couple of weeks. can't wait!" Wells then inquired: "Moving to where/what?" (July 2, 2009 Email Chain and Wells Deposition Exhibit 9, attached hereto as **Exhibit 30**, at FNN000191.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 138 of Defendant's 56.1 Statement.

139.    On September 8, 2011, Wells posted a photo on Facebook with the caption "Got my Fox emergency kit/pouch today." (Wells September 8, 2011 Facebook Post and Plaintiff Deposition Exhibit 9, attached hereto as **Exhibit 31**.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 139 of Defendant's 56.1 Statement.

140.    Plaintiff commented on the post saying, "Pretty sure that's less of an emergency pouch and more of a fanny pack 😊 " (*Id*.; Ex. 6, Plt. Dep. at 69:19-20.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 140 of Defendant's 56.1 Statement.

141.    On October 4, 2013, Wells reached out to Plaintiff via Facebook when he discovered Plaintiff was working at a news station called WPTV. (Ex. 15 at WELLS 00004.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 141 of Defendant's 56.1 Statement.

142.     Later in the conversation, Wells in formed Plaintiff he was trying to hire a producer to which Plaintiff responded, "Sweeet. I'd say hire me but ya know, just started. 😊 " (*Id*. at WELLS 00010.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 142 of Defendant's 56.1 Statement.

143.     Plaintiff and Wells then began discussing whether there were "any cuties" at Plaintiff's new job. (*Id*. at WELLS 00013.) Plaintiff told Wells, "hahaha me too, especially now that I'm single again 😊 " (*Id*.) On February 11, 2015, Wells messaged Plaintiff asking for Plaintiff 's email address because he knew of an Orlando news station looking for producers. (*Id*.) Plaintiff responded with his email address and said, "Thank you I appreciate it! . . ." (*Id*.)

**Plaintiff's Response:** Plaintiff does not dispute the factual allegations in Paragraph 143 of Defendant's 56.1 Statement. Plaintiff avers, however, that Wells is the one who asked Plaintiff if there were "any cuties" at Plaintiff's new job. *See* **Ex. H** (Wells's October 4, 2013 Facebook Messages to Plaintiff), at WELLS 00013.

## PLAINTIFF'S COUNTERSTATEMENT OF DISPUTED FACTS

Pursuant to Federal Rules of Civil Procedure 56 and Rule 56.1 of the Local rules of this Court, Plaintiff Andrew Delancey ("Plaintiff"), by his undersigned counsel, respectfully submits the following counterstatement of disputed facts in response to the Local Rule 56.1 Statement of Undisputed Material Facts (hereinafter "56.1 Statement") of Defendant Fox News Network, LLC ("Fox News" or "Defendant") filed in support of Defendant's instant motion for summary judgment (Dkt. No. 124).

**I.     Wells Uses His Position at Fox to Target and Groom Mr. Delancey Before He Joins Fox News**

144.     In October 2007, Mr. Delancey worked for WTVT, a local Fox affiliate television station in Tampa, Florida, formally owned and operated by Fox Television Stations, LLC ("Fox

Television Stations"). *See* **Ex. I** (Delancey New Hire Employment Record); *see also* **Ex. J** (September 15, 2025, Declaration of Denise Collins), at ¶ 8.

145.    Fox Television Stations and Fox News were owned and operated at the time by the same parent company, News Corporation. *See* **Ex. K** (News Corporation 2008 10-K SEC Filing), at 7, 8.

146.    In 2007, Wells worked at WNYW Fox 5, the local New York City Fox affiliate television station, formally owned and operated by Fox Television Stations. *See* **Ex. F** (Wells Dep.), at 26:13-14.

147.    In 2007, Mr. Delancey and Wells, who are both gay men, were both members of a Facebook group for employees of local Fox affiliate television stations.  *See* **Ex. H** (Plaintiff and Wells Facebook Messages); **Ex. A** (Delancey Dep.), at 36:13-37:5; **Ex. F** (Wells Dep.), at 77:18-78:6.

148.    On August 3, 2007, Wells sent Mr. Delancey a direct Facebook message introducing himself as *the* Producer of the Fox 5 WNYC 10p.m. news program.  Wells told Mr. Delancey that he had seen him in the Fox employee Facebook group and that Mr. Delancey "caught [his] eye." *See* **Ex. H** (Plaintiff and Wells Facebook Messages), at WELLS 00001.

149.    Notably, the 10 p.m. weekday newscast is one of the most coveted time slots and WNYW is among the top Fox affiliate stations in the biggest market in the U.S. *See* **Ex. B** (November 21, 2025, Declaration of Andrew Delancey), at ¶ 2.

150.    Mr. Delancey had never met Wells before this message.  *See* **Ex. A** (Delancey Dep.), at 37:1-5.

151.    Mr. Delancey believed that Wells worked for Fox News since he listed Fox News as his employer on his Facebook profile and had contacted him through a Fox-related social media group. *See* **Ex. A** (Delancey Dep.), at 167:8-169:16.

152.    In reality, at the time, Wells was a "line producer" on the Fox 5 10 p.m. news show, meaning he was the producer in the control room responsible for running the show. *See* **Ex. F** (Wells

Dep.), at 77:14-17; 80:16-25; *see also* **Ex. H** (Plaintiff and Wells Facebook Messages), at WELLS 00001. Delancey did not know that Wells was a line producer. *See* **Ex. B** (November 21, 2025, Declaration of Andrew Delancey), at ¶ 2.

153.    In the same Facebook message exchange, Wells told Mr. Delancey to "say hi to [S]cott [J]ones for [him]." *See* **Ex. H** (Plaintiff and Wells Facebook Messages). At the time, Mr. Jones was the Assistant News Director at WTVT in Tampa where Mr. Delancey worked as a weekend morning producer. *See* **Ex. A** (Delancey Dep.), at 40:13-17.

154.    Mr. Delancey regarded the Assistant News Director as a "powerful" position on any given show. *See id*. at 40:13-41:8. The News Director is the highest position one can hold on a show, making the Assistant News Director the second highest. *See id.* at 125:7-23; *see also* **Ex. B** (November 21, 2025, Declaration of Andrew Delancey), at ¶ 3.

155.    Mr. Jones supervised Mr. Delancey's direct supervisor and, as such, had the authority to affect the terms and conditions of Mr. Delancey's employment at WTVT. *See* **Ex. B** (November 21, 2024, Declaration of Andrew Delancey), at ¶ 4.

156.    Mr. Delancey understood from Wells's words that Wells had a personal connection to one of the highest-ranking decisionmakers in the Fox local affiliate and television program on which Mr. Delancey worked, and that Wells was overall well-connected into the power structure within Fox's television stations and programs and wielded influence. *See* **Ex. B** (November 21, 2025, Declaration of Andrew Delancey), at ¶ 4.

157.    Mr. Delancey told Wells that he aspired to leave Tampa and move to New York City, Fox's headquarters, and work for Fox in some capacity to further his career. *See* **Ex. H** (Plaintiff and Wells Facebook Messages), at WELLS 0003; **Ex. A** (Delancey Dep.), at 40:4-9. Mr. Delancey also told Wells that it was nice to know someone who was already working for Fox in New York City. *See* **Ex. H** (Plaintiff and Wells Facebook Messages).

158.    Wells also told Mr. Delancey that he worked with "Hannah [Corsa] in [M]iami[.]"[2] *See* **Ex. H** (Plaintiff and Wells Facebook Messages), at WELLS 00001. Wells highlighted his connection to Ms. Corsa, a fellow producer who worked with Plaintiff at WTVT, which Mr. Delancey interpreted as Wells implying that he had the ability to find out information about Plaintiff's work and professional reputation at the station. *See* **Ex. B** (November 21, 2025, Declaration of Andrew Delancey), at ¶ 5.

159.    In a later Facebook message exchange, on February 26, 2008, Wells told Mr. Delancey that Mr. Delancey could live in New York City with his "killer hot" friend who was a "PAGE [at] NBC[.]" *See* **Ex. H** (Plaintiff and Wells Facebook Messages), at WELLS 00003. This further reinforced Mr. Delancey's understanding that Wells was well-connected to the New York City television industry. *See* **Ex. B** (November 21, 2025, Declaration of Andrew Delancey) at ¶ 6.

## II.    Wells Joins Fox News Channel and Continues to Groom Plaintiff

160.    After working at WNYW from around 2006 to 2008, in July 2008, Wells moved to a role at Fox News as a Producer on the *On the Record with Greta Van Susteren* ("*On the Record*") show on Fox News Channel. *See* **Ex. F** (Wells Dep.), at 26:11-12; **Ex. U** (Wells Employment Letter); *see also* **Ex. F** (Wells Dep.), at 26:11-12.

161.    After becoming a Producer on *On the Record*, Wells "pass[ed Mr. Delancey's] resume around." *See* **Ex. F** (Wells Dep.), at 104:20-24.

162.    On September 7, 2008, Fox News hired Mr. Delancey as a Regional Producer at Fox News Edge in New York City, responsible for the West Coast region. *See* **Ex. A** (Delancey Dep.), at 16:6-10; *see also* **Ex. I** (Delancey New Hire Employment Record).

163.    Wells used a Fox News internal ordering portal to arrange for Plaintiff to receive a box of Fox-branded gifts on his first day at Fox News, with monogrammed pencils and stationery such as

---

[2]    Formerly Hannah Field.

notepads, featuring the Fox News Edge logo. *See* **Ex. A** (Delancey Dep.), at 42:22-43:3; *see also* **Ex. F** (Wells Dep.), at 121:15-122:3.

164.    Wells told Plaintiff that the gift box had come from him. *See* **Ex. A** (Delancey Dep.), at 43:16-20.

165.    Mr. Delancey barely knew Wells at the time. *See* **Ex. A** (Delancey Dep.), at 43:11-47:8; 205:17-206:12.

166.    Mr. Delancey's Fox News Edge colleagues told him that they had never seen other employees receive monogrammed items like those Wells ordered for Mr. Delancey and found it odd. *See* **Ex. A** (Delancey Dep.), at 44:22-25; 205:25-206:12; **Ex. D** (Hare Johnson Dep.), at 24:22-25.

167.    While Fox-branded pens and notebooks were common in the workplace, monogrammed stationery of the kind Wells ordered for Mr. Delancey stood out and was unusual. *See* **Ex. A** (Delancey Dep.), at 45:9-47:8; **Ex. G** (Collins Fact Dep.), at 75:9-76:6; **Ex. D** (Hare Johnson Dep.), at 24:22-25:15; **Ex. L** (MacCarthy Dep.), at 63:25-64:7.

168.    Mr. MacCarthy, Plaintiff's supervisor, was aware of Wells's gifts to Mr. Delancey and told Mr. Delancey that he himself had been working at Fox for many years and had never received similar monogrammed stationery. *See* **Ex. A** (Delancey Dep.), at 205:17-24.

169.    In fact, when Mr. MacCarthy saw the monogrammed notebook that Wells had arranged for Plaintiff to receive, he remarked, "Oh, somebody likes you." *See* **Ex. B** (November 21, 2025, Declaration of Andrew Delancey), at ¶ 10; *see also* **Ex. A** (Delancey Dep.), at 205:17-206:6. Mr. Delancey interpreted the comment to mean that Mr. MacCarthy believed that this type of personalized welcome gift was unusual and was something an employee received only when someone at Fox News was trying to flatter or ingratiate themselves with them. *See Ex.* **B** (November 21, 2025, Declaration of Andrew Delancey), at ¶ 10.

170.     Mr. Delancey understood that Wells had to "pull strings" to obtain the monogrammed stationery and other gifts for him given the reactions he received from his colleagues and manager and the scarcity of similar items in the workplace. *See* **Ex. A** (Delancey Dep.), at 44:9-12; **Ex. B** (November 21, 2025, Declaration of Andrew Delancey), at ¶ 11.

171.     At 6:55 pm on September 8, 2008, Wells sent Plaintiff an email checking in on how his first day of work went. *See* **Ex. M** (Emails Between Wells and Plaintiff), at FNN168.

172.     Fox News Edge, where Mr. Delancey worked, was located in the basement of 1211 Avenue of the Americas.  In contrast, Wells worked on the 18th floor of the same building, which was where all Fox News Channel employees were located. *See* **Ex. A** (Delancey Dep.), at 137:12-21**; Ex. F** (Wells Dep.), at 43:22-44:23; 278:23-279:2; 328:10-329:4.

173.     While Wells and Mr. Delancey did not work on the same floor at Fox News (*see* **Ex. F** (Delancey Dep.), at 47:18-19), Wells regularly contacted Mr. Delancey at work after he joined Fox News via email and Top Line, Fox News' internal messaging system. *See* **Ex. A** (Delancey Dep.), at 68:11-16; 173:6-23; **Ex. N** (Collins 30(b)(6) Dep.), at 98:11-99:6; **Ex. M** (September 2008 Emails between Wells and Mr. Delancey), FNN000174-76.

174.     Fox News has not preserved any Top Line messages and does not have any formal policy requiring their retention. *See* **Ex. N** (Collins 30(b)(6) Dep.), at 98:11-104:2.

175.     Soon after starting at Fox News Edge, Plaintiff confided in Wells that he could not afford to live in New York City on his salary. *See* **Ex. F** (Wells Dep.), at 129:2-24. Wells then sent Plaintiff job listings. *See id.*

176.     On September 22, 2008, Wells emailed Mr. Delancey a posting for an opening for a Fox News Radio "freelance newscaster" and offered to "try and get [him] a name on [M]on[day] if poss[ible" who worked at Fox News Radio for Plaintiff to contact about the role. *See* **Ex. M** (September 2008 Emails between Wells and Mr. Delancey), at FNN000174-76.

177. Around the same time, Wells forwarded Plaintiff's resume and an accompanying "endorsement" to the hiring manager at WNBC, an old colleague of his, and arranged for Plaintiff to interview for an open Producer position which would have paid Mr. Delancey more money than his current role. *See* **Ex. F** (Wells Dep.), at 180:2-7; 187:8-23; **Ex.** A (Delancey Dep.), at 53:15-17; 197:24-198:20.

## II.    Delancey's Responsibilities as Regional Producer for Fox News Edge

178. Fox News Edge is a "service" to Fox News that "licenses news feeds to FOX Affiliates and other subscribers to use as part of local news broadcasts[.]" *See* **Ex**. **K** (News Corporation 2008 10-k SEC Filing), at 10.

179. As a Regional Producer for Fox News Edge, Mr. Delancey was responsible for contacting West Coast Fox affiliate TV stations from Denver westward, gathering content for Fox News Edge, as well as Fox News Channel, and disseminating the content to Fox News Edge, Fox News Channel, and local affiliates. *See* **Ex. A** (Delancey Dep.), at 17:24-18:8.

180. Mr. Delancey worked primarily with affiliates but also completed work and requests assigned to him by producers on the Fox News Channel. *See* **Ex. A** (Delancey Dep.), at 18:14-16; 20:16-23.

181. Fox News Channel producers often bypassed the Assignment Desk and worked directly with Fox News Edge employees, including Mr. Delancey, on specific assignments. *See id.* at 20:19-21:10; 48:22-49:18; 136:9-22; *see also* **Ex. D** (Hare Johnson Dep.), at 41:19-42:2.

182. The Assignment Desk is the "news gathering hub" for Fox News. *See* **Ex. N** (Collins 30(b)(6) Dep.), at 122:18-23. The Assignment Desk worked with Fox News Channel, Fox Business Network, Fox News Edge, and other various platforms. *See id.*

183. If an assignment came to him directly from an individual producer on a show, which occurred regularly, and not through the Assignment Desk, Mr. Delancey needed to and would complete that assignment. *See* **Ex. A** (Delancey Dep.), at 21:6-20.

184.     Mr. Delancey was contacted daily by Fox News Channel producers to complete assignments. *Id.* at 22:7-15.

185.     Mr. Delancey was never informed that producers on Fox News Channel shows were supposed to convey assignments through the Assignment Desk and not directly with Fox News Edge producers like him. *See* **Ex. A** (Delancey Dep.), at 136:19-22.

## III.     Wells Regularly Assigns Mr. Delancey Work

186.     Wells worked on the *On the Record* show, which would air on Fox News Channel in the evening, at times at the coveted time slot of 10:00 p.m. EST. *See* **Ex. A** (Delancey Dep.)*,* at 50:9-16. As a West Coast Regional Producer for Fox News Edge, Mr. Delancey often worked at the same time the show would be on. *Id.* at 16:9-10; 136:12-18.

187.     *On the Record* was one of the most lauded shows on Fox News. *Id.* at 172:7-8.

188.     Wells regularly reached out to Mr. Delancey "when he needed things that [Mr. Delancey] could possibl[y] get from other affiliates or elsewhere." *See id.* at 48:10-21. These assignments came directly from Wells and not through the Assignment Desk. *Id.* at 48:22-49:1.

189.     Plaintiff worked from 4 p.m. to 1 a.m., which were hours when the Assignment Desk was not adequately staffed (or staffed at all). As a result, Fox News Channel producers, particularly Wells, whose show aired in the evenings including at 10 p.m., regularly bypassed the Assignment Desk and assigned work directly to Plaintiff. Therefore, it was common for Fox News Channel show producers, especially Wells, to assign work directly to Plaintiff. *See* **Ex. B** (November 21, 2025, Declaration of Andrew Delancey), at ¶ 16.

190.     Wells assigned Mr. Delancey more work than any of Mr. Delancey's Fox News Edge colleagues. *See* **Ex. A** (Delancey Dep.) at 50:4-16.

191.     Mr. Delancey estimates that Wells would reach out to him about two times a week with assignments for him to complete. *See* **Ex. A** (Delancey Dep.), at 48:10-21; 51:1-4; 172:25-173:5.

192.     Whenever Wells needed "a piece of video," or "a package from a local affiliate that Greta [Van Susteren] planned to use or [the show] wanted," Mr. Delancey would ensure that Wells and his show "get whatever they needed." *See* **Ex. A** (Delancey Dep.), at 50:19-25.

193.     Anytime Wells gave Plaintiff an assignment, the assignment would be time sensitive and often required an immediate turnaround. *See* **Ex. B (**November 21, 2025, Declaration of Andrew Delancey), at ¶ 17. Because Plaintiff's shift began at 4 p.m., assignments from Wells typically had to be completed by 8 p.m. that same day so it could be ready to air on *On the Record*. *Id.*

194.     Because of this urgency, any assignment that Wells gave Plaintiff took priority over all of Plaintiff's other work and could take anywhere between a half an hour and an hour to complete. *Id at* ¶ 18.

195.     Mr. Delancey believed that Wells was "above" Mr. MacCarthy, Mr. Delancey's direct supervisor, in the chain of command. *See* **Ex. A** (Delancey Dep.), at 52:5-11. This belief was reinforced by how Wells worked at Fox News Channel, whereas Mr. Delancey and Mr. MacCarthy worked at Fox News Edge, "an affiliate feed service" that served Fox News. **Ex. A** (Delancey Dep.) at 183:17-184:10; **Ex. F** (Wells Dep.), at 233:23-236:19.

196.     Given the power dynamics between Fox News Edge and Fox News Channel, Mr. Delancey understood that he was "very much the low person on the totem pole." **Ex. A** (Delancey Dep.) at 185:14-186:10. In fact, Wells was not "shy" to tell Plaintiff that he "had power within the Company" and was very clear that he had "significant influence within Fox News." *See* **Ex. A** (Delancey Dep.), at 180:11-183:2.

197.     Mr. Delancey believed that Wells could influence his employment at Fox News. *See* **Ex**. **B** (November 21, 2025, Declaration of Andrew Delancey), at ¶ 19; *see also* **Ex. A** (Delancey Dep.), at 182:19-184:3; 187:20-24.

198.    Mr. Delancey believed that Wells could impact Mr. Delancey's advancement at Fox News because of the differential power dynamic between Fox News Channel and Fox News Edge, how well-connected Wells appeared to be within Fox, and because Wells told Mr. Delancey that he was "powerful." *See* **Ex. A** (Delancey Dep.), at 183:7-185:20; 187:20-24.

199.    Mr. Delancey believed that Wells could reassign Mr. Delancey to a new role because of the hierarchy between Fox News Channel and Fox News Edge, Wells's connections within the Company, and because Wells told Mr. Delancey that he was "powerful." *See id*.

200.    Mr. Delancey believed that Wells could cause a significant change in Mr. Delancey's compensation because of the hierarchy between Fox News Channel and Fox News Edge, Wells's connections within the Company, and because Wells told Mr. Delancey that he was "powerful." *See id.*

201.    Both Plaintiff and Wells received performance evaluations in July 2009. *See* **Ex. O** (Plaintiff's July 2009 Performance Evaluation), at FNN141-42; see also **Ex. P** (Wells's July 2009 Performance Evaluation), at FNN160-61. According to Wells's evaluator, at that time, Wells "ha[d] a senior title." *See* **Ex. P,** at FNN163. Wells also earned nearly three times what Plaintiff was earning (approximately $135,000 to $50,000). *See* **Ex. O**; **Ex. P**.

**IV.     The Pervasive Drinking Culture at Fox News**

202.    It was very common for Fox News employees to go out drinking together. *See* **Ex. A** (Delancey Dep.), at 151:20-152:19; **Ex. L** (MacCarthy Dep.), at 98:7-100:23; **Ex. F** (Wells Dep.), at 133:21-134:13; **Ex. D** (Hare Johnson Dep.), at 37:23-39:2; **Ex. G** (Collins Fact Dep.), at 78:23-79:6; *see also* **Ex. B** (November 21, 2025, Declaration of Andrew Delancey), at ¶25.

203.    Fox News employees, including high-level supervisors, would go drinking after work at a bar called Rosie's. *See* **Ex. D** (Hare Johnson Dep.), at 38:13-18; **Ex. G** (Collins Fact Dep.), at 78:23-79:6.

204.    Mr. Delancey was often invited to Rosie's by his supervisor, Mr. MacCarthy. *See* **Ex. A** (Delancey Dep.), at 151:20-152:5; **Ex. L** (MacCarthy Dep.), at 98:24-100:12.

205.     Mr. MacCarthy, a gay man, primarily invited the gay employees in the newsroom at Fox Edge out for drinks. *See* **Ex. A** (Delancey Dep.), at 151:20-152:19. *See* **Ex. D** (Hare Johnson Dep.), at 38:19-23.

206.     At Rosie's, Mr. MacCarthy would discuss with direct reports like Mr. Delancey and others about his "favorites" at Fox News Edge, including within the production staff. *See* **Ex. A** (Delancey Dep.), at 151:20-152:25.. Mr. MacCarthy would also speak about Fox News Edge employees' work product, performance, and attractiveness. *Id.* at 156:5-19.

207.     When Fox News Edge employees drank with Mr. MacCarthy at Rosie's, there was effectively no limit to the number of drinks they could order, and the bar tabs at the end of the night were consistently "large." *Id.* at 153:2-11. Mr. MacCarthy routinely picked up the tab at Rosie's. *Id.* at 151:20-24; 152:23-6; **Ex. L** (MacCarthy Dep.), at 100:13-23.

## V.     Wells Sexually Assaults Mr. Delancey During a Fox News Networking Event

208.     About a month after Mr. Delancey joined Fox News, in or around October 2008, Wells invited Mr. Delancey to go out to Barracuda Lounge, a bar in Chelsea. *See* **Ex. A** (Delancey Dep.), at 58:14-23; 61:6-12; **Ex. F** (Wells Dep.), at 155:19-25.

209.     Wells told Mr. Delancey that there would be other people from Fox News there and that it would be a good thing for him to "get to know them," and would "benefit [him] to go." *See* **Ex. A** (Delancey Dep.) at 58:14-23.

210.     Given the drinking culture at Fox at the time, where supervisors like Mr. MacCarthy routinely invited direct reports to bars, bought their drinks, and socialized after work hours, Mr. Delancey regarded Wells's invitation to Barracuda as another Fox News-related outing. *See* **Ex. B** (November 21, 2025, Declaration of Andrew Delancey), at ¶ 24.

211. At the time, Mr. Delancey was a brand-new Fox News employee and had not met many people at Fox News and felt this would be a good networking opportunity to meet colleagues and other Fox News employees. *See id; see also* **Ex. A** (Delancey Dep.), at 58:14-23*; 61:13-22.

212. Mr. Delancey met Wells at his apartment to go to Barracuda together. Wells invited Mr. Delancey into his apartment for a "pregame cocktail," and claimed that other people were on their way. *See id.* at 58:24-59:1.

213. Once inside Wells's apartment, Wells made Mr. Delancey an alcoholic drink. *See* **Ex. A** (Delancey Dep.), at 59:2-4; **Ex. F** (Wells Dep.), at 159:10-14. Shortly thereafter, Wells threw Mr. Delancey onto his bed and sexually assaulted him. *See* **Ex. A** (Delancey Dep.), at 59:2-12.

214. Mr. Delancey tried to stop Wells, and said, "I thought we were going to Barracuda, plus you have a boyfriend." *Id. at* 59:13-18; 64:25-8.

215. When Wells was finished attacking Mr. Delancey after he resisted Wells's sexual advances, Wells told Mr. Delancey, "Okay, we can go out, but I would like to show you the rooftop." *Id.* at. 59:19-25.

216. As Wells and Mr. Delancey walked up a stairwell in Wells's apartment building on their way to the rooftop, Wells suddenly grabbed Mr. Delancey from behind and sexually assaulted him again. *Id.* at 60:1-14.

217. Mr. Delancey resisted again and told Wells that he had "no interest" in engaging sexually with him. *Id.* at 60:1-14. This is when Wells's mood changed, and he told Mr. Delancey that he did not want to go out anymore. *Id.* Mr. Delancey left Wells's apartment building and went home. *Id.* at 67:7-12.

218. Fox News employees are told that workplace harassment can take place both inside and outside of the physical workplace. *See* **Ex. G** (Collins 30(b)(6) Dep.), at 65:16-66:4.

## VI.    Mr. Delancey is Discouraged from Reporting Wells's Assault to HR

219.    Fox News fostered a culture in which interactions with Human Resources ("HR") was actively and widely discouraged. *See* **Ex. A** (Delancey Dep.) at 88:11-17; 162:2-9.

220.    In fact, beginning very shortly after Plaintiff' first day at Fox News, Mr. MacCarthy, Mr. Delancey's direct supervisor, repeatedly told Mr. Delancey not to go to HR because there was "no point" and HR was "not to be trusted." *See* **Ex. A** (Delancey Dep.), at 148:1-150:24; *see also* **Ex. B** (November 21, 2025, Declaration of Andrew Delancey), at ¶ 22.

221.    Based on these repeated warnings from his supervisor, Mr. Delancey believed that he would be labeled a "problem" and any complaint he reported would be turned against him if he went to HR. *See* **Ex. A** (Delancey Dep.) at 149:11-14.; **Ex. B** (November 21, 2025, Declaration of Andrew Delancey), at ¶ 23.

## VII.    Fox News's Discrimination, Harassment, and Retaliation Policies

222.    There is no documentary evidence that Mr. Delancey ever received any handbook that contained anti-discrimination, anti-harassment, and/or anti-retaliation policies during his employment at Fox News, nor does he recall ever reading or receiving training on such policies. *See* **Ex. A** (Delancey Dep.), at 159:6-15; 258:7-11; *see also* **Ex. B** (November 21, 2025, Declaration of Andrew Delancey), at ¶7-8.

223.    Fox News has not produced any records or certifications that Mr. Delancey, or any Fox News employee during Mr. Delancey's employment at Fox News, attended any trainings on Fox News's anti-harassment, anti-discrimination, and anti-retaliation policies. *See* Rahman Decl. at ¶ 23.

224.    Fox News does not maintain any records of employees attending these alleged "anti-harassment, anti-discrimination, and anti-retaliation" trainings. *See* **Ex. G** (Collins 30(b)(6) Dep.), at 57:58:15.

225. At the time, attendance at these alleged training courses was recorded manually on a single Fox News employee's computer, and the individuals responsible for tracking attendance, Lindsay Maraviglia and a temporary employee, have long since left Fox News. *See* **Ex. G** (Collins 30(b)(6) Dep.), at 57:6-23.

226. Fox News has made no effort to locate those former employees or otherwise recover the attendance data. *See id.* at 58:8-15.

227. Fox News has no records of the content of these alleged trainings. *See id.* at 58:17-21.

## VIII. Wells Wields His Influence Over Mr. Delancey For Refusing His Advances and No Longer Has Any Interest in or Acts in Furtherance of Advancing Mr. Delancey's Career

228. After the assault occurred, Mr. Delancey told a colleague named Lindsay Hare Johnson that he was sexually assaulted by a producer on one of the Fox News Channel shows, but never identified Wells as his attacker. *See* **Ex. D** (Hare Johnson Dep.), at 25:25-28:4.

229. After Wells assaulted Mr. Delancey, he continued to give Mr. Delancey assignments on a regular basis. *See* **Ex. A** (Delancey Dep.), at 67:22-10.

230. Wells would communicate assignments to Mr. Delancey through an internal Fox messaging system called Top Line. *See id.* at 68:14-16. Fox News has not reviewed Top Line messages in connection with this matter. *See* **Ex. G** (Collins 30(b)(6) Dep.), at 99:8-100:10. Fox News has no preservation policy regarding Top Line messages. *Id.* at 102:6-16.

231. Prior to the assault, Mr. Delancey told Wells he could not afford to live in New York City on his Fox News salary, and Wells offered to connect him to people that he knew within Fox News and other media outlets. *See* **Ex. A** (Delancey Dep.), at 53:8-13.

232. After the sexual assault, Mr. Delancey went on an interview for a producer role at WNBC that had been arranged by Wells. Whereas Mr. Delancey understood, prior to the assault, that the interview was supposed to take place in the WNBC newsroom, it was suddenly moved to a Starbucks on the ground floor of the WNBC building. *Id.* at 53:21-54:6.

233.     It appeared to Mr. Delancey that the people interviewing him were not taking the interview seriously and did not view Mr. Delancey as a legitimate candidate, which felt to him like someone had "put a chill on hiring [him]." *Id.* at 54:2-10; 56:5-7.

234.     The role, which was for a Producer position, paid more than his current position at Fox News. *Id.* at 54:11-24.

235.     After the interview, Wells, who was aware from his contact at NBC that Mr. Delancey did not get the NBC position for which he applied, (*see* **Ex. F** (Wells Dep.), at 190:11-18; **Ex. A** (Delancey Dep.), at 158:1-8) told Mr. Delancey that he was "not thinking straight" and that Mr. Delancey was "screwing himself." *Id.* at 199:10-200:17.

236.     Mr. Delancey interpreted Wells's remarks to mean that, since he did not acquiesce to Wells's sexual advances, Mr. Delancey "was screwing [himself] over as a result," which cost him the NBC job, which Wells thwarted, and possibly other opportunities to advance his career within and outside of Fox News. *Id.* at 200:8-201:4; *See* **Ex. B** (November 21, 2025, Declaration of Andrew Delancey), at ¶ 25.

237.     Even after the assault, Mr. Delancey continued to routinely encounter Wells, who would regularly email and Top Line message him. *See* **Ex. R** (October 2008 Emails Between Wells and Plaintiff), at FNN 000186-88.

238.     However, Wells's tone toward Plaintiff changed markedly. He was no longer friendly and would communicate with Plaintiff only about work assignments, and he stopped offering to help Plaintiff find new jobs or connect him with other Fox News employees who could advance Plaintiff's career. *See* **Ex. B** (November 21, 2025, Declaration of Andrew Delancey), at ¶ 26.

239.     Wells continued to keep tabs on Mr. Delancey following the assault however, including;

- On October 30, 2008, Wells told Mr. Delancey that he had noticed that he was never "logged in" and inquired about his work schedule. *See* **Ex. R** (October 2008 Emails Between Wells and Plaintiff), at FNN 186-88.

- On December 19, 2009, Wells emailed Plaintiff asking him whether he was "working tonight." *See* **Ex. Q** (Wells and Delancey 2009 Emails), at FNN 000193-195.

- On July 2, 2009, Wells emailed Plaintiff, "nice work Delancey :)" – praising his performance. *See* **Ex. S** (Wells and Delancey 2009 Emails), at FNN 000191-92.

240. Mr. Delancey understood that Wells wielded significant influence over his career and felt he had to keep their interactions cordial (and not report his conduct) to prevent further harassment or retaliation. *See* **Ex. A** (Delancey Dep.), at 204:7-13.

## IX. Wells's History of Workplace Harassment

241. On October 22, 2017, right as the #metoo movement began to spread, Mr. Delancey posted a Facebook message that stated:

> It's taken me until today to realize that I've had a #metoo. Ten years ago. Position of great power in the media landscape of NYC. He lorded it over me. Was extremely inappropriate, plying me with drinks, getting way too handsy and telling me I would never get anywhere without him. Went to a "party" where he conveniently was the only person who showed up. He threw me on his bed as I struggled to get out. Took me to a rooftop deck at his building, put his hands down my pants and tried to put his tongue down my throat. He called me "special", and got pissed when [I] didn't just lay there and take it. In fact, when he knew [I] was saying no, he kicked me out into the cold. I was no use to him.

> The people in my orbit trying to look out for me knew it was weird, but their own power was limited.

> I've never felt like making a big deal out of this, but I look at all the women who now have a voice. My abuser still works at his high profile job in an executive producer capacity. He never talks to me, out of shame or keeping

a safe distance. Either way, the part where I stay silent because I am ashamed stops now.

(**Ex. T** (Plaintiff's October 22, 2017, Facebook Post), at CONFIDENTIAL PLAINTIFF 000068)

242.    On October 23, 2017, Kathleen Wells, a former Fox News employee and colleague of Mr. Delancey's, reached out to Mr. Delancey over Facebook and told Mr. Delancey that Mr. MacCarthy was "overly flirtatious verbally and physically" when they worked together at WNYW. *See* **Ex. C** (Plaintiff's Facebook Messages with Kathleen Wells), at CONFIDENTIAL PLAINTIFF 51.

243.    Ms. Wells then told Mr. Delancey that Defendant Wells called her a "fucking bitch" because she refused to do a live shoot with him. *Id.* at CONFIDENTIAL PLAINTIFF 53. Ms. Wells further stated that after she reported him to her manager, Defendant Wells was forced to write an apology to her, which was sent to Defendant Wells's boss, Ms. Wells's boss, and Human Resources. *Id.* at CONFIDENTIAL PLANITIFF 51-67.

244.    In reference to Defendant Wells's assault of Mr. Delancey, Ms. Wells stated that it was "Fox's fault for creating such an environment where [Wells] felt so free to do something like this." *Id.* at CONFIDENTIAL PLAINTIFF 58.

245.    While Fox News alleges that there is no record of any complaint by Kathleen Wells against Defendant Wells (*see* Fox News' 56.1 Statement, ¶ 95, *supra*), Ms. Collins, who was in the position of Vice President of Human Resources in 2008, testified that when employees like Wells moved between a Fox television station and Fox News, the only information about the employee Fox News typically requested was whether they were "eligible for consideration," *i.e.*, in "good standing." *See* **Ex. G** (Collins 30(b)(6) Dep.), at 74:4-75:3.

246.    However, Fox News did not provide any Fox television station with guidance on how to respond to such a request, and does not know what, if anything, the stations looked at when confirming an employee's "good standing." *Id.* at 75:25-80:14.

247.     Moreover, in searching for prior complaints against Wells, Ms. Collins reviewed only human resource records, Wells's own employment file, centralized "complaint files," and her personal notes, but not the personnel file of any other employee who may have reported him. *See Id.* at 114:22-115:2; 119:8-22.

**X.     Fox News' Deficient Complaint Record Keeping**

248.     With regard to its complaint procedures, Fox News's standard practice in 2008 was to print out emailed complaints and place the printouts in a dedicated "hard complaint file," which was a system that was already in place before Ms. Collins joined Fox News in 2000. *See* **Ex. G** (Collins Fact Dep.), at 66:19-67:14; **Ex. J** (September 15, 2025, Declaration of Denise Collins), at ¶ 2.

249.     Fox News's practice was to discard the underlying emails conveying the complaints. *See* **Ex. G** (Collins Fact Dep.), at 66:19-24. In other words, once a complaint email was printed and placed in the "hard complaint file," the original electronic version was not preserved, and ultimately deleted pursuant to Fox News' 13-month email-retention policy. *See id.*

250.     There was no policy of retaining employee complaints that were conveyed by any other means besides via email in the "hard complaint file."  *See id.* at 66:11-68:17.

251.     Fox News has no written policy requiring that all complaints of sexual harassment, sexual assault, or retaliation be documented and placed in the complaint file. *See id.* at 64:10-65:13; 68:13-21.

252.     Fox News has no policy requiring that documentation of harassment or retaliation complaints be maintained in employee personnel files. *Id.* at 68:13-18.

253.     Fox News has made no effort to digitize or otherwise back up these paper complaint files. *See id.* at 68:12-69:2.

254.     To determine what complaints had been filed against employees at Fox News during relevant periods of this case on behalf of Fox News, Ms. Collins simply read through the hard complaint file. *See id.* at 58:12-61:20.

255. Notably, Ms. Collins did ***not*** review any individual personnel files for employees who worked on a Fox News Channel show in New York during the relevant period. *See id.* at 61:13-20.

256. The hard copy complaint files were retrieved from off-site storage to be reviewed. Ms. Collins does not know who retrieved those complaint files or whether all relevant files were actually retrieved. *Id.* at 73:3-6.

257. Complaints of harassment or retaliation are governed by Fox News's generic "records retention policies," but Ms. Collins could not identify those policies. *See id.* at 68:2-18.

258. Rather, complaints, if kept at all, would be kept "in filing cabinets in a room." *Id.* at 69:2-3.

259. To this day, Fox News still maintains complaints in hard copy form in a filing cabinet and still has no policies or rules in place to protect electronically conveyed complaints from deletion. *Id.* at 68:12-69:2; 69:18-72:6.

Dated: November 21, 2025

Respectfully Submitted,

By: _____

**FILIPPATOS PLLC**

Tanvir H. Rahman
Gabrielle Rosen Harvey
199 Main Street, Suite 800
White Plains, New York 10601
Tel: (914) 984-1111
Tel: (212) 202-0234
TRahman@filippatoslaw.com
Grosenharvey@filippatoslaw.com

***Attorneys for Plaintiff Andrew Delancey***