**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANDREW DELANCEY,<br><br>*Plaintiff*,<br><br>-against-<br><br>JUSTIN WELLS, FOX CORPORATION, and FOX NEWS NETWORK, LLC<br><br>*Defendants*. | Case No. 1:23-CV-10357(AT) |

**DEFENDANT FOX NEWS NETWORK, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................ 1

II. ARGUMENT ............................................................................................................... 2

A. Wells's Alleged Assault Cannot Be Imputed to FNN ........................................ 2

1. Wells Was Not Delancy's Supervisor Under the Supervisory Liability Standard Previously Applied by the Court in this Case ............. 2

2. Delancey Fails to Adduce Any Evidence That Wells Was His Supervisor Even Under The Incorrect Standard Delancey Proposes......... 3

3. There is No Evidence That FNN Knew, Or Should Have Known, About Wells's Alleged Conduct As Required Under the NYCHRL......... 7

B. Delancey's NYSHRL and NYCHRL Sexual Harassment Claims Should Be Dismissed Because The Alleged Assault Occurred Outside Of The Workplace And Did Not Impact Delancey's Work Environment ....................... 10

C. Delancey Cannot Prevail on a Quid Pro Quo Theory of Harassment................. 10

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Arthur Andersen LLP v. United States*,
544 U.S. 696 (2005)....................9

*Cajamarca v Regal Ent. Grp.*,
103027/12, 2013 N.Y. Misc. LEXIS 4851 (Sup. Ct., N.Y. Cnty, Oct. 17, 2013)....................3, 4

*Castillo v. Isakov*,
No. 22-cv-6888, 2023 WL 6664552 (S.D.N.Y. Oct. 12, 2023)....................2, 3

*Del Villar v. Hyatt Hotel Corp.*,
2022 U.S. Dist. LEXIS 114294 (S.D.N.Y. June 28, 2022)....................4, 6, 10

*Devlin v. Teachers' Ins. & Annuity Ass'n of Am.*,
No. 02 Civ. 3228 (JSR), 2003 WL 1738969 (S.D.N.Y. Apr. 2, 2003)....................10

*Distasio v. Perkin Elmer Corporation*,
157 F.3d 55 (2d Cir. 1998)....................8

*Hughes v. Twenty-First Century Fox, Inc.*,
304 F. Supp. 3d 429 (S.D.N.Y. 2018)....................7, 11

*Li v. Ali Baba Group Holding Ltd.*,
2021 WL 4084574 (S.D.N.Y. Sept. 7, 2021)....................1

*Mejia v. City of New York*,
No. 17-cv-2696, 2020 WL 2837008 (E.D.N.Y. May 30, 2020)....................2, 3

*Stapon v. Riverhead Cent. Sch. Dist.*,
2025 U.S. Dist. LEXIS 205856 (E.D.N.Y. Sept. 15, 2025)....................9

*Vance v. Ball State Univ.*,
570 U.S. 421 (2013)....................2, 3

*Ward v. Shaddock*,
No. 14-CV-7660, 2016 WL 4371752 (S.D.N.Y. Aug. 11, 2016)....................4

**Other Authorities**

Fed. R. Evid. 803....................9

*Page Program*, NBCUniversal Careers,
https://www.nbcunicareers.com/pageprogram (last visited December 12, 2025)....................5

## I. INTRODUCTION

Delancey's opposition confirms that this case should not proceed past summary judgment.[1] After extensive discovery, the undisputed facts show that the allegations in Delancey's complaint about FNN are untrue, and FNN is not liable to Delancey as a matter of law.

Wells's alleged assault of Delancey cannot be imputed to FNN based on a supervisory liability theory because the undisputed facts establish that Wells had no authority to hire, discipline, promote, fire or cause significant change Delancey's benefits, as required under the standard the Court previously applied in this case. Delancey's testimony that he would help Wells "a couple of times a week" is not evidence from which a reasonable jury could conclude that Wells had the authority to direct Delancey's daily work activities, as Delancey's preferred standard would require. Delancey's alleged "belief" that Wells was a "highly influential producer" who "groomed" him for years does not satisfy the objective standard for supervisory liability under the law, and the undisputed record evidence proves that belief was false.

Nor can Wells's alleged assault be imputed to FNN based on Delancey's other theories of liability. Delancey waived any argument under the NYSHRL that FNN "condoned" Wells's alleged conduct because he failed to respond to FNN's argument showing that the undisputed facts demonstrate FNN did not forgive or accept the alleged assault after it occurred. Delancey also failed to adduce any evidence that FNN "knew or should have known" about Wells's alleged assault, as required for employer liability under the NYCHRL. It is undisputed that FNN did not learn of the alleged assault until this lawsuit was filed and that FNN had no knowledge of any

[1] Delancey filed his opposition on November 21, 2025 (ECF 129), Delancey failed to do so until November 22, 2025, a day after it was due. (ECF 129-132). As such, Delancey's filing is untimely and should be stricken. *Li v. Ali Baba Group Holding Ltd.*, 2021 WL 4084574, at *3 (S.D.N.Y. Sept. 7, 2021).

complaints of prior sexual misconduct by Wells or MacCarthy before either started working at FNN or at any time during Delancey's employment with FNN.

FNN also cannot be liable under either the NYSHRL or NYCHRL for Wells's alleged assault for the independent reason that the undisputed facts show that the alleged assault occurred outside the workplace and did not impact Delancey's work environment. FNN had no involvement in organizing or encouraging the gathering at the Barracuda lounge or Delancey's visit to Wells's apartment where the alleged assault occurred. Delancey's alleged subjective belief that FNN's "custom" was for employees to go out for drinks with their supervisors is irrelevant as a matter of law. Moreover, Delancey never once saw Wells in person at FNN after the alleged assault.

Finally, Delancey's claim under a *quid pro quo* theory of harassment fails. There is no evidence that Wells made any threats to Delancey regarding potential job opportunities after the alleged assault.[2]

## II. ARGUMENT

### A. Wells's Alleged Assault Cannot Be Imputed to FNN.

#### 1. Wells Was Not Delancy's Supervisor Under the Supervisory Liability Standard Previously Applied by the Court in this Case.

FNN demonstrated that there is no evidence in the record with which Delancey can meet the *Vance*, 570 U.S. at 421, standard for supervisor liability previously applied by the Court in this case on the motion to dismiss and by numerous other courts in the Second Circuit to claims under both the NYSHRL and NYCHRL. Opening Br. at 10; ECF 54 at 11-12 (citing *Vance*, 570 U.S. at 421); *see also Castillo,* 2023 WL 6664552, at *7 and *Mejia*, 2020 U.S. Dist. LEXIS 95659, at *47.

[2] Delancey Counterstatement of Facts includes 115 alleged additional "facts" spanning nearly 20 pages. ECF 130 at ¶¶144-259. As set forth in **Exhibit A**, on many occasions, the record evidence cited does not support the contentions Delancey makes.

In opposition, Delancey failed even to acknowledge the Court's previous application of the *Vance* standard, much less identify any evidence to satisfy it. Instead, Delancey relies on cases applying a supposedly "broader" standard that treats any employee who directed the plaintiff's "daily work activities" as a supervisor. Opp at 19 (citing *Cajamarca v Regal Ent. Grp.*, 103027/12, 2013 N.Y. Misc. LEXIS 4851, at *15 (Sup. Ct., N.Y. Cnty, Oct. 17, 2013) (citation modified)). But that reliance is doubly flawed. First, those cases do not establish any standard different from *Vance* for claims under the NYSHRL. Second, to the extent those cases suggest a different standard under the NYCHRL than the *Vance* standard applied under Title VII and the NYSHRL, they are nonbinding on this Court and are wrongly decided. Indeed, "[w]hile the term 'managerial or supervisory authority,' is not defined in NYCHRL, this concept is broadly understood in the context of employment discrimination claim to refer to" the standard established in *Vance*. *Castillo*, 2023 WL 6664552, at *7 (quoting *Mejia,* 2020 U.S. Dist. LEXIS at *6).

2. <u>Delancey Fails to Adduce Any Evidence That Wells Was His Supervisor Even Under The Incorrect Standard Delancey Proposes.</u>

Even under the standard Delancey advocates, Delancey still must adduce evidence that shows Wells "had authority to direct [Delancey]'s *daily* work activities." *Cajamarca,* 2013 N.Y. Misc. LEXIS 4851, at *15 (emphasis added). Delancey has not done and cannot do so here.

Delancey admits that "helping Fox News Channel television shows was not part of his formal duties" (Pl. Resp. to SOMF ¶43), and he testified that he helped Wells by providing content for *On the Record* only "a couple of times a week." Pl. Resp. to SOMF ¶111; *see also* FNN Ex. 6 at 51:3-4. This is a far cry from the "authority to direct [Delancey]'s daily work activities" required by *Cajamarca.* There, the alleged harasser mandated when the plaintiff took breaks and assigned her cleaning tasks. *Id.* at *3, *15. The *Cajamarca* court found that these facts were "insufficient" to allow a trier of fact to conclude that the alleged harasser was the plaintiff's supervisor under the

NYCHRL. *Id.* at *22–23. Here, Wells's electronic requests to Delancey "a couple of times a week" are much less significant than those found insufficient in *Cajamarca*.[3]

The record also does not support Delancey's claim that Wells "consistently checked in" on Delancey's work schedule. Opp. at 23. Delancey cites only two email conversations from his two years of employment at FNN to support this argument. But those emails do not reflect Wells directing Delancey's daily work activities or acting as Delancey's supervisor. To the contrary, they show only that on those two occasions, Wells simply asked Delancey if he was "logged in" or "working tonight." Pl. Exs. R, Q. And Delancey sent Wells similar emails asking Wells if he was at work. FNN Ex. 25 at FNN000174. No reasonable juror could conclude that these conversations transform Wells into Delancey's supervisor.

Delancey next attempts to cast Wells as a "powerful and well-connected insider" who "groomed" Delancey for years.[4] But Delancey's argument is based solely on his speculation and subjective beliefs. *See*, *e.g.,* Opp. at 21 ("Plaintiff understood that Wells was…"; "[Plaintiff's] perception…"). Delancey does not cite a single case in support of his argument that his subjective beliefs about Wells's supposed standing as a "powerful and well-connected insider" establish that Wells exercised supervisory authority over him. Delancey's personal views of Wells are completely irrelevant to the Court's assessment of whether he "exercised managerial or supervisory responsibility" over him under the NYCHRL. *See Del Villar v. Hyatt Hotel Corp.*, 2022 U.S. Dist. LEXIS 114294, at *19 (S.D.N.Y. June 28, 2022) (finding an employer could not

---

[3] Delancey's incorrectly claims that *Ward* did not involve an allegation that defendant assigned plaintiff to complete assignments. In *Ward*, the court found that "the allegation that [individual defendant] was responsible for plaintiff['s] 'day-to-day work assignments and allocation of equipment'" fell well below the requisite showing for supervisory liability. *Ward*, 2016 WL 4371752, at *10.

[4] The handful of alleged statements by Wells in which he allegedly suggested he was "important" do not serve as evidence that he was Delancey's supervisor. Opening Br. at 10-13.

be liable for harassment, even though plaintiff "believed [the harasser] was a supervisor" because the NYCHRL standard is objective).

Moreover, no reasonable juror could conclude from the undisputed record evidence that Wells was a powerful media insider. Delancey points to two Facebook messages between Delancey and Wells to argue that Wells was "powerful" and "groomed" him. But those messages are irrelevant to whether Wells was Delancey's supervisor because they pre-date either man's employment with FNN. Moreover, a plain reading of the messages shows Delancey's characterization of them is false. While Delancey suggests Wells's reference to two of Delancey's colleagues at WTVT was a way of "making a point" Wells was "connected," the exchange itself shows that Delancey and Wells were simply discussing mutual acquaintances, with Delancey stating he "hung out" with one of the colleagues the night before and was "best friends" with the other. FNN Ex. 15 at WELLS 00002. And CSOF ¶159, cited by Delancey, refers to a message in which Wells told Delancey about a friend who was a "PAGE [at] NBC." Pl. Ex. H, at WELLS 00003. No reasonable juror could conclude that Wells was "powerful" within FNN because he knew a page— a notoriously low-level role — at an entirely separate media company.[5]

Delancey argues that Wells providing Delancey with monogrammed FNN stationery when he started at FNN was evidence that Wells was Delancey's supervisor (Opp at. 21-22), but the undisputed evidence proves otherwise. Wells obtained those things via an FNN online portal that was accessible to all employees free of charge, and Wells had arranged for similar stationery to be given to other coworkers who joined FNN in the past. FNN Ex. 6 at 42:22-43:3; FNN Ex. 8 at 120:24-121:7.

---

[5] *See Page Program*, NBCUniversal Careers, https://www.nbcunicareers.com/pageprogram (last visited December 12, 2025).

Delancey next suggests Wells was his supervisor because Wells "inserted himself into Plaintiff's career opportunities." Opp. at 21. This too is unsupported by evidence. It was Delancey who asked Wells for help locating another job that paid more. Pl. Resp. to SOMF ¶¶2; 119; FNN Ex. 6 at 52:20-53:13. Wells simply responded to that request by emailing Delancey a posting from Fox News Radio. Pl. Ex. M at FNN000174-176. And Delancey's claim that Wells showed that he "wielded real power and influence" within FNN by "offer[ing] to put Plaintiff in touch with Fox News Radio personnel" is an egregious misrepresentation of the record. Opp. at 22; Pl. Ex. M at FNN000174-176. It was Delancey who asked Wells if he knew of anyone at Fox News Radio, to which Wells simply responded, "Ill [sic] ask someone who might know some names over there." Pl. Ex. M at FNN000174-175.

Finally, Delancey argues that Wells must have been his supervisor based on Delancey's "belief" that there was a "stark hierarchy" between where he worked, Edge, and where Wells worked ,Fox News Channel, based on Edge's employees' physical location "symbolically beneath FNC" in the "basement" and accessed by "a different elevator bank" from the one used by "FNC producers like Wells" on the 18th floor; his understanding of FNN's revenue sources; and what he "understood" was Wells's ability to influence [Delancey's] employment and compensation. Opp. at 24-26. But, again, Delancey's subjective beliefs do not make Wells his supervisor. *See Del Villar*, 2022 U.S. Dist. LEXIS 114294 at *19. The undisputed evidence shows that Wells did not supervise anyone, much less sit high within the "hierarchy" that Delancey imagines. The undisputed facts show that FNN's newsroom and daytime show staffs, including producers, sat on the same "basement" floor as Edge staff. Pl. Ex. F at 329:20-25. The physical location of Wells as compared to the Edge team does not make Wells Delancey's supervisor. By Delancey's logic, any employee who worked on a higher floor than Delancey or who worked for an FNC show

instead of Edge would have been his supervisor. No reasonable juror could conclude that on the evidence here.

The cases Delancey cites to suggest that Wells functioned as Delancey's "de facto" supervisor are all inapposite. Opp. at 20-26. *Hughes* involved an alleged harasser that could provide the plaintiff with a full-time contributor position. In *Draper Dev.,* the alleged harasser was a general manager with the ability to hire crew members who offered the employee an assistant manager position in exchange for sex. In *Dougherty*, the alleged harasser interviewed plaintiff, offered plaintiff a job, and threatened to write plaintiff up and suspend her. No similar facts exist in this case.

3. There is No Evidence That FNN Knew, Or Should Have Known, About Wells's Alleged Conduct As Required Under the NYCHRL.[6]

Because Delancey concedes that FNN did not know about Wells's alleged assault of Delancey, he must adduce evidence that FNN should have known about that conduct under the NYCHRL. He cannot do so.

First, Delancey argues that FNN should have known Wells would sexually assault him because while requests for content from Edge by Wells were supposed to go through the Assignment Desk, "that did not always happen in practice." Opp. at 30. This is a non-sequitur. No reasonable juror could conclude that because Wells might request content from Delancey, FNN should have known Wells had the propensity to assault Delancey outside of work.

Second, no reasonable juror could conclude that Delancey was precluded from reporting the alleged assault by the statements he claims MacCarthy made to him. Delancey attempts to equate

[6] Delancey did not even attempt to rebut FNN's showing that no reasonable juror could find that FNN condoned Wells's assault, as required for a finding of employer liability under the NYSHRL, thereby waiving his claim under that statute.

this case to *Distasio v. Perkin Elmer Corporation*, 157 F.3d 55, 64 (2d Cir. 1998), but *Distasio* demonstrates the type of evidence absent here. In *Distasio*, the plaintiff told her supervisor about an employee's alleged harassment and her supervisor responded, "[d]on't say nothing, keep in here, because if you say something, you cannot work here no more." Here, it is undisputed that Plaintiff never told MacCarthy about the alleged assault and MacCarthy never told Plaintiff not to take concerns about the assault to FNN's HR department. Pl. Resp. to SOMF ¶72. Moreover, while Delancey claims that prior to the assault, MacCarthy generally told him not to "go to HR" because others had complained about MacCarthy and "[MacCarthy] had been treated unfairly," it is undisputed that Delancey knew employees had complained to HR and knew he could do so. Pl. Ex. A at 148:1-150:24; Pl. Ex. B at ¶22. And while Delancey now claims he was uncomfortable going to HR, it is undisputed that FNN's anti-harassment policy encouraged employees to raise complaints via other avenues if going to human resources was not feasible for any reason. Pl. Resp. to SOMF ¶¶8-9; Ex. 10 at FNN00015; Ex. 11 at FNN00072. And Delancey knew as much when he was employed. SOMF ¶¶10, 74; Ex. 6 at 150:14-24, 160:19-161:9; Ex. 2 at ¶42.

Third, Delancey resorts to suggesting that FNN must have allowed complaints to "disappear" and that FNN maintained "cherry-picked complaint records[.]" Opp. at 32-33. But this is a fact-free argument utterly unsupported in the record. The undisputed testimony of FNN's HR witness shows that in, 2008, **all** complaints related to sexual harassment, sexual assault, or retaliation that were made to HR would be printed out and retained in HR's centrally located complaint file for discovery and other purposes. Pl. Ex. G at 64:10-14, 66:14-24. FNN searched those complaints in compliance with Magistrate Judge Parker's discovery order and found no complaints relevant to this matter, as determined by Magistrate Judge Parker. ECF 78. There is not a shred of evidence to support Delancey's suggestion that any records ever existed that would support his claims. Nor

could a jury reasonably infer that FNN failed "to prevent and respond to discriminatory conduct" because FNN currently has a 13-month email retention policy and allegedly did not digitize all of its HR complaints dating back 17 years. *Id*. Document retention policies are "common in business" and it is "not wrongful for a manager to instruct his employees to comply with a valid document retention policy under ordinary circumstances." *Arthur Andersen LLP v. United States*, 544 U.S. 696, 704 (2005).

Finally, Delancey argues that a reasonable juror could find FNN should have known that Wells was capable of sexually assaulting him based on the Facebook messages purportedly from Kathleen Wells describing an incident between her and between Wells. Opp. at 33-34. He argues that although the messages are unauthenticated and Kathleen Wells is deceased, he should be able to rely on them because they came from Kathleen Wells's purported Facebook account. That proves nothing. Anyone can create a Facebook account using any name. There is no evidence in the record authenticating the Facebook account as the account of the deceased Kathleen Wells. And even if the messages were authenticated, they remain hearsay. Delancey does not even attempt to argue that the messages are subject to a viable hearsay exception, s*ee* Fed. R. Evid. 803, because they are not. The Court should not consider evidence at summary judgment that cannot be admitted at trial. Opp. at 17-19.

Moreover, it is undisputed that Wells testified that he never called Kathleen Wells a "fucking bitch." Pl. Resp. to SOMF ¶93. And even the incident occurred and FNN knew about it (which it did not), that knowledge would not be sufficient to put FNN on notice that Wells may sexually assault Delancey at some later date. *See Stapon v. Riverhead Cent. Sch. Dist.*, 2025 U.S. Dist. LEXIS 205856, *22-23 (E.D.N.Y. Sept. 15, 2025) (calling another person a "piece of shit" during a phone call did not put defendant employer on notice of harasser's propensity for sexual assault).

**B. Delancey's NYSHRL and NYCHRL Sexual Harassment Claims Should Be Dismissed Because The Alleged Assault Occurred Outside Of The Workplace And Did Not Impact Delancey's Work Environment.**

Delancey's argument that FNN should be liable for Wells alleged assault even though it took place outside Delancey's work environment lacks merit. Opp. at 27-28. Delancey argues that Wells allegedly positioned the night out as a good opportunity for Delancey to meet coworkers. Opp. at 28; Ex. A at 58:14-23*;* 61:13-22. But this evidence does not provide a triable issue of fact regarding whether the alleged assault occurred outside the workplace because Wells was not Delancey's supervisor and there is no evidence to suggest Wells had the authority to arrange business events on behalf of FNN. Opening Br. at 20-23.

Delancey also argues that because MacCarthy occasionally got drinks with his coworkers after work, Delancey understood that it was "custom" for FNN employees to drink with their supervisors and going to the Barracuda lounge with Wells would "enhance his standing" at FNN. Opp. at 28. But Delancey does not cite a single case in support of his argument that his subjective beliefs about what was "customary" at FNN or Wells's standing within the company could turn a nonwork-related, off-duty interaction between coworkers into a workplace incident. In fact, courts in the Second Circuit have been clear that such subjective beliefs are not enough. *Devlin*, 2003 US Dist LEXIS 5226, at *8 (plaintiff's "subjective feeling" that he 'felt the urgency to go" to event . . . is irrelevant in the absence of any objective evidence . . ."); *cf. Del Villar,* 2022 U.S. Dist. LEXIS at *19.[7]

**C. Delancey Cannot Prevail on a *Quid Pro Quo* Theory of Harassment.**

To prove a claim of quid pro quo harassment, Delancey must adduce evidence that Wells

[7] *Tomka*, *Ferris* and *Parrish* are inapposite. In each, the alleged harassment occurred at or immediately following an employer-sanctioned event, such as a business dinner, business trip or event at which the employer encouraged employee attendance.

threatened him with negative consequences if he rebuffed his sexual advances. Delancey argues that can do so because a reasonable juror could conclude that Wells made an "explicit threat that rejection would have professional consequences." The undisputed record does not support that contention. Although Delancey claims that Wells told Delancey that Delancey was "not thinking straight" and was "screwing himself over," it is undisputed that Wells made those comments in the context of Wells describing negative feedback he received about Delancey's performance at the WNBC job interview and did not concern the assault in any way. Opening Br. at 24-25. Moreover, there is no evidence that Wells refused any request by Delancey to help him find other career opportunities.

Delancey's reliance on *Hughes*, 304 F. Supp. 3d at 449, is misplaced. The *Hughes* court found that plaintiff established a causal nexus for the purpose of her retaliation claim where, immediately after plaintiff ended an affair with her harasser, the harasser made "overt threats to cut [the plaintiff] off from future [employment opportunities]." That holding has no relevance to this case, which does not involve a retaliation claim, and, in any event, there is no evidence of any similar "overt threat" in the record.

Dated: December 12, 2025

Respectfully Submitted,

By: *Paul C. Evans*

**PAUL HASTINGS LLP**

Paul C. Evans
200 Park Avenue
New York, NY 10166
Tel: (212) 318-6009
Fax: (212) 303-7009
paulevans@paulhastings.com

Sara J. Hoult (admitted *pro hac vice*)
71 S. Wacker Drive, Forty-Fifth Floor
Chicago, Illinois 60606

Tel: (312) 499-6037
Fax: (312) 499-6137
sarahoult@paulhastings.com

***Attorneys for Defendant Fox News Network, LLC***

## CERTIFICATE OF SERVICE

I, Paul C. Evans, herby certify that a true and correct copy of Defendant Fox News Network, LLC's Reply in Support of its Motion for Summary Judgment was served via ECF on December 12, 2025 upon the following:

Tanvir Rahman
Gabrielle L. Rosen Harvey
Filippatos PLLC
199 Main Street, Suite 800
White Plains, NY 10601-3207
Tel: (914) 984-1111
TRahman@filippatoslaw.com

***Attorneys for Plaintiff***

Jason H. Sunshine
Freedman Taitelman + Cooley, LLP
1801 Century Park West, 5th Floor
Los Angeles, California 90067
Telephone: (310) 201-4285

***Attorney for Defendant Wells***

*/s/ Paul C. Evans*
Paul C. Evans

**CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMITS**

I, Paul C. Evans, herby certify Defendant Fox News Network, LLC's Reply in Support of its Motion for Summary Judgment is 3,496 words (excluding the caption, table of contents, table of authorities, signatures blocks and required certificates) and complies with Section III.D of Judge Analisa Torres's Individual Rules in Civil Practice.

*/s/ Paul C. Evans*
Paul C. Evans